UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| LESEA, INC., *et al.*, | ) |
| | ) |
| Plaintiffs, | ) |
| v. | ) |
| | ) Case No. 3:18-cv-914-PPS-MGG |
| LESEA BROADCASTING | ) |
| CORPORATION, LESTER SUMRALL, | ) |
| DR. JOHN W. SWAILS III, and | ) |
| EDWARD WASSMER, | ) |
| | ) |
| Defendants. | ) |
| | ) |
| LESEA BROADCASTING | ) |
| CORPORATION, *et al.* | ) |
| | ) |
| Counterclaim Plaintiffs and | ) |
| Third-Party Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) |
| LESEA, INC., *et al.*, | ) |
| | ) |
| Counterclaim Defendants and | ) |
| Third-Party Defendants. | ) |

## OPINION AND ORDER

This is a lawsuit between warring cousins who are fighting over control of a corporation started by their grandfather. The plaintiffs are LeSEA, Inc., Family Broadcasting Corporation, and LeSEA Global Feed The Hungry, Inc., three Indiana non-profit corporations (collectively "LeSEA") who have as their president Drew Sumrall, one of the cousins involved in this brawl. Those entities are suing four defendants, including Lester Sumrall, who is the other cousin in this dispute. The gist of the case

involves allegations of a wide ranging attempt to steal trademarks and other intellectual property as well as a host of alleged state law violations sounding mostly in conversion and other intentional torts. Defendants have also filed a counterclaim and third-party complaint, neither of which are at issue at this time. [DE 43.]

For purposes of this motion, there are three principal defendants—LeSEA Broadcasting Corporation, Lester Sumrall, and Dr. John W. Swails, III, and they have each moved to dismiss certain counts of and to strike other portions of the complaint. [DE 28.] To avoid confusion between these similarly named entities, and because it seems that Lester Sumrall's actions (including directing the activities of LeSEA Broadcasting Corporation) form most of the actions that LeSEA complains of, I will refer to the three defendants collectively as Lester Sumrall or at times defendants.

The thrust of defendants' motion is that LeSEA has failed to adequately plead certain state law claims—defendants do not challenge the federal trademark claims under the Lanham Act. Furthermore, they argue that certain allegations contained within the Amended Complaint are inflammatory and legally irrelevant and should be stricken. But for the reasons discussed below, LeSEA has sufficiently pleaded most of its claims using relevant and permissible facts. But the Amended Complaint is not without deficiencies and accordingly, defendants' motions will be granted in part and denied in part.

## Background

This is a motion to dismiss, and so I will draw the necessary factual background

from LeSEA's Amended Complaint and take all well-pleaded factual allegations therein as true. LeSEA is a Christian non-profit organization based in South Bend, Indiana and with wide-ranging operations. LeSEA was founded by Dr. Lester Frank Sumrall (grandfather of defendant Lester Sumrall) in 1957 and has grown to operate churches, bookstores, a Bible college, a large food and disaster relief operation, as well as a series of television and radio broadcast networks focused on religious programming. [DE 6 at ¶¶ 15-17.] As part of these operations, LeSEA has two registered trademarks LeSEA Global Feed the Hungry, LeSEA Global, as well as common law trademark rights with regard to LeSEA and LeSEA Broadcasting. [*Id.* at ¶¶ 18-22.]

The current President and CEO of the LeSEA organization is Drew Sumrall, who, like defendant Lester Sumrall, is the grandson of the organization's founder Dr. Lester Frank Sumrall. Drew Sumrall assumed this role after his father, Peter Sumrall, passed away in December 2015. It is around the same time that the conduct giving rise to this lawsuit began. Shortly after Peter Sumrall's death, his nephew Lester Sumrall began what LeSEA characterizes as his "long pattern of abusive, harassing, and unlawful conduct" against LeSEA and its interests "based on his false claim to be the rightful spiritual and legal heir to LeSEA." [*Id.* at ¶ 24.]

LeSEA alleges that days after Peter Sumrall's passing, Lester Sumrall insisted on calling a meeting of the board of LeSEA Broadcasting for the purpose of naming him president of the organization and threatening legal action if it did not accede to his "bizarre demands." Months later, having failed to persuade the board, Lester Sumrall

met with LeSEA's principal lender in New Orleans, Louisiana and attempted to have the lender exert pressure on LeSEA to install him in a position of power within the LeSEA organization. And when that didn't work, Lester Sumrall began a letter writing campaign demanding Drew Sumrall's resignation and began spreading false allegations concerning LeSEA and its finances to LeSEA's lenders and business associates. [*Id.* at ¶¶ 27-30.]

Lester didn't stop there. He filed false liens, initiated and intervened in bad faith in state court litigation, in the name of the estate of his great uncle (the Rev. James H. Murphy) against LeSEA, Drew Sumrall, Peter Sumrall and others. [*Id.* at ¶¶ 31-34.] He likewise issued and paid for the distribution of press releases designed to spread false information concerning LeSEA and its management. [*Id.* at ¶¶ 35-38.]

When those efforts were not successful in obtaining control over the LeSEA organization, Lester Sumrall changed tactics and tried sowing confusion amongst the public by infringing on LeSEA's name and trademarks. Lester Sumrall allegedly changed the name of a corporation he controlled from "Lester Sumrall International, Inc" to "LeSEA Broadcasting Corporation," obviously a name similar to LeSEA and one of its lines of business. [DE 6 at ¶ 44.] He further filed five certificates of assumed business names with the Indiana secretary of state which likewise use the name LeSEA in some fashion. [*Id.* at ¶ 45.]

Lester's efforts at obfuscation didn't stop there according to the Amended Complaint. Beyond simply registering and assuming these names, LeSEA alleges that

defendants took active steps to confuse the public and improperly cast themselves as affiliated with LeSEA. For example, they apparently began using the LeSEA name/trademark to identify themselves on Guidestar.org, "a well-known and heavily utilized website that gathers, organizes, and distributes information about nonprofits to enable users to make better decisions in relation to charitable giving." [*Id.* at ¶ 47.] Defendants likewise used the LeSEA name/marks on their website (www.lestersumrall.com) and on Facebook to solicit donations, sell videos, and sell Lester Sumrall's services as a speaker. [*Id.* at ¶¶ 48-49.] Additionally, and according to LeSEA for no other reason than to intercept donations meant for it, defendants changed the mailing address of one of their entities to P.O. Box 2, South Bend Indiana 46624, which is one digit off from the mailing address (P.O. Box 12, South Bend, Indiana 46624) that LeSEA had been using for more than 50 years. [*Id.* at 46.]

Based on this conduct, LeSEA filed a twelve-count Amended Complaint. Defendants have moved to dismiss seven of those counts which are premised on Indiana state law. Specifically, they seek to dismiss Count V – Tortious Interference with Contractual and Business Relationships; Count VII – Deception; Count VIII – Conversion; Count IX – Forgery; Count X - Counterfeiting; Count XI - Theft; and Count XII – Criminal Mischief. LeSEA also initially sought a preliminary injunction based on the Lanham Act trademark claims, but the parties reached an agreement and I entered their stipulation which resolved that issue prior to any decision on the merits. [*See* DE 27.]

**Discussion**

**I. The Motion to Dismiss Counts V, VII, VIII, IX, X, XI, and XII**

This is a motion to dismiss for failure to state a claim and so the familiar standards of Rule 12(b)(6) of the Federal Rules of Civil Procedure and attendant case law are in play. To withstand defendants' motion, LeSEA's Amended Complaint must contain "allegations plausibly suggesting (not merely consistent with)" an "entitle[ment] to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (citation omitted). All this requires is "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. But "[a] court may not dismiss a case on the pleadings unless it appears 'beyond a reasonable doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Tagami v. City of Chicago*, 875 F.3d 375, 380 (7th Cir. 2017) (quoting *Manning v. Miller*, 355 F.3d 1028, 1031 (7th Cir. 2004)). Thus, if LeSEA's Amended Complaint only gives rise to claims at "the speculative level," dismissal is warranted. *Twombly*, 550 U.S. 555. In making this determination and evaluating the parties' arguments and pleadings, I take all well-pleaded factual allegations as true and draw all reasonable inferences in favor of the plaintiffs. *Marquez v. Weinstein, Pinson & Riley, P.S.*, 836 F.3d 808, 810 (7th Cir. 2016).

**A. Count V – The Tortious Interference Claim**

LeSEA has alleged that through Lester Sumrall's course of conduct, defendants have engaged in a tortious interference with LeSEA's business and contractual relationships. In seeking to dismiss this count, defendants make a direct and

straightforward argument as to why LeSEA's claim for tortious interference must be dismissed. In their eyes, the Amended Complaint fails to sufficiently outline what tortious behavior of Lester Sumrall's and his co-defendants was in fact "unjustified." They say LeSEA had made no more than a "mere assertion" of tortious conduct and without more, the claim is insufficiently pled. [DE 29 at 9-10.] I'm not sure what to make of this argument. LeSEA's Amended Complaint is replete with factual allegations concerning allegedly tortious conduct by Lester Sumrall and entities acting on his behalf. As recounted above, Lester Sumrall attempted to mislead LeSEA's lenders, spread false allegations regarding the organization and its president, illicitly intercept donations, and misappropriate LeSEA's trademarked name.

Presumably recognizing that their initial argument couldn't carry the day, defendants tacked on new arguments in their reply brief. They now argue that LeSEA failed to allege any sufficient contractual or business relationship. Defendants argue that in responding to the motion to dismiss, LeSEA raised "for the first time" the argument that misappropriation of the LeSEA name or likeness constitutes tortious interference. [DE 37 at 3-4.] But that's the pot calling the kettle black. It was defendants who raised arguments improperly "for the first time" in their reply. Arguments raised for the first time in a reply are fundamentally unfair because the other side has no opportunity to respond, and they are properly disregarded by a court as waived. *United States v. Kennedy*, 726 F.3d 968, 974, n.3 (7th Cir. 2013); Wright & Miller, Fed. Prac. & Proc. § 3974.3 (4th ed.) ("issues omitted from the party's principal brief are ordinarily

-7-

deemed forfeited"). But I can set waiver aside. It is neither here nor there because the arguments are, in any event, without merit. LeSEA alleges that it has relationships with donors and clients that Lester Sumrall has tortiously interfered with by confusing the public with a deceptively similar trademark, attempting to usurp donations, and spreading apparent falsehoods about LeSEA and its management. Furthermore, LeSEA's allegations concerning Lester Sumrall's interactions with its lender in New Orleans alone satisfy all five elements of a tortious interference claim. *See Murat Temple Ass'n, Inc. v. Live Nation Worldwide, Inc.*, 953 N.E.2d 1125, 1132 (Ind. Ct. App. 2011) (listing elements of a tortious interference with contract claim under Indiana law). While it is true that LeSEA does not specificy a particular contract at issue, it is reasonable to infer that LeSEA's relationship with its principle lender is a contractual one and Lester Sumrall was well-aware of it, since he allegedly met with the lender specifically to induce it to take action against LeSEA. That is enough factual material for this claim to make it past the initial pleading stage.

### B . The Counts for Civil Recovery Due to Criminal Acts Under Indiana Law

The remaining counts that defendants challenge are various criminal statutes that LeSEA alleges that Lester Sumrall has violated. Indiana permits civil relief for criminal acts pursuant to the Indiana Crime Victim's Relief Act ("CVRA"). I.C. § 34-24-3-1. LeSEA alleges that defendants committed the crimes of deception (I.C. § 35-43-5-3(a)(6)), conversion (I.C. § 35-43-5-3), forgery (I.C. § 35-43-5-2(d)), counterfeiting (I.C. § 35-43-5-2-(a)), theft (I.C. § 35-43-4-2), and criminal mischief (I.C. § 35-43-1-2). "A victim

claiming relief under the Indiana Crime Victim's Relief Act must prove by a preponderance of the evidence all elements of the alleged criminal conversion, including the requisite criminal intent." *Gordon v. Bank of New York Mellon Corp.*, 964 F. Supp. 2d 937, 943 (N.D. Ind. 2013) (quoting *Palmer Dodge, Inc. v. Long,* 791 N.E.2d 788, 791 (Ind. Ct. App. 2003)) (brackets omitted). Of course, at the pleading stage, LeSEA need not *prove* the claims, but it must allege sufficient facts so as to make it plausible that defendants' conduct satisfied each element of each offense.

   **1. Claims of Deception, Forgery and Counterfeiting**

There is an initial question to consider which is whether three of LeSEA's state law claims (deception, forgery and counterfeiting) sound in fraud which would require pleading those claims with particularity under Federal Rule of Civil Procedure 9(b). Rule 9(b) states that "[i]n alleging fraud . . . a party must state with particularity the circumstances constituting fraud mistake." Defendants say LeSEA has failed to do so and instead has engaged in impermissible group pleading by lumping Dr. Swails in with the other defendants without specifying any fraudulent actions taken by him and likewise made only generalized allegations of fraud which fail to satisfy the particularity requirements mandated by Rule 9(b). *See Rocha v. Rudd*, 826 F.3d 905, 911 (7th Cir. 2016) ("a complaint should inform each defendant of the nature of his alleged participation in the fraud").

Rule 9(b) requires a plaintiff to spell out "the who, what, when, where, and how" of the allegedly fraudulent conduct. *Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502,

507 (7th Cir. 2007). And "a plaintiff generally cannot satisfy the particularity requirement of Rule 9(b) with a complaint that is filed on information and belief." *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 442–43 (7th Cir. 2011). But allegations of intent and a defendants' state of mind (which are unsurprisingly often incapable of being factually alleged by a plaintiff prior to discovery), may be alleged generally. Fed. R. Civ. P. 9(b).

LeSEA's response to this argument is perplexing; it tells me that it need not comply with Rule 9(b) because it is not suing for common law fraud. Instead, it is seeking to recover under the CVRA for violations of criminal statutes and so it says Rule 9(b) doesn't apply. Tellingly, LeSEA doesn't cite a single case for the proposition that Rule 9(b) applies only to common law fraud claims. That is because the Seventh Circuit has been clear that "Rule 9(b) applies to 'averments of fraud,' not claims of fraud, so whether the rule applies will depend on the plaintiffs' factual allegations." *Borsellino,* 477 F.3d at 507 (quoting *In re Daou Sys., Inc.,* 411 F.3d 1006, 1027–28 (9th Cir. 2005)). "A claim that 'sounds in fraud'—in other words, one that is premised upon a course of fraudulent conduct—can implicate Rule 9(b)'s heightened pleading requirements" even where the claim itself is not explicitly a claim for fraud. *Id.* (citations omitted). Thus, LeSEA's statement that Rule 9(b) only requires particularity when common law fraud is alleged as a cause of action is at odds with Seventh Circuit precedent. What's more, courts in this district have ruled that the specific Indiana deception statute at issue in this case is subject to the particularity requirements of Rule 9(b). *ABN Amro Mortg. Grp.,*

*Inc. v. Maximum Mortg., Inc.*, 429 F. Supp. 2d 1031, 1042 (N.D. Ind. 2006).

LeSEA's reliance on *DIRECTV, Inc. v. Beecher*, 296 F. Supp.2d 937 (S.D. Ind. 2003) is likewise inapposite. In that case, the court found Rule 9(b)'s pleading requirements inapplicable for a CVRA claim predicated on a violation of I.C. § 35-43-5-6, which states that "a customer who utilizes any device or scheme to avoid being assessed for the full amount of services received from a utility or a cable TV service provider commits a Class B infraction." I.C. § 35-43-5-6(a). Rule 9(b) did not apply because the criminal statute in question did not require any false or deceptive statements but instead criminalizes (and subjects to civil remedies on the CVRA) any conduct which results in surreptitious interception of cable TV or other utility. *Beecher*, 296 F. Supp. 2d at 944. *Beecher* is off point by a wide margin; LeSEA is not suing Lester Sumrall and his co-defendants for stealing cable TV—it is suing them for trying to confuse prospective churchgoers, customers and donors through *fraudulent* statements and trademark misappropriation.

Problematically, LeSEA has not otherwise responded to defendants' argument or explained how their complaint sufficiently spells out the "the who, what, when, where, and how" of the fraud in particularized detail. Failure to respond to an argument made in a motion to dismiss results in waiver. *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010); *Swoope v. Gary Cmty. Sch. Corp.*, 2012 WL 3732838, at *3 (N.D. Ind. Aug. 28, 2012). It's not the court's obligation to make a plaintiff's argument for them where a defendant raises a plausible reason for dismissal and a plaintiff responds with silence or

only half an argument. "Our system of justice is adversarial, and our judges are busy people. If they are given plausible reasons for dismissing a complaint, they are not going to do the plaintiff's research and try to discover whether there might be something to say against the defendants' reasoning." *Kirksey v. R.J. Reynolds Tobacco Co.*, 168 F.3d 1039, 1041 (7th Cir. 1999); *Gluck v. WNIN Tri-State Pub. Media, Inc.*, 879 F. Supp. 2d 999, 1002 (S.D. Ind. 2012) ("the Court has no responsibility to conduct research on behalf of a plaintiff in order to discover whether the plaintiff could prevail").

As such, these claims will be dismissed, albeit without prejudice, and with leave to amend. If LeSEA decides to replead these claims, defendants are free to reargue the cause of action-specific arguments as to deception, forgery and counterfeiting to the extent they are not foreclosed by my rulings below on the conversion, theft and criminal mischief counts. For what it's worth, it seems likely LeSEA will be able to sufficiently alleged facts constituting fraud with particularity, at least as to some defendants. But the lack of any specific actions by Dr. Swails is troubling and each defendant has a right to have such facts alleged with particularity as to them.

**2. Claims for Conversion, Theft and Criminal Mischief**

What remains are the claims for conversion, theft and criminal mischief which are also criminal statutory violations but are not rooted in fraud. Defendants say these claims should be dismissed because these claims are duplicates of LeSEA's trademark claims and the business names they are using were validly registered with the Indiana secretary of state. In support of this argument, defendants direct me to four district

court opinions from the Southern District of Indiana: *Dillinger v. Electronic Arts, Inc.*, 795 F. Supp.2d 829 (S.D. Ind. 2011); *Heckler & Koch, Inc. v. German Sport Guns GmbH*, 2009 WL 3200587 (S.D. Ind. Sept. 25, 2009); *Heckler & Koch, Inc. v. Coharie Arms, Inc.*, 2010 WL 987747 (S.D. Ind. March 12, 2010); *Ellington v. Gibson Piano Ventures, Inc.*, 2005 WL 1661729 (S.D. Ind. June 24, 2005). The problem for defendants, as they tacitly acknowledge, is that all four of these cases predate the Indiana Supreme Court's decision in *Yao v. State*, 975 N.E.2d 1273 (Ind. 2012), which all but dictates the outcome in this case.

In *Yao*, the Indiana Supreme Court held that trademark infringement could serve as a basis for claims of criminal counterfeiting and theft. In doing so, the court took an extremely broad view of the statutes in question. In regard to counterfeiting, it rejected an argument that a "written instrument" must in fact contain "written matter" and instead held that "a written instrument could be an instrument containing written matter or it could be an object or symbol of value, right, privilege, or identification—whether or not such object or symbol contains any writings or markings." *Yao*, 975 N.E.2d at 1279. In so concluding the court held that an airsoft gun was a "written instrument" within the meaning of the counterfeiting statute. *Id.* at 1280.

As it relates to the charge of theft, the *Yao* court further rejected the defendants' argument that trademarks were not "property" under the statute, and that even if they were, it wasn't conceptually possible to "exert unauthorized control" (as the theft statute requires) over a trademark. First, the broad definition of property in the statute

-13-

includes "anything of value" including "intangibles" and thus trademarks and trade dress fit within the definition. Second, under the statute, "'exert control over property' means to obtain, take, carry, drive, lead away, conceal, abandon, sell, convey, encumber, or possess property, or to secure transfer or extend a right of property." I.C. § 35-43-4-1(a). Specifically, the court zeroed in on the inclusion of "encumber" in the definition, in that the very point of a trademark is that it derives value almost exclusively by excluding others from its use, and thus using another's trademark "encumbers" and lessens the value of it. *Yao*, 975 N.E.2d at 1281-82. Finally, the court addressed the argument that trademark claims should be resolved under civil trademark laws and not criminal statutes and made clear its hands were tied by the statutes as written. So too are mine, and so too, defendants' attempt to distinguish *Yao* on the basis that it concerned trade dress and not specifically a trademark is a distinction without a difference.

The principles of *Yao* were extended further in *Leapers, Inc.* v. *Trarms, Inc.*, 203 F. Supp.3d 969 (S.D. Ind. 2016). In that case, the court denied a motion to dismiss counts of forgery, counterfeiting, theft, conversion, and criminal mischief. LeSEA brings the same five claims in this case alleging illegal use of its trademarks. And *Leapers* specifically addressed the same pre-*Yao* precedent from the Southern District of Indiana on which defendants here rely, finding all of it expressly or implicitly rejected by the Indiana Supreme Court in *Yao.* 203 F. Supp.3d 974-75. I find this decision sound and follow its reasoning to find that LeSEA's theft, conversion and criminal mischief claims cannot be

dismissed.[1]

While claims for deception were not addressed by the courts in *Yao* or *Leapers*, defendants have failed to show why the reasoning of those cases would not apply with equal force to a claim for deception which occurs where someone "disseminates to the public an advertisement that the person knows is false, misleading, or deceptive, with intent to promote the purchase or sale of property . . ." I.C. § 35-43-5-3. Property is broadly defined under the applicable statute as "anything of value" including any "gain or advantage," "personal property" or "services." I.C. § 25-31.5-2-253. As alleged in the Amended Complaint, defendants' actions fall within that category.

Defendants' final argument is that LeSEA has failed to state a claim because defendants legally registered their entity names with the Indiana secretary of state. In their eyes, because they legally registered these names, they could not have committed the tort of conversion. But that completely misses the point. "[A] state does not pass upon the legality of a corporate name by merely permitting incorporation under that name." *Hulburt Oil & Grease Co. v. Hulburt Oil & Grease Co.*, 371 F.2d 251, 254 (7th Cir. 1966). Stated otherwise, registering a name with state secretary of state does not immunize conduct which would otherwise amount to trademark infringement. And using state criminal and tort law to recover for certain kinds of trademark infringement

---

[1] As discussed above, I am dismissing the counterfeiting and forgery claims (as well as the deception claims) without prejudice because of LeSEA's failure to respond in substance to defendants' arguments pursuant to Federal Rule of Civil Procedure 9(b). Defendants did not move to dismiss the theft, conversion or criminal mischief claims on the basis of Rule 9(b).

was expressly allowed by the Indiana Supreme Court in *Yao*. Legal registration of the name doesn't change the equation. Furthermore, LeSEA has not sued simply because defendants registered a similar name in a vacuum. Instead, LeSEA is claiming that defendants registered these names only after engaging in a multi-year effort to take control of LeSEA and additional scurrilous actions like getting a deceptively similar PO Box to intercept donations. That's different and as such the claim of theft, conversion, and criminal mischief cannot be dismissed.

### 3. Whether LeSEA Has Sufficiently Alleged Harm or Damages

Defendants next argue that all of the state law claims must be dismissed because LeSEA has insufficiently pled the element of damages from the alleged course of conduct. In support of this argument, defendants assert that LeSEA has been duplicitous with me by claiming harm and damages in its Amended Complaint but stating in another filing (its memorandum in support of its motion for preliminary injunction) that it was not aware any actual confusion occurring with regard to its trademark. Defendants' arguments improperly conflate "actual confusion", a distinct concept in trademark law, with damages or "pecuniary loss" under the CVRA. Even the Lanham Act does not require actual confusion, and trademark law is designed to award a plaintiff a remedy when there is a only a *likelihood* of confusion; a plaintiff need not wait around to have its trademark infringed upon before taking its case to federal court and protecting its rights. *CAE, Inc. v. Clean Air Eng'g, Inc.*, 267 F.3d 660, 685 (7th Cir. 2001) ("Although evidence of actual confusion, if available, is entitled to substantial

weight in the likelihood of confusion analysis, this evidence is not required to prove that a likelihood of confusion exists.") (citations omitted). In short, there is nothing duplicitous or inconsistent in LeSEA conceding that it presently does not have evidence of actual confusion while at the same time alleging that it has suffered harm or other damages.

As for the claims under the CVRA, defendants concede that all LeSEA needs to allege is that it has suffered a "pecuniary loss." I.C. § 34-24-3-1; *Opportunity Knocks, Inc. v. Maxwell*, 618 F. Supp.2d 920, 926 (N.D. Ind. 2009). LeSEA has more than made that showing at this stage of the litigation. Specifically, LeSEA alleges that defendants' conduct has resulted in loss of membership and/or donations, loss of sales from LeSEA's commercial operations, reputational harm, and loss of good will. DE 6 at ¶¶ 62-63, 69.] That is sufficient to overcome defendants' motion at this stage of this litigation. *See Sprint Solutions, Inc. v. Aldrige*, 50 F. Supp. 3d 1024, 1026 (S.D. Ind. 2014) (awarding damages for loss of good will for claims of fraud and trademark infringement).

**II. The Motion to Strike Paragraphs 24-42 of the Amended Complaint**

In addition to the motion to dismiss, Lester Sumrall has filed a motion to strike portions of LeSEA's Amended Complaint. Federal Rule of Civil Procedure 12(f) gives me the ability to strike "from any pleading . . . any redundant, immaterial, impertinent or scandalous matter." Fed. R. Civ. P. 12(f). Striking factual allegations in a complaint is a drastic remedy, generally disfavored, rarely granted, and is warranted only where

"the matter bears no possible relation to the controversy or may cause the objecting party prejudice." *Talbot v. Robert Matthews Distributing Co.*, 961 F.2d 654, 664 (7th Cir. 1992). "A party will be prejudiced if the allegation at issue will confuse the issues in the case or is so lengthy and complex that it places an undue burden on the party." *Stop Illinois Health Care Fraud, LLC v. Sayeed*, 2016 WL 4479542, at *3 (N.D. Ill. Aug. 25, 2016). Even what could be called colorful descriptive language is not stricken where it is material and pertinent to the claims at issue. *E.g. Kuhlmey v. City of Hammond*, 2016 WL 5724484, at *2-3 (N.D. Ind. Sept. 30, 2016) (denying motion to strike characterization of defendants conduct as a "shoot first, ask questions later" policy because case hinged in fact on "whether defendants promulgated an improper pattern or practice"); *Jordan v. VanWinkle*, 2005 WL 1500860, at *1-2 (N.D. Ind. Jun. 23, 2005) (denying motion to strike description of defendant's conduct as "sadistic" where wrongfulness of defendant's conduct and use of force were at issue in the lawsuit).

The portions of the Amended Complaint that Lester Sumrall wants stricken (paragraphs 24-42) concern allegations of a "long pattern of abusive, harassing, and unlawful conduct against LeSEA", including alleged arguments at board meetings, prior legal proceedings involving Lester Sumrall and LeSEA, and press releases allegedly made by Sumrall. [DE 29 at 7-9.] According to Lester Sumrall, this case is primarily about LeSEA's legal interest and ownership of certain trademarks and nothing more. But a fair reading of the Amended Complaint makes it plain that it's about more than just that. As discussed throughout this opinion, there are live claims in

this case relating to tortious interference contract, theft, conversion, and criminal mischief. Those claims require an element of wrongful conduct and the allegations contained within paragraphs 24-42 of the Amended Complaint help to tell that story and provide the basis for alleging tortious conduct at this initial stage of the lawsuit.

At bottom, Sumrall might not like what LeSEA's complaint says, but he cannot say they are irrelevant as a matter of law. Sumrall further says that if these allegations remain in the lawsuit, he'll have to answer them and tell his own version of the same events, but that is precisely what is expected in civil litigation. And it seems he has done so by filing a twelve-count counterclaim and third-party complaint. [DE 43.] Accordingly, Sumrall's motion to strike paragraphs 24-42 of the Amended Complaint will be denied.

**Conclusion**

For the foregoing reasons, Defendants' Motion to Dismiss is GRANTED in part and DENIED in part; Counts VII, IX, and X (for deception, forgery and counterfeiting) are DISMISSED, without prejudice and with express leave to amend; and Defendants' Motion to Strike paragraphs 24-42 of the Amended Complaint is DENIED.

SO ORDERED on May 10, 2019.

/s/ Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT