# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
### SOUTH BEND DIVISION

LESEA, INC., FAMILY BROADCASTING
CORPORATION and LESEA GLOBAL
FEED THE HUNGRY, INC.,

Plaintiffs,

     v.                                                        No. 3:18CV914-PPS/MGG

LESEA BROADCASTING CORPORATION,
LESTER SUMRALL, DR. JOHN W. SWAILS III,
and EDWARD WASSMER,

Defendants.

---

LESTER SUMRALL and
THE LESTER SUMRALL FAMILY TRUST,

Counterclaim Plaintiff and Third-Party Plaintiffs,

     v.

LESEA, INC., FAMILY BROADCASTING CORPORATION,
LESEA GLOBAL FEED THE HUNGRY, INC.,
LESEA BROADCASTING OF SOUTH BEND, INC.,
LESEA BROADCASTING OF INDIANAPOLIS, INC.,
LESEA BROADCASTING OF TULSA, INC.,
LESEA BROADCASTING OF HAWAII, INC.,
LESEA BROADCASTING OF ST. CROIX, INC.,
WORLD HARVEST BIBLE COLLEGE INDIANA
CHRISTIAN UNIVERSITY, INC., STEPHEN P. SUMRALL,
DAVID M. SUMRALL, ANGELA N. GRABOWSKI,
ANDREW J. SUMRALL, and ADAM SUMRALL,

Counterclaim Defendants and Third-Party Defendants.

---

FRANK LESTER SUMRALL,

     Intervenor-Plaintiff,

v.

LESTER SUMRALL, Individually and
in his capacity as Trustee of
THE LESTER SUMRALL FAMILY TRUST,

      Defendant.

## <u>OPINION AND ORDER</u>

This litigation is one stage in a protracted family dispute involving the descendants and legacy of Dr. Lester Frank Sumrall, a Christian evangelist who founded the Lester Sumrall Evangelistic Association, incorporated as LeSEA, Inc. in 1957. During his lifetime, Dr. Sumrall's work and ministry flourished, resulting in the formation of many associated non-profit corporations engaged in Christian broadcasting and in charitable work around the world. Dr. Sumrall died in 1996. Since that time, the work of LeSEA and its related entities has continued and grown. As we will see in a moment, this case involves three generations of Sumralls, and two of the key players share a first name as well as their surname. In that regard, this family tree may be helpful for the reader.



Two of Dr. Sumrall's three sons, Stephen and Peter, held positions within LeSEA entities at the time of Dr. Sumrall's death. His third son, Frank, did not. After Peter Sumrall's death, his four children – David, Angela (Grabowski), Andrew and Adam – continued to work for LeSEA entities.

LeSEA and two related non-profits initiated this litigation by filing a complaint against Frank's son, Lester. LeSEA alleges that Lester " has engaged in a long pattern of abusive, harassing, and unlawful conduct against LeSEA and his own family members." [DE 65 at ¶1.] In its Second Amended Complaint, LeSEA brings 12 claims including trademark infringement, conversion, forgery, theft, and criminal mischief. [DE 65.] At bottom, LeSEA's principal concern is that Lester has formed a competing organization using the LeSEA name — Lester calls it the LeSEA Broadcasting

Corporation or LBC for short.  Not surprisingly, LeSEA says that the swiping of its name by Lester has caused confusion among its donors.

But LeSEA's complaint is not what is presently before me.  Instead, it is Lester's response to the complaint that is at issue. This is because Lester, believing that the best defense is a good offense, responded with a barrage of counterclaims and third-party claims, largely in his role as trustee of The Lester Sumrall Family Trust, to which his father Frank has assertedly assigned all of his "right, title, and interest in and to Dr. Sumrall's likeness and Dr. Sumrall's Works."  [DE 115 at ¶57.] In other words, though Dr. Sumrall has been dead for nearly a quarter of a century, this battle over Dr. Sumrall's Works is now raging between his grandchildren. The Amended Counterclaim defines "Dr. Sumrall's Works" as his "numerous notes, manuscripts, sermons, and books, as well as many other original works, including, but not limited to, audio and visual recordings, images, curriculum, articles, motion pictures, and similar works." [DE 115 at ¶24.]

In summary, the counterclaims are predicated primarily on the Trust's assertion that Frank became a co-owner (with his brothers Peter and Stephen) of Dr. Sumrall's Works upon his death, but has not profited from their use and exploitation by LeSEA and others.  [*Id*. at ¶¶52-54.]  Before me now, and ripe for decision, is a motion to dismiss all but one of the counterclaims, filed pursuant to Fed.R.Civ.P. 12(b)(6) on the ground of failure to state a claim upon which relief can be granted.  [DE 125, DE 126 at 14.]

The counterclaims name as defendants five individuals — Lester's uncle Stephen Sumrall, and his cousins (Peter's children) David Sumrall, Angela Grabowski, Andrew Sumrall and Adam Sumrall. They also name nine corporate entities — LeSEA, Inc., Family Broadcasting Corporation, LeSEA Global Feed the Hungry, Inc., LeSEA Broadcasting of South Bend, Inc., LeSEA Broadcasting of Indianapolis, Inc., LeSEA Broadcasting of Tulsa, Inc., LeSEA Broadcasting of Hawaii, Inc., LeSEA Broadcasting of St. Croix, Inc., and World Harvest Bible College Indiana Christian University, Inc.  The Amended Counterclaim contains ten counts, asserting claims for an accounting, copyright infringement (two distinct claims), violation of the Indiana right of publicity, tortious interference with expectancy, unjust enrichment, conversion, theft, common law fraud, and specific performance.  Only the specific performance claim in Count IX is not challenged by LeSEA's motion to dismiss.

One more bit of background should be noted before I set out my analysis of the arguments for dismissal.  In 2017, Lester petitioned the Probate Court of St. Joseph County, Indiana to open an estate for Dr. Sumrall, roughly 20 years after his death.  [DE 115 at ¶30.] The petition was opposed by Stephen and by Peter's heirs.  [*Id*.] During the Probate proceedings, a copy of a will by Dr. Sumrall, previously unknown to Lester, was filed by Angela Grabowski, who is Lester's cousin and a LeSEA board member. [*Id*. at ¶31.]  The will directs that Dr. Sumrall's residuary estate, which would include intangible property such as copyright and Dr. Sumrall's likeness, be divided among his children living at the time of his death, which were Stephen, Peter and Frank.  [DE 115-2

at 3.]  After an evidentiary hearing in which Lester represented himself, the Probate Court granted the opposition's Motion for Judgment on the Evidence, finding that Lester had "presented no evidence of any asset or liability that presently exists that has not been distributed."  [DE 126-1.]

The Indiana Court of Appeals affirmed the decision but on a different basis.  It found that the equitable defense of laches applied, finding inexcusable delay in seeking probate administration, an implied waiver of such administration, and circumstances resulting in prejudice to the adverse parties.  [DE 126-2.] This seems like a sensible conclusion since 20 years went by between Dr. Sumrall's passing and Lester's quixotic efforts to right a perceived wrong.  But it's worth pointing out that the laches decision of the Court of Appeals was limited to the narrow ruling of the trial court to deny the request to open an estate.  Simply put, too much time had passed to try and remedy things at this point. Whether the same salient point will apply to these counterclaims will have to be decided later on.

### Rule 12(b)(6) Standard

A motion under Fed.R.Civ.P. 12(b)(6) challenges the sufficiency of the complaint "to state a claim upon which relief can be granted."  The Supreme Court interpreted the Rule 12(b)(6) pleading standard in *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007), and *Ashcroft v. Iqbal,* 556 U.S. 662 (2009).  The Rule 12(b)(6) standard requires "a claim to relief that is plausible on its face," which in turn requires factual allegations sufficient to permit a reasonable inference that the defendant is liable for the misconduct alleged.

*Twombly*, 550 U.S, 570, 556.  The Seventh Circuit has described *Twombly* as establishing

"two easy-to-clear hurdles," namely that (1) the complaint describe the claim in

sufficient detail to give the defendant fair notice of the claim and the basis for it, and (2)

the allegations plausibly suggest that the plaintiff has a right to relief.  *Tamayo v.*

*Blagojevich*, 526 F.3d 1074, 1084 (7th Cir. 2008), quoting *Equal Employment Opportunity*

*Commission v. Concentra Health Services, Inc.*, 496 F.3d 773, 776 (7th Cir. 2007).

"Plausibility" in this context does not empower the court to consider which

party's story should be believed, but only means that "the plaintiff must give enough

details about the subject-matter of the case to present a story that holds together."

 *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010).   Ruling on a motion under

Rule 12(b)(6), I must accept the truth of the pleading's well-pleaded allegations, and

draw all inferences in the light most favorable to the plaintiff.  *Killingsworth v. HSBC*

*Bank*, 507 F.3d 614, 618 (7th Cir. 2007).

The Seventh Circuit's general rule is that after a dismissal under Rule 12(b)(6), a

plaintiff is given at least one opportunity to amend the pleading.  *Runnion ex rel.*

*Runnion v. Girl Scouts of Greater Chicago and Northwest Indiana*, 786 F.3d 510, 519 (7th Cir.

2015).  Unless "it is *certain* from the face of the complaint that any amendment would be

futile or otherwise unwarranted, the district court should grant leave to amend after

granting a motion to dismiss."  *Id*. (emphasis in original).

## Discussion

LeSEA has chosen a shotgun rather than a rifle in its attack on the Amended Counterclaims. I endeavor below to address all arguments raised by LeSEA in its briefing although brevity is necessary at some points in order to keep this opinion to a manageable length.

### A. Three Contentions About Standing

The Counterclaim Defendants, whom I collectively refer to as "LeSEA," raise three distinct arguments in support of the contention that "Lester lacks standing to bring claims related to the Purported Probate Assets." [DE 126 at 15.] LeSEA refers repeatedly to the "Purported Probate Assets," without defining the term. [*See, e.g.,* DE 126 at 12.] The final order of the Indiana Probate Court and the Memorandum Decision of the Indiana Court of Appeals have been filed with the motion to dismiss, and are cited by both sides. [DE 126-1, 126-2.] With its opposition, the Trust has also submitted a transcript of the Probate Court's hearing, which is then cited by both sides. [DE 127-1.] I find no use or definition of the term "Purported Probate Assets" in either state court ruling or in the Amended Counterclaim [DE 115]. Neither is it used in the Trust's Intervenor Complaint [DE 110] or LeSEA's Second Amended Complaint [DE 65]. I treat the term as encompassing Dr. Sumrall's Works and likeness.

I'll now address the three principal standing issues raised by LeSEA: 1) that only a personal representative has standing to represent the estate; 2) that there is no proof of

ownership in the copyright assets by the Plaintiff; and 3) that Lester does not have standing.

### 1.   Personal Representative's Exclusive Authority

Because LeSEA characterizes Dr. Sumrall's Works as "Purported Probate Assets," it argues that any claim seeking to recover "money or property belonging to an estate is a claim on behalf of the estate," which can be brought only by a personal representative of the estate under I.C. §29-1-13-3.  [DE 126 at 15-16.]  Citing *Inflow v. Henderson, Daily, Withrow & DeVoe*, 787 N.E.2d 385, 394 (Ind.Ct.App. 2003), LeSEA suggests that the Trust lacks standing because "[h]eirs do not have standing to assert claims 'independent of the personal representative and without probate court authority.'"  [DE 126 at 6.]  But the United States District Court for the Southern District of Indiana, interpreting *Inflow*, has correctly concluded that "[t]he pendency of estate administration was critical" to its holding.  *Sandusky v. St. Jude Children's Research Hosp., Inc.*, Cause No. 1:11-cv-1158-DKL-JMS, 2012 WL 3779200, at *10 (S.D.Ind. Aug. 30, 2012).

*Inflow* held that "[d]*uring administration,* the heir...may not maintain a suit independent of the personal representative and without probate court authority." *Inflow*, 787 N.E.2d at 394 (emphasis added).  Recognizing this limitation of *Inflow*, and considering also *First Farmers Bank & Trust Co. v. Whorley*, 891 N.E.2d 604 (Ind.Ct.App. 2008), *Sandusky* concludes that:  "*Inflow* and *Whorley* declare that, (1) while an estate is under administration, an heir does not have standing to sue to add assets to the estate and, thus, to his own expectant inheritance, and (2) a sole or residuary heir has standing

to sue if his claim accrued after the estate closed." *Sandusky*, 2012 WL 3779200, at *11. There has never been probate court administration of Dr. Sumrall's estate. Therefore, an argument based on *Inflow* does not defeat the Trust's standing to assert Frank's interests.

### 2. Ownership Interest in Dr. Sumrall's Works and Likeness

Copyright infringement claims require proof of ownership of a valid copyright. *Muhammad-Ali v. Final Call, Inc.*, 832 F.3d 755, 760 (7th Cir. 2016). LeSEA argues that "neither Frank, Lester S., nor the Trust are listed as owners of any of the copyrighted works listed in Exhibit A to the Counterclaim – LeSEA is." [DE 126 at 19.] This is, quite simply, incorrect. Indeed, a number of the copyright registrations included in Exhibit A name Dr. Sumrall, not LeSEA, as the copyright claimant. *See, e.g.*, DE 115-1 at 61, 62, 64, 66, 67, 69, 71. Building on this wobbly premise, LeSEA argues that Lester and the Trust have no standing to bring copyright or right of publicity claims because "(1) Lester failed to (and indeed cannot) allege an ownership interest in the Purported Probate Assets and (2) because no personal representative transferred any copyright or personality rights to Frank, Lester S. or the Trust." [DE 126 at 20.]

This argument ignores three salient points and the very basis of the counterclaims: (1) that Lester brings these claims as trustee of the Trust, not as an individual; (2) that the Trust does in fact allege an ownership interest in Dr. Sumrall's copyrights and likeness on the theory that Frank is a one-third joint owner of Dr. Sumrall's Works, either by intestate succession or by the terms of Dr. Sumrall's will;

10

and (3) that Frank assigned those rights to the Trust, along with the right to assert any claims and defenses relating to those rights. [DE 115 at ¶52, 57.]  LeSEA's argument does not identify a defect of the counterclaims' pleading, and is not a successful argument for dismissal of the claims.  Whether the claim of ownership can be proven is a separate question, and not one that can be addressed on a motion to dismiss, but the factual allegations of an ownership interest are sufficient.

### 3.      Personal Stake Required for Article III Standing

Next LeSEA argues that "Lester has not established a personal stake in the outcome of this litigation," and so has not established Article III standing.  [DE 126 at 20.]  Again, LeSEA misses the point when it says that no injury "particularized to Lester S. or the Trust" is alleged, as standing principles require.  [*Id*. at 21.]  The obvious response to this argument, as I have already explained, is that Counts I through VIII, the counts relating to the Works and likeness, are not brought by Lester as an individual, but by him as trustee of the Trust, which acts to enforce the rights of Frank (Lester's father). [DE 115 at ¶¶56, 57.]

Although throughout the motion LeSEA repeatedly refers to "Lester" as the counterclaim plaintiff, I will construe and refer to LeSEA's arguments as if made against the Trust and the interests it represents.  The Trust alleges that, whether by Indiana's laws of intestate succession or pursuant to the terms of the will belatedly produced, Frank is a one-third joint owner, along with Stephen and with Peter's heirs, of Dr. Sumrall's Works and likeness.  For purposes of the present motion under Rule 12(b)(6),

11

I assume the truth of the counterclaims' factual allegations and draw all inferences in favor of the Trust. *Tomayo*, 526 F.3d at 1081.  The facts alleged support a possible inference that Frank received co-ownership of the Works and likeness at his father's death and that he later conveyed them to the Trust.  So LeSEA's argument that Lester has no standing is without merit inasmuch as Lester is not the Plaintiff and the Trust (the actual Plaintiff) has an obvious stake in the outcome of this suit.

**B.    Two Arguments about Subject Matter Jurisdiction**

**1.    Probate Exception**

Federal courts sometimes apply what is called the "probate exception," finding that federal jurisdiction cannot be exercised to probate a will or administer a probate estate.  *See*, *e.g.*, *Markham v. Allen*, 326 U.S. 490, 494 (1946).  LeSEA argues that the probate exception requires dismissal of a number of the counterclaims.  Although the argument has some superficial appeal, I ultimately conclude that LeSEA has not persuasively demonstrated that the probate exception applies.

Referring to the Probate proceedings initiated by Lester in 2017, LeSEA contends that "[t]he Probate Court previously determined that neither the estate (nor Lester S. as an heir) were entitled to any right or title to any probate asset."  [DE 126 at 25.] Assuming that LeSEA is asserting that the Probate Court rejected any claim by Frank, Lester or the Trust to any inheritance from Dr. Sumrall's estate, LeSEA's paraphrase is misleading and overbroad in stating the Probate Court's holding.  The Probate Court declined to open an estate for determination or distribution of Dr. Sumrall's assets and

liabilities.  [DE 127-1 at 99.]  The court granted respondents' Motion for Judgment on the Evidence because it found that no evidence had been presented of "any asset or liability that presently exists that has not been distributed."  [DE 126-1 at 2.]

On appeal, the decision was affirmed on a different basis.  The Indiana Court of Appeals held that the attempt to open and administer Dr. Sumrall's estate was barred by the equitable doctrine of laches.  [DE 126-2 at 6-9.]  The opinion notes that "Appellant (Lester) waited for more than twenty years following his grandfather's death before requesting that an estate be opened and administered."  [*Id.* at 6.]  The Court of Appeals found inexcusable delay in the assertion of any rights in the estate, an implied waiver of any request for the establishment and administration of an estate, and prejudice to adverse parties that would result from the delay if administration were attempted.  [*Id.* at 7-9.] These elements of laches supported the affirmance of the Probate Court's judgment.  [*Id.* at 9.] The question, therefore, is whether the unwillingness of the Probate Court to open a probate estate and consider the distribution of any estate assets leave Frank without a means of obtaining a determination of inheritance from Dr. Sumrall?

In its reply, LeSEA makes plain that it does not invoke the probate exception against the tortious interference claim in Count IV of the amended counterclaims.  [DE 128 at 5.]  This is because "[t]he Supreme Court held in *Marshall* that a claim of tortious interference with expectancy did not trigger the probate exception."  *Kowalski v. Boliker*, 893 F.3d 987, 995 (7th Cir. 2018), citing *Marshall v. Marshall*, 547 U.S. 293, 314 (2006).  In

*Marshall*, the Supreme Court reined in lower courts' overbroad interpretation of the probate exception "to block federal jurisdiction over a range of matters well beyond probate of a will or administration of a decedents's estate." *Id.* at 311.  Attempting to bring clarity to the Supreme Court's previous decision in *Markham*, the *Marshall* decision holds that "the probate exception reserves to state probate courts the probate or annulment of a will and the administration of a decedent's estate; it also precludes federal courts from endeavoring to dispose of property that is in the custody of a state probate court." *Id.* at 311-12.

Prior to *Marshall*, the Seventh Circuit decided *Storm v. Storm*, 328 F.3d 941 (7th Cir. 2003), in which it found that the probate exception *did* apply to bar federal diversity jurisdiction over a grandson's claim for tortious interference with his expectancy in an inheritance from his grandmother.  *Id.* at 942.  After acknowledging the difficulty in defining "the precise contours of the probate exception" beyond its application to "pure" probate matters (administration of an estate or the probate of a will), the Seventh Circuit reviewed relevant considerations in determining the limits of the exception, repeating its past admonition that the exception should be "construed narrowly." *Id.* at 943-44.

According to *Storm*, "the policy goals underlying the  exception" inform decisions whether the federal courts can exercise jurisdiction over a particular case.  *Id.* at 944.  These include encouraging legal certainty, "that is, to ensure that the outcomes of probate disputes will be consistent by limiting their litigation to one court system,

rather than providing disputants the choice between two." *Id.* A related goal is the promotion of judicial economy. Since a testamentary determination "will generally begin in a state court...the interest in judicial economy argues for keeping it there until it is concluded." *Id.* The relative expertise of state probate judges who regularly deal with such matters, compared to federal judges who rarely deal with probate issues, is another "practical reason for the exception." *Id.* A "final practical reason" for the exception "is actually a consequence of the other rationales," namely the avoidance of "unnecessary interference with the state system of probate law." *Id.* Even though no will had been probated and no state probate proceedings had begun, the Seventh Circuit found that the "practical effect" of the tortious interference claim was essentially that of a will contest, so that the "case belongs in state court." *Id.* at 945.

I have considered subsequent courts' application of the pared-down probate exception in the wake of the *Marshall* decision. The Seventh Circuit applied *Marshall* to affirm the dismissal of federal claims challenging the probate-appointed guardian of the plaintiff's mother, which the court found to be a dispute over the state court's administration of an estate. *Struck v. Cook County Public Guardian*, 508 F.3d 858, 860 (7th Cir. 2007). The federal claims in *Struck* were brought while state probate proceedings were pending. On that basis, *Struck* distinguished its circumstances from *Jones v. Brennan*, 465 F.3d 304 (7th Cir. 2006), in which "[t]he father had died and the probate of his estate had been completed, so that the plaintiff was not seeking to inject the federal court into the administration of the estate and wrest a *res* from the control of another

court." *Id*.  Nonetheless, in *Jones* the Seventh Circuit held that to the extent Jones

complained "about the maladministration of her father's estate by the Cook County

probate court" her complaint "was tantamount to asking the federal district court to

take over the administration of the estate" which "clearly would violate the probate

exception." *Id*. at 307.

The Second Circuit's probate exception analysis also highlights the significance

of currently pending probate proceedings: "a federal court may neither 'dispose of

property that is in the custody of a state probate court,' nor take over the administration

of estate assets pending in probate courts." *Lefkowitz v. Bank of New York*, 528 F.3d 102,

107 (2nd Cir. 2007).  *In personam* claims for fraudulent misrepresentation and fraudulent

concealment, seeking "damages from Defendants personally rather than assets or

distributions from either estate," did not trigger the probate exception.  *Id*. at 107-08.

Judge Chang in the Northern District of Illinois has put it plainly: "if there never

was a state court proceeding over the *res* or all state court proceedings involving the *res*

have ended, then there is nothing to interfere with and the probate exception is

inapplicable." *Wolfram v. Wolfram*, 78 F.Supp.3d 758, 765 (N.D.Ill. 2015).  In another

Northern District of Illinois case, Judge Tharp held that tortious interference and breach

of fiduciary duty claims seeking compensatory damages for a trustee's tortious

behavior are not subject to the probate exception, which posed "no bar to federal

jurisdiction because the counts seek neither modification or administration of a will nor

control of a *res* in custody of the probate court." *Singer v. Mass. Mutual Life Ins. Co.*, 335 F.Supp.3d 1023, 1030 (N.D.Ill. 2018).

Where a federal claim's success "would just add assets to the decedent's estate," and "would not reallocate the estate's assets among contending claimants or otherwise interfere with the probate court's control over and administration of the estate," the claim is not within the probate exception to federal jurisdiction even "though based ultimately on the will." *Gustafson v. zumBrunnen*, 546 F.3d 398, 400 (7th Cir. 2008).  In *Gustafson*, an estate's personal representative brought an action in federal court based on tortious interference, seeking to recover from the widow money she had withdrawn from a bank account shortly after her husband's death.  *Id*.  The probate exception did not apply.  *Id*.

The Seventh Circuit has repeated its warning that "as a judicially created exception to the statutory grant of diversity jurisdiction, the probate exception should be narrowly construed."  *Sykes v. Cook County Circuit Court Probate Division*, 837 F.3d 736, 741 (7th Cir. 2016).  In *Sykes*, the court explained that "[i]n determining if the probate exception applies to an issue that is ancillary to a core probate matter, we look to the policies animating the exception, including consistency of legal decisions within a state court system, judicial economy, and the relative expertise of state judges as specialists in probate issues."  *Id*., citing *Storm*, 328 F.3d at 944.  *Sykes* found that an ADA claim about the denial of the assistance of a service dog in Probate Court proceedings was not within the probate exception.  *Sykes*, 837 F.3d at 741.

The courts' narrow interpretation of the probate exception after *Marshall* does not appear to support LeSEA's invocation of it here.  There is no currently pending probate proceeding exercising jurisdiction over Dr. Sumrall's estate.  The counterclaims seek money damages and concern property (Dr. Sumrall's Works and likeness) that has not been addressed in probate proceedings.  LeSEA fails to demonstrate that the outcome of the claims before this court would be inconsistent or would interfere with any probate court decision.

But many of the counterclaims are dependent on a determination that Frank and the Trust on his behalf have an ownership interest in the Works and likeness, assertedly by inheritance.  Does the ultimate necessity of that determination mean that the claims seek "administration" of Dr. Sumrall's estate by this court, such that the probate exception eliminates federal jurisdiction?  And do claims that Frank and the Trust are entitled to one-third of the proceeds of the Works and likeness constitute a reallocation of the estate's assets among contending claimants, to which the probate exception would apply?  *Storm* would support dismissal of the claims, but is it good law after *Marshall*?  Because LeSEA's analysis has not adequately answered these questions, I am not now persuaded that the probate exception applies to bar any of the counterclaims.

2.    **The *Rooker-Feldman* Doctrine**

Sometimes federal courts dismiss without prejudice claims that seek, in effect, to overturn prior decisions of a state court.  What is known as the *Rooker-Feldman* doctrine prohibits a party who loses in state court from "bring[ing] suit in federal court to obtain

18

relief that would effectively set aside the state-court judgments on those matters."

*Bedree v. Bedree*, 396 Fed.Appx. 312, 315 (7th Cir. 2010).  LeSEA argues that "Lester's

allegations relating to fraud and the state court's refusal to address ownership of Dr.

Sumrall's intellectual property are barred by the *Rooker-Feldman* doctrine."  [DE 126 at

26.]  This contention is directed to Counts I through VIII of the counterclaims, but the

argument founders.

 Under the narrow *Rooker-Feldman* doctrine, the "vital question...is whether the

federal plaintiff seeks the alteration of a state court's judgment."  *Milchtein v. Chisholm*,

880 F.3d 894, 898 (7th Cir. 2018).  "[D]istrict courts lack jurisdiction over 'cases brought

by state-court losers complaining of injuries *caused by* state-court judgments rendered

before the district court proceedings commenced and inviting district court review and

rejection of those judgments.'"  *Lyons v. Gene B. Glick Company, Inc.*, ___ Fed.Appx. ___,

2021 WL 225793, at *2 (7th Cir. Jan. 22, 2021), quoting *Exxon Mobil Corp. v. Saudi Basic

Indus. Corp.*, 544 U.S. 280, 284 (2005) (emphasis added).  "To determine whether an

injury was caused by a state-court judgment, we look to 'the *actual injury* claimed by the

plaintiff.'"  *Lyons*, at *2, quoting *Johnson v. Orr*, 551 F.3d 564, 568 (7th Cir. 2008)

(emphasis in original).

 The injuries claimed by the Trust are primarily Frank's allegedly wrongful

exclusion from the division of Dr. Sumrall's assets, and his deprivation of the value of

one-third of the profits from LeSEA's use of Dr. Sumrall's Works and likeness.

The state court's judgment, which merely refused to open a probate estate, did not address claims of fraud or Frank's intellectual property rights, and is not shown to be the source of the injuries the Trust asserts in its counterclaims.  A court's ability to redress past wrongs is different from the court's action *causing* the injury.  Because "[t]he alleged misconduct and injuries occurred outside of the Indiana proceedings," *Rooker-Feldman* does not bar the exercise of federal jurisdiction.  *Lyons*, at *2.  The Seventh Circuit in *Lyons* contrasted such circumstances with claims for injuries based on an eviction, which "were complete only when the Indiana court ordered the eviction." *Id*.  Because Lyons would not have suffered those injuries absent the eviction order, *Rooker-Feldman* applied to block those claims.  *Id*.  But Lyons' claims for discrimination and retaliation were not barred by *Rooker-Feldman* because they sought damages for conduct that "'predates the state litigation and caused injury independently of it.'"  *Id*., quoting *Iqbal v. Patel*, 780 F.3d 728, 730 (7th Cir. 2015).

The same can be said of LeSEA's conduct in concealing the will and excluding Frank from co-ownership of Dr. Sumrall's Works, injuries that predated the probate litigation and caused injury independently of the probate court's unwillingness to address the harm in the way Lester hoped.  As *Iqbal* explains, "if a plaintiff contends that out-of-court events have caused injury that the state judiciary failed to detect and repair, then a district court has jurisdiction." *Id*. at 730.  The Trust's counterclaims do not allege injuries "caused only by the state judge's rulings," and, as a result, *Rooker-*

*Feldman* does not preclude the exercise of federal jurisdiction. *Howell v. Dewey*, 817 Fed.Appx. 268, 270 (7th Cir. 2020).

### C.    Other Procedural Arguments for Dismissal

#### 1.    Adequate Relief in Probate Proceedings

LeSEA next contends that the tortious interference claim in Count IV, although not subject to the probate exception, should be dismissed "because Lester's remedies in the Probate Proceeding were adequate to allow him to raise his allegations regarding the will before the Probate Court," but "he failed to do so."  [DE 126 at 29.]  For this, LeSEA invokes Indiana law, which recognizes a cause of action for tortious interference with an expectancy, but also holds that the tort claim is unavailable to a plaintiff who could receive adequate relief in probate proceedings. In *Minton v. Sackett*, 671 N.E.2d 160, 162 (Ind.Ct.App. 1996), the Indiana Court of Appeals adopted the view of other states "prohibiting a tort action to be brought where the remedy of a will contest is available and would provide the injured party with adequate relief."  *See also Keith v. Dooley*, 802 N.E.2d 54, 57 (Ind.Ct.App. 2004) ("*Minton* represents a public policy decision that a plaintiff must challenge tortious conduct surrounding the execution or revocation of a will in the will contest, but if the will contest does not provide an adequate remedy, only then can the plaintiff file an independent tort action for interference with an inheritance.")

In this Rule 12(b)(6) context, I examine the adequacy of the pleading of Count IV, not (as LeSEA would have me do) whether the Trust has *proved* the inadequacy of

Indiana probate proceedings. *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 878 (7th

Cir. 2012) (a Rule 12(b)(6) motion tests the sufficiency of the complaint, not the merits of

the case). Count IV does not expressly allege the inadequacy of a probate court remedy.

[DE 115 at ¶¶94-106.] Where a federal complaint alleges the necessary elements of

tortious interference with expectancy, "including the inadequacy of a remedy in the will

contest," the claim survives a motion to dismiss. *Kozlowski v. Kozlowski*, No. 1:10-cv-

01538-MJD-RLY, 2011 WL 4349446, at *2 (S.D.Ind. Sept. 16, 2011). But Count IV does

allege that the counterclaim defendants "fraudulently den[ied] the existence of any

assets of Dr. Sumrall to the Probate Court." [DE 115 at ¶104.] Even if this is generously

interpreted as a contention that the counterclaim defendants' fraudulent conduct

prohibited relief from the Probate Court that would otherwise have been available, the

remedy for that would have been advocacy on that basis in the probate proceedings or,

if later discovered, a motion to vacate the judgment as fraudulently obtained.

"Adequate relief" doesn't mean success, it means opportunity to seek relief, and

the Trust has not alleged that there was inadequate opportunity for Frank to seek relief

from the Probate Court, either in the 2017 proceedings or at an earlier time after Dr.

Sumrall's death in 1996. *Minton*, 671 N.E.2d at 163 ("We emphasize that the adequacy

of a remedy is not dependent upon whether a will contestant prevails, but upon

whether the contestant has an opportunity to pursue the remedy"). Because Count IV

does not allege that probate proceedings offered an inadequate opportunity for Frank to

pursue his rightful inheritance from Dr. Sumrall's estate, all the elements of a claim of

22

tortious interference with expectancy are not pled in Count IV, which will be dismissed without prejudice to being amended to correct the omission.

### 2.   Res Judicata

LeSEA argues that Counts II through VIII, claims of copyright infringement, Indiana right of publicity, tortious interference, unjust enrichment, conversion, theft and common law fraud, are barred by both branches of the doctrine of *res judicata*, issue preclusion and claim preclusion.  [DE 126 at 32.]  With respect to the preclusive effect of a state court judgment, a federal court uses "the rules of preclusion applied by the State in which the rendering court sits."  *Taylor v. Sturgell*, 553 U.S. 880, 891 n.4 (2008).  *See also Matlin v. Spin Master Corp.*, 979 F.3d 1177, 1181 (7th Cir. 2020).

### a.   Issue Preclusion

Under Indiana law, "issue preclusion bars subsequent litigation of the same fact or issue that was necessarily adjudicated in a former suit."  *Miller Brewing Co. v. Ind. Dept. of State Revenue*, 903 N.E.2d 64, 68 (Ind. 2009).  The doctrine applies to matters that were actually litigated and decided by the other court, but not to all matters that could have been decided.  *Kirby v. Second Bible Missionary Church*, 413 N.E.2d 330, 332 (Ind.Ct.App. 1980).  Not every finding of fact made by a court is necessary to its ultimate conclusion; only fact finding that was necessary and material to the earlier decision has preclusive effect.  *Conn. Indem. Co. v. Bowman*, 652 N.E.2d 880, 883 (Ind.Ct.App. 1995).

Issue preclusion requires that the party against whom it is invoked had a full and fair opportunity to litigate the issue in the prior action. *Angelopoulos v. Angelopoulos*, 2 N.E.3d 688, 696 (Ind.Ct.App. 2013). And a court must consider whether it is otherwise unfair to apply issue preclusion given the facts of the particular case. *Id.* Factors pertinent to that inquiry include privity, the proponent of the issue's incentive to litigate the prior action, and the opponent of the issue's ability to have joined the prior action. *Id.*

The issue LeSEA claims "was raised and adjudicated before the Probate Court" is "whether the[] Purported Probate Assets were part of Dr. Sumrall's estate." [DE 126 at 33-34.] Is that a fair and accurate interpretation of what the Indiana courts decided? The Probate Court declined to open an estate because it found that Lester had not presented "evidence of any asset or liability that presently exists *that has not been distributed*." [DE 126-1 at 2 (emphasis added).] Does that necessarily encompass a finding that copyright assets had *never* been part of Dr. Sumrall's estate? Or only that if they were part of the estate, they had already been distributed? As Lester points out, the Probate Court's comments during its hearing suggest that the judge thought that copyright claims were "not part of the Estate necessarily," and were subjects for "other...proper avenues." [DE 127-1 at 89 of 100, 95 of 100.][1] For what it's worth, these comments suggest that the Probate Court did not adjudicate any facts about copyright

---

[1] I cite to the ECF page number, rather than the transcript's internal page number.

ownership (and, by the way, would also tend to run counter to application of the probate exception).

The Indiana Court of Appeals reviewed the Probate hearing transcript and found that Lester "did not provide any evidence proving that either the copyright interests or the paintings were part of the decedent's estate." [DE 126-2 at 5.] But, as I noted earlier, the basis for the Court of Appeals' affirmance of the Probate Court's judgment was laches, and the supporting analysis does not involve or rely upon any findings about copyright interests or whether Dr. Sumrall's estate included any. [*Id.* at 6-9.] LeSEA does not address how issue preclusion should be analyzed when two different courts previously rendered decisions and on different bases.

In any event, "issue preclusion does not extend to matters that were not expressly adjudicated and can be inferred only by argument." *Angelopoulos*, 2 N.E.3d at 696. Neither Indiana court expressly adjudicated any issues about whether Dr. Sumrall's Works or likeness were part of his estate. I am not persuaded that LeSEA demonstrates the existence of an issue or fact now asserted by the Trust on which the Indiana courts made a finding that was necessary and material to either court's decision.

### b.    Claim Preclusion

LeSEA would apply *res judicata* to the Trust's claims in Counts IV and VIII that LeSEA intentionally and fraudulently concealed the existence and location of Dr. Sumrall's will. [DE 126 at 35.] Because the controversial will surfaced during the

Probate proceeding, LeSEA contends that Lester could and should have made these claims there, where they would have been "integral to the ultimate issue of whether the estate had interests in any Purported Probate Assets and, if so, how those interests should be administered." [DE 126 at 35.]  Because only bits of the state court record have been filed in this case, it's not clear to me what issues were before the Probate Court, beyond the question whether or not to open an estate, and it is not clear how the allegedly fraudulent behavior would have been integral to that determination.  LeSEA's summary treatment of the claim preclusion argument is unpersuasive.

### D.    The Remaining Arguments for Dismissal

#### 1.    No Basis for Accounting in Count I

LeSEA argues that Count I fails to allege a cause of action that supports relief in the form of the accounting it seeks.  The claim is expressly based on federal copyright law, which supports an accounting to a co-owner of copyright.  *See, e.g., Greene v. Ablon*, 794 F.3d 133, 154 (1st Cir. 2015) (a co-owner of copyright has a duty to account to other co-owners for profits from the use or licensing of the copyright).  Although the law of copyright provides each co-owner with the right to use or license the work, subject to an accounting to other co-owners for any profits, an "equitable claim for division of profits from exploitation of the copyrighted work is a determination which arises under state rather than federal law."  *Donovan v. Quade*, 830 F.Supp.2d 460, 494 (N.D.Ill. 2011).  *See also Gaiman v. McFarlane*, 360 F.3d 644, 652 (7th Cir. 2004) (when co-ownership is conceded, the suit for an accounting of profits arises under state rather than federal

26

law).  First LeSEA argues that because "Lester's" copyright infringement claim in Count
II fails for one or more earlier-argued reasons, the derivative claim for an accounting
also fails.  But thus far I have rejected every argument for dismissal of Count II.

Next LeSEA invokes an Indiana legal principle that the equitable remedy of an
accounting is unavailable where the plaintiff has adequate remedies at law.  If that
principle is applicable, LeSEA does not demonstrate that it defeats Count I at this stage
of the case.  An accounting for more than 20 years' unknown use of copyrighted
materials since Dr. Sumrall's death would appear to be a reasonable and perhaps
necessary predicate to seeking damages by way of an unjust enrichment claim or other
appropriate legal cause of action.

In one of the decisions cited by LeSEA on this point, the late Judge Rudy Lozano
of this court observed that an action for an accounting "'is addressed to the sound
discretion of the trial court.'"  *Entertainment USA, Inc. v. Moorehead Communications, Inc.,*
93 F.Supp.3d 915, 933 (N.D.Ind. 2015), quoting *Lily, Inc. v. Silco, LLC,* 997 N.E.2d 1055,
1076 (Ind.Ct.App. 2013).  Recognizing that "[a] court may refuse to award an equitable
accounting to a party who has an adequate remedy at law," Judge Lozano denied
summary judgment on a claim for an accounting, finding that it was premature to
decide the accounting claim because there existed genuine issues of material fact about
the accounts at issue.  *Id., quoting Grant v. Van Natta,* No. 1:10-cv-01220-MJD-LJM, 2013
WL 466212, at *10 (S.D.Ind. Feb 7, 2013) (internal citation omitted).  Much more so at the
motion to dismiss stage in this case, I cannot dispose of the claim for an accounting,

which may yet prove to be an appropriate vehicle for vindication of Frank's co-ownership of copyrights.

### 2.    Copyright Preemption of Counts V, VI, and VII

LeSEA argues that the unjust enrichment, conversion and theft counterclaims under state law are preempted by federal copyright law.  [DE 26 at 38.]  The argument is not referenced at all in LeSEA's reply.  [DE 128.]  LeSEA's motion to dismiss was brought under Fed.R.Civ.P. 12(b)(6), which, as LeSEA acknowledges, "is to test the legal sufficiency of the complaint."  [DE 126 at 14.]  But "[p]reemption is an affirmative defense..., and pleadings need not anticipate or attempt to circumvent affirmative defenses."  *Bausch v. Stryker Corp.*, 630 F.3d 546, 561 (7th Cir. 2010) (internal citations omitted).  The Court of Appeals has said that "[a]ffirmative defenses do not justify dismissal under 12(b)(6)."  *Doe v. GTE Corp.*, 347 F.3d 655, 657 (7th Cir. 2003).  Instead, a defendant's proper course is "filing an answer to plead preemption as an affirmative defense and moving for judgment on the pleadings under Rule 12(c)."  *Bausch*, 630 F.3d at 561.

In any event, a copyright co-owner's duty to account "comes from equitable doctrines relating to unjust enrichment and general principles of law governing the rights of co-owners."  *Greene*, 794 F.3d at 154 (internal citations omitted).  And in view of the rights of each co-owner to independently use and license the copyright, subject to accounting to the other co-owners, one co-owner cannot be liable to another for copyright infringement.  *Corbello v. DeVito*, 777 F.3d 1058, 1066 (9th Cir. 2015); *Oddo v.*

*Ries*, 743 F.2d 630, 633 (9th Cir. 1984).  Because there is an unresolved dispute as to whether Frank has co-ownership in Dr. Sumrall's copyrights, at this stage it is unclear whether the Trust's remedies, if any, will be in copyright or tort, so that the counterclaims' pleading of various causes of action in the alternative is not shown to be untenable for now.  LeSEA has not demonstrated that Counts V, VI, and VII fail to state claims upon which relief could be granted.

### 3.     Pleading Standards of Federal Rules of Civil Procedure 8 and 9

LeSEA challenges the counterclaims on the basic pleading standards set forth by the Supreme Court in the *Iqbal* and *Twombly* cases.  LeSEA argues that the nine of ten counterclaims asserted against the "Counterclaim Defendants" are insufficient because they lack allegations explaining the conduct of each defendant that supports liability. [DE 126 at 40.]  In response, the Trust enumerates particular paragraphs in the pleading that contain "specific allegations of wrongful behavior" by the five individual defendants, and further explains the conduct relied upon.  [DE 127 at 19.]  The allegations include the deliberate concealment of Dr. Sumrall's will, misrepresentations to the Probate Court concerning the lack of estate assets, and the use of and benefit from the Works and likeness without accounting to Frank as co-owner.  [*Id.*]  LeSEA's reply acknowledges this recitation and does not reiterate the assertion that the pleading is insufficient against the individual defendants.  [DE 128 at 11.]

LeSEA is not so persuaded that the Trust's citation to particular paragraphs of the counterclaims demonstrates sufficiently detailed pleading of the conduct of the

corporate defendants.  [*Id*. at 11-12.]  The basis for their liability generally is captured in ¶29 and ¶51 of the Amended Counterclaim:  "LeSEA and its affiliates used Dr. Sumrall's Works and likeness extensively" in the years following Dr. Sumrall's death, and "are still using Dr. Sumrall's Works and likeness to promote its business, including sales and fundraising and by giving those works away for free."  [DE 115 at 6, 9.]  In connection with the clear allegation that Frank is a joint owner of the likeness and the copyright in the Works, and has a claim to a share in the profits derived from them, the counterclaims sufficiently allege the conduct for which the corporate defendants are claimed to be liable.  The counterclaims do not rely on insufficient allegations of collective responsibility so much as allege the commission by multiple corporate defendants of the same wrongful conduct.  LeSEA's reliance on Rule 8 is unavailing.

Count VIII is a claim of common law fraud, based on LeSEA's concealment of the will and misrepresentation as to Dr. Sumrall's estate and his testamentary intentions.  The fraud claim alleges that "Counterclaim Defendants knowingly and intentionally concealed, failed to disclose, falsely misled, and perpetuated a continuing fraud on Frank Sumrall by representing that Dr. Sumrall did not have a will, that Dr. Sumrall's estate had no assets, and that Dr. Sumrall wanted all his assets to go to LeSEA."  [DE 11 at ¶122.]  LeSEA's final argument is that Count VIII fails to meet the requirement of Fed.R.Crim.P. 9(b) that "a party must state with particularity the circumstances constituting fraud."

In response, the Trust reviews its specific allegations of wrongful behavior supporting Count VIII as against Stephen Sumrall, Angela Grabowski, Andrew Sumrall, David Sumrall and Adam Sumrall.  [DE 127 at 19.]  As with the Rule 8 argument, LeSEA's reply suggests that it acknowledges the Rule 9 sufficiency of the pleading of fraud against the individual defendants.  [DE 128 at 11.]  The Trust is not as successful in defending its fraud allegations against the nine corporate defendants. Paragraphs 28, 29, 41, 50-51 and 60 of the Amended Counterclaim are cited by the Trust in support of the fraud claim against the LeSEA corporate defendants.  [DE 127 at 19-20.]  Those paragraphs allege the corporate defendants' use of and benefit from Dr. Sumrall's Works and likeness, but not any acts of fraudulent concealment or misrepresentation attributable to the corporations.  The pleading is devoid of the necessary "who, what, when, where, and how" of deceptive conduct by the corporate defendants. *Vanzant v. Hill's Pet Nutrition*, 934 F.3d 730, 738 (7th Cir. 2019).  The Rule 9 argument is rejected as to the individual defendants, but succeeds as against the corporate defendants, and Count VIII will be dismissed without prejudice as to them.

**ACCORDINGLY:**

Counterclaim Defendants' Motion to Dismiss Counts I-VIII and X of the Amended Counterclaim [DE 125] is GRANTED IN PART as follows, but in all other respects, the Motion to Dismiss is DENIED.

Count IV of the Amended Counterclaim is DISMISSED WITHOUT PREJUDICE.

Count VIII of the Amended Counterclaim is DISMISSED WITHOUT PREJUDICE as to the nine corporate defendants only.

SO ORDERED.

ENTERED:  March 5, 2021.

 /s/ Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT