LESEA, INC., FAMILY BROADCASTING
CORPORATION and LESEA GLOBAL
FEED THE HUNGRY, INC.,

Plaintiffs,

     v.                                    No. 3:18CV914-PPS/MGG

LESEA BROADCASTING CORPORATION,
LESTER SUMRALL, DR. JOHN W. SWAILS III,
and EDWARD WASSMER,

Defendants.

_____

LESTER SUMRALL and
THE LESTER SUMRALL FAMILY TRUST,

Counterclaim Plaintiff and Third-Party Plaintiffs,

     v.

LESEA, INC., FAMILY BROADCASTING CORPORATION,
LESEA GLOBAL FEED THE HUNGRY, INC.,
LESEA BROADCASTING OF SOUTH BEND, INC.,
LESEA BROADCASTING OF INDIANAPOLIS, INC.,
LESEA BROADCASTING OF TULSA, INC.,
LESEA BROADCASTING OF HAWAII, INC.,
LESEA BROADCASTING OF ST. CROIX, INC.,
WORLD HARVEST BIBLE COLLEGE INDIANA
CHRISTIAN UNIVERSITY, INC., STEPHEN P. SUMRALL,
DAVID M. SUMRALL, ANGELA N. GRABOWSKI,
ANDREW J. SUMRALL, and ADAM SUMRALL,

Counterclaim Defendants and Third-Party Defendants.

_____

FRANK LESTER SUMRALL,

     Intervenor-Plaintiff,

v.

LESTER SUMRALL, Individually and
in his capacity as Trustee of
THE LESTER SUMRALL FAMILY TRUST,

      Defendant.

## OPINION AND ORDER

Dr. Lester Frank Sumrall, a prominent Christian evangelist, founded the Lester Sumrall Evangelistic Association or LeSEA in 1957, and was a pioneer in Christian broadcasting. Many LeSEA non-profit corporations were created ostensibly for the purpose of carrying out Dr. Sumrall's charitable, teaching and evangelistic ministries, and many Sumrall family members have long retained positions of significance within those organizations. Dr. Sumrall died in 1996. This lawsuit, with its many parties, claims and counterclaims, represents a bitter and unfortunate division among his surviving family members concerning control of the LeSEA entities and the use, or misuse, or Dr. Sumrall's legacy.

Plaintiffs LeSEA, Inc. and two associated entities filed a complaint in November 2018 against the similarly named LeSEA Broadcasting Corporation and its founder, Lester Sumrall, a grandson of Dr. Sumrall, alleging that Lester had "engaged in a long pattern of abusive, harassing, and unlawful conduct against LeSEA and his own family members," including by malicious and improper use of the LeSEA name. [DE 1 at ¶¶1, 2.] Lester responded with a counterclaim and third-party claims, which he brings chiefly as the Trustee of The Lester Sumrall Family Trust. The counterclaims assert that

Lester's father Frank, one of the three sons of Dr. Sumrall, assigned to the Trust all his rights in Dr. Sumrall's works and likeness, to which he claims a one-third interest by inheritance. To the original plaintiffs, the Trust added as third-party defendants a number of additional LeSEA entities, including broadcasting corporations and two colleges, as well as five individual Sumrall family members associated with the LeSEA empire. To simplify matters in this complicated landscape, I will generally use "LeSEA" to refer to the originals plaintiffs and to the counterclaim and third-party defendants. I will generally use "the Trust" to refer to Lester and the Trust as the counterclaim plaintiffs.

Following the March 5, 2021 dismissal of several counts of the first amended counterclaim without prejudice [DE 166], the Trust filed a Second Amended Counterclaim [DE 170]. Now before me is yet another motion by LeSEA seeking to dismiss or to strike portions of the Trust's latest counterclaims. [DE 183.]

### *Motion to Dismiss Count IV of the Second Amended Counterclaim*

The Supreme Court interpreted federal pleading standards in *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007), and *Ashcroft v. Iqbal,* 556 U.S. 662 (2009). To survive a motion to dismiss under the Fed.R.Civ.P. 12(b)(6) standards, a complaint must "state a claim to relief that is plausible on its face," which in turn requires factual allegations sufficient to permit a reasonable inference that the defendant is liable for the misconduct alleged. *Twombly*, 550 U.S, 570, 556. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between

3

possibility and plausibility of entitlement to relief.'" *Iqbal,* 556 U.S. at 678 (quoting

*Twombly,* 550 U.S. at 557). Thus, "a plaintiff must do better than putting a few words on

paper that, in the hands of an imaginative reader, *might* suggest that something has

happened to her that *might* be redressed by the law." *Swanson v. Citibank, N.A.,* 614 F.3d

400, 403 (7th Cir. 2010) (emphasis in original).

In my March ruling, I dismissed without prejudice Count IV of the first amended

counterclaim, a claim for tortious interference with expectancy. In Count IV, the Trust

alleged that Frank had an expectancy of an inheritance from his father, Dr. Sumrall, and

that the Sumrall family members and LeSEA entities named as counterclaim defendants

interfered with (actually defeated) the expectancy by various means, including

concealing Dr. Sumrall's will and repeatedly misrepresenting to Frank and others that

Dr. Sumrall intended that his assets pass to LeSEA. [DE 115 at 15-17.] The tort of

interference with an expectancy is recognized in Indiana law, which I found requires

that the Trust plead and prove "that probate proceedings offered an inadequate

opportunity for Frank to pursue his rightful inheritance from Dr. Sumrall's estate." [DE

166 at 22.] Because Count IV contained no such allegation, I dismissed Count IV

"without prejudice to being amended to correct the omission." [*Id*. at 23.]

In the current motion, LeSEA contends that the second amended Count IV, again

a claim for tortious interference with expectancy, does not adequately remedy the

omission that prompted its earlier dismissal. [DE 184 at 7.] Instead, LeSEA argues that

"the Trust merely rephrases, combines, and relocates certain allegations related to

Counterclaim Defendants' supposed conduct." [*Id.* at 8.] LeSEA challenges the adequacy of the factual content of the counterclaim to satisfy the requirements of *Twombly* and *Iqbal.* [*Id.* at 7.] I don't find the argument persuasive.

The second amended Count IV clarifies and expands the allegations of the previous pleading. The Trust's second amended tortious interference claim contains new factual allegations that the corporate counterclaim defendants, without accounting to Frank for his share of the profits he expected to inherit from Dr. Sumrall, "continued to exploit Dr. Sumrall's assets," specifically his "IP," defined as his "Works and right of publicity." [DE 170 at ¶115, ¶33.] Count IV alleges that the commercial use of Dr. Sumrall's IP netted donation income to the Corporate Counterclaim Defendants "in excess of $1 Billion." [DE 170 at ¶116.] The claim also contains new allegations: in ¶117 that the "probate court refused to address or consider Dr. Sumrall's IP;" in ¶118 that as a result "Frank was unable to pursue his rightful inheritance from Dr. Sumrall's estate in the Probate proceedings;" and in ¶119 that "Frank could not obtain adequate relief in the probate court." [DE 170 at 18.]

The conclusions expressed in ¶¶ 118 and 119 state the missing element of a tortious interference with expectancy claim, as identified in my previous ruling. Inadequate on their own, the conclusory allegations are now supported by both new and previously pleaded factual allegations that the movants, motivated by their profitable exploitation of Dr. Sumrall's IP, fraudulently misrepresented that Dr. Sumrall wanted all of his assets to go to the LeSEA entities and denied the existence of any IP

assets of Dr. Sumrall to the Probate Court, which refused to consider Dr. Sumrall's IP as a class of assets requiring any probate determination, so that Frank was unable to obtain adequate relief in the Probate Court. [DE 170 at ¶¶55, 114-122.] As the Trust argues, the second amended counterclaim alleges "that the Trust could not obtain relief in the probate court because the probate court refused (in 2017) to open the estate of Dr. Sumrall or address Dr. Sumrall's IP assets." [DE 194 at 4.]

In their reply, movants make several arguments for the first time. They argue that, even in the absence of a will or knowledge of its existence, Frank could have sought relief from the Probate Court after Dr. Sumrall's death, citing various remedies and proceedings generally available in Indiana Probate Courts. [DE 198 at 3.] This argument goes to the merits of the element of inadequate relief, rather than its pleading, and so does not support a motion to dismiss. Movants further contend that a tortious interference with expectancy claim does not lie "where the alleged interference occurred after the testator's death." [DE 198 at 6-7.] Issues raised for the first time in reply are waived, because the opponent has no opportunity to respond. *Wonsey v. City of Chicago*, 940 F.3d 394, 398 (7th Cir. 2019). *See also Bilk v. Shearing*, 2021 WL 2416560, __ Fed.Appx. __ __, at *3 (7th Cir. 2021); *Cremation Society of Illinois, Inc. v. International Brotherhood* , 869 F.3d 610, 617 n.2 (7th Cir. 2017); *Alam v. Miller Brewing Co.*, 709 F.3d 662, 668 n.3 (7th Cir. 2013). Neither of these arguments supports dismissal of Count IV for failure to state a claim.

The second amended Count IV now contains the missing element of the tortious

interference cause of action and, with new factual allegations in support, presents a

claim to relief that is plausible on its face, a "story that holds together." *Swanson v.*

*Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010). The motion to dismiss Count IV will be

denied.

### *Motion to Dismiss Count VIII of the Second Amended Counterclaim*

Count VIII of the first amended counterclaim asserted a claim of common law

fraud, based on concealment of Dr. Sumrall's will, and misrepresentation as to his estate

and testamentary intentions. [DE 115 at 19.] My ruling in March dismissed Count VIII

without prejudice as to the nine corporate defendants only, for lack of allegations of

"any acts of fraudulent concealment or misrepresentation attributable to the

corporations." [DE 166 at 31.] The claim has been renewed in the second amended

counterclaim, and LeSEA again challenges whether the fraud claim as against the

corporate defendants is supported by allegations specific enough to satisfy the

particularity requirements of Rule 9(b).

The Trust responds that the corporate defendants' fraud "lies in their false

statement of ownership of Dr. Sumrall's IP..., their exploitation of it and explicit denial

of Frank's rights to it." [DE 194 at 6.] The Trust defends Count VIII by contending that

"[e]very time the corporate Defendants assert their ownership of the IP (as they do on

the various Websites, or to the public in seeking donations, or to book publishing

companies, or on radio and TV), they are denying the truth of Dr. Sumrall's wishes (as

expressly set out in his will), and fraudulently claiming that those assets are owned solely by the corporations." [*Id.*] The portions of the counterclaim cited for this, DE 170 at ¶¶33-34, ¶¶82-83, and ¶¶102-103, all make extremely general allegations that the counterclaim defendants' exploited Dr. Sumrall's Works and likeness.

For example, ¶34 alleges that the corporate defendants "used and exploited Dr. Sumrall's IP extensively [following Dr. Sumrall's death] [s]pecifically [in] broadcasts on FM and shortwave radio, various full power television stations across the county, including World Harvest Television, DirecTV Channel 367, twice daily in 20 distinct advertising markets." Similarly, ¶83 alleges that the counterclaim defendants (generally, not the corporate defendants in particular) exploited Dr. Sumrall's works on the internet by "advertising, distribution, and use of the works" via more than 30 listed websites. In ¶102, the second amended counterclaim alleges that the counterclaim defendants generally have used "Dr. Sumrall's right of publicity to broadly advertise their organizational activities, including both product sales and fundraising, via broadcast radio, television, the Websites and the Internet."

These broad and sweeping allegations fall far short of the particularity requirement of Fed.R.Civ.P. 9(b) applicable to claims of fraud. There is nothing "particular" about these allegations, which certainly do not specifically identify the "who, what, when, where, and how" of the alleged fraud by any corporate defendant. *Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 333 (7th Cir. 2018). In response to the motion to dismiss, the Trust fails to rebut LeSEA's assertion that the second

amended counterclaim entirely fails to identify a single specific fraudulent statement, much less when, where and by whom it was made. The particularity required by Rule 9(b) is not met where the counterclaim defendants are left to consider what is alleged to be fraudulent within literally hundreds of unspecified radio and television broadcasts and the unspecified content of more than 30 websites.

The Trust also asserts that the individual and corporate counterclaim defendants are "inherently intertwined given that three generations of Sumrall family members have had a majority vote on each of the corporate CC Defendants' Boards and have exercised control over the day-to day operations and management of the companies from 1996 to the present." [DE 194 at 7.] On that basis, the Trust concludes that "the knowledge of the individual CC Defendants should be imputed to the corporations as a matter of law." [*Id.*] Whether or not "knowledge" can be imputed, fraud requires conduct, in the form of acts or representations, and the Trust in its reply (much less in the allegations of the pleading now challenged) fails to offer either an explanation or the allegations necessary to support a conclusion that the corporate defendants are liable for particularly described fraudulent conduct by individual defendants.

The assertion that the corporations "were equally culpable in the misuse, theft and exploitation of Dr. Sumrall's assets" may or may not be true, but even if so, it amounts – as I said in the earlier dismissal order – to an allegation of "the corporate defendants' use of and benefit from Dr. Sumrall's Works and likeness, but not any acts of fraudulent concealment or misrepresentation attributable to the corporations." [DE

166 at 31.]  As I previously concluded with respect to the amended counterclaim, the second amended counterclaim does not plead "the necessary 'who, what, when, where, and how' of deceptive conduct by the corporate defendants."  [*Id.*, citing *Vanzant v. Hill's Pet Nutrition*, 934 F.3d 730, 738 (7th Cir. 2019).]  The motion to dismiss will be granted with respect to Count VIII's fraud claim against the corporate defendants, this time with prejudice rather than afford the Trust an opportunity to amend for a fourth time.  *City of Livonia Emps' Ret. Sys. & Local 295/Local 851 v. Boeing Co.*, 711 F.3d 754, 762 (7th Cir. 2013); *Emery v. Am. Gen. Fin., Inc.*, 134 F.3d 1321, 1322-23 (7th Cir. 1998); *In re Supreme Industries, Inc. Securities Litigation*, 3:17CV143-PPS/MGG, 2019 WL 1436022 at *12 (N.D.Ind. Mar. 29, 2019).

**_Motion to Strike Improper Amendments to Counts V and VI of the_**
**_Second Amended Counterclaim_**

The March 5 opinion dismissed Counts IV and VIII of the amended counterclaim without prejudice to being amended.  [DE 166 at 23, 31, 32.]  Pursuant to Fed.R.Civ.P. 15(a)(2), any further amendment of the counterclaim required either "the opposing party's written consent or the court's leave."  The second amended counterclaim was filed on March 22, 2021 without leave of court, but the counterclaim defendants represent that "[o]n March 18, 2021, counsel for Counterclaim Defendants conferred on Counterclaim Plaintiffs filing a Second Amended Counterclaim to address the deficiencies identified by the Court in Counts IV and VIII."  [DE 184 at 14.]  The

counterclaim defendants now move to strike portions of Counts V and VI that they say were amended without their consent or leave of court.

The movants challenge only certain amendments to Counts V and VI of the second amended counterclaims, not the amendments to Count IV and VIII which had been dismissed without prejudice. Count V is a claim of unjust enrichment alleging that the counterclaim defendants have profited from unauthorized use of Dr. Sumrall's Works and IP. [DE 170 at 18-19.] The amended counterclaim asserted Count V only on behalf of the Trust. [DE 115 at 17.] The second amended counterclaim asserts the claim on behalf of Lester individually, as well as the Trust. [DE 1 70 at 18, 19.] Count VI is a claim of conversion. In the amended counterclaim, Count VI, asserted on behalf of the Trust, alleged that the counterclaim defendants converted Dr. Sumrall's Works and likeness. [DE 115 at 18.] The second amended Count VI adds Lester as a plaintiff and adds a reference to "Lester's Traveler Photograph."[1] [DE 170 at 19.]

Although Lester is not a new party to the litigation overall, and the Traveler Photograph was already the subject of various claims, it is silly (at best) to dispute that the second amended counterclaim adds Lester as a new party-plaintiff to Counts V and VI, and that the Traveler Photograph was not previously identified as property converted by the counterclaim defendants. These changes are not shown to be mere

---

[1] The pleadings define the "Traveler Photograph" as a particular photo Lester took of Dr. Sumrall in 1994. [DE 115 at ¶58; DE 170 at ¶75.] The Traveler Photograph is not part of Dr. Sumrall's Works or IP, as those terms are defined in the pleadings. [DE 15 at ¶24; DE 170 at ¶¶26, 33.]

"clarifications," as the opposition suggests. [DE 194 at 9.] Instead, these are substantive amendments for which leave was not granted, nor the opposing party's consent given.

In fact, no leave was ever requested before the filing of the second amended counterclaim. Although my March 5 order indicated that the dismissal of Counts VI and VIII was without prejudice, that did not extend the Trust *carte blanche* to amend its counterclaims any way it pleased. The Trust should still have requested leave to file and proffered the proposed amended pleading so that I and the opposition could consider whether the amendments were objectionable. This was not done, and I agree with LeSEA that no ruling of the court gave Lester and the Trust "infinite leeway to modify" the counterclaims. I am aware that leave to amend is to be freely given as justice requires, according to Fed.R.Civ.P. 15(a)(2). But here, the counterclaim plaintiffs filed their third version of their counterclaims without leave of court, and, even when challenged by a motion to strike, have failed to explain why justice requires that these substantive changes be permitted at this stage of the litigation. The motion to strike will be granted.

**ACCORDINGLY:**

Counterclaim Defendants' Motion to Dismiss Counts IV and VIII of the Second Amended Counterclaim [DE 183] is DENIED with respect to Count IV and GRANTED with respect to Count VIII.

Counterclaim Defendants' Motion to Partially Strike Counts V and VI of the Second Amended Counterclaim [DE 183] is GRANTED, and references to Lester

Sumrall as a party-plaintiff and to the Traveler Photograph are STRICKEN from Counts

V ad VI as amendments improperly filed without leave of court or the opposing party's

consent.

SO ORDERED.

ENTERED:  July 16, 2021.          /s/ Philip P. Simon
                                 UNITED STATES DISTRICT JUDGE