UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

LESEA, INC., FAMILY BROADCASTING
CORPORATION and LESEA GLOBAL
FEED THE HUNGRY INC,

Plaintiffs,

v.  No. 3:18CV914-PPS/MGG

LESEA BROADCASTING CORPORATION,
LESTER SUMRALL, DR. JOHN W. SWAILS III,
and EDWARD WASSMER,

Defendants.

---

LESTER SUMRALL and
THE LESTER SUMRALL FAMILY TRUST,

Counterclaim Plaintiff and Third-Party Plaintiffs,

v.

LESEA, INC., FAMILY BROADCASTING
CORPORATION, LESEA GLOBAL FEED
THE HUNGRY, INC., LESEA BROADCASTING
OF SOUTH BEND, INC.,  LESEA BROADCASTING
OF INDIANAPOLIS, INC.,  LESEA
BROADCASTING OF TULSA, INC.,  LESEA
BROADCASTING OF HAWAII, INC.,  LESEA
BROADCASTING OF ST. CROIX, INC.,  WORLD
HARVEST BIBLE COLLEGE INDIANA CHRISTIAN
UNIVERSITY, INC., STEPHEN P. SUMRALL, DAVID
M. SUMRALL, ANGELA N. GRABOWSKI, ANDREW J.
SUMRALL, and ADAM SUMRALL,

Counterclaim Defendants and Third-Party Defendants.

---

FRANK LESTER SUMRALL,

    Intervenor-Plaintiff,

v.

LESTER SUMRALL, Individually and
in his capacity as Trustee of
THE LESTER SUMRALL FAMILY TRUST,

    Defendant.

## OPINION AND ORDER

As previous opinions have explained, this case pits various family members against one another over control of the LeSEA Christian broadcasting empire that is the legacy of Dr. Lester Sumrall, the family's patriarch, a preacher and evangelist who died in 1996. This vehement and voluminous litigation is again before me on the latest of the LeSEA plaintiffs' efforts to chip away at the many counterclaims against them. LeSEA's motion for partial judgment on the pleadings challenges three different counts of the Second Amended Counterclaim of Lester Sumrall and the Lester Sumrall Family Trust of which he is Trustee.

### Right of Publicity Claim in Count III

Count III is a claim of violation of founder Dr. Sumrall's rights of publicity under the governing Indiana statute, I.C. §32-36-1 *et seq*. Indiana law defines the "right of publicity" as "a personality's property interest in the personality's" name, voice, signature, photograph, image, likeness, distinctive appearance, gestures, or mannerisms. I.C. §32-36-1-7(1)-(9). LeSEA argues that the "rights and remedies set forth in the Publicity Statute 'may be exercised and enforced by a person who possesses

2

a total of *not less than one-half (1/2) interest of the personality's recognized rights*." [DE 227 at 3, quoting §32-36-1-1-18(a) (emphasis added).] The Trust claims an assignment of the interests and claims that accrued to one of Dr. Sumrall's three sons upon his death, namely Frank Sumrall, the father of counterclaim plaintiff and Trustee Lester. On the ground that the Trust asserts control over only Frank Sumrall's one-third joint ownership of Dr. Sumrall's intellectual property, including his publicity rights, LeSEA contends that the Right of Publicity claim fails on its face. [DE 227 at 4.]

The Trust responds that its claim is that Frank owns 100% of Dr. Sumrall's Right of Publicity, citing DE 170 at ¶90. The allegation the Trust points to is that "[b]ecause Counterclaim Defendants, and/or their predecessors, forfeited any right in and to Dr. Sumrall's Works, Frank Sumrall is the rightful full owner of Dr. Sumrall's Works." [*Id.*] The forfeiture allegedly resulted from the commission of fraud by the Counterclaim Defendants and/or their predecessors "with respect to ownership of Dr. Sumrall's works." [*Id.* at ¶89.]

But LeSEA points out in reply that the Trust's glib opposition misconstrues the Second Amended Counterclaim's own careful definitions of relevant terms. The pleading defines "Dr. Sumrall's Works" collectively as his "numerous notes, manuscripts, sermons, and books, as well as many other original works, including, but not limited to, audio and visual recordings, images, curriculum, articles, motion pictures, and similar works." [*Id.* at ¶26.] The counterclaim further defines "Dr. Sumrall's IP" as consisting of his "Works and right of publicity." [*Id.* at ¶ 33.] "IP"

3

presumably refers to "intellectual property" though the pleading does not explain this. Consideration of how these terms have been defined in the Second Amended Counterclaim leads to the conclusion that "Dr. Sumrall's Works" does *not* include his Right of Publicity, because the latter is not included in the itemized definition of the former and because the two are listed separately as making up "Dr. Sumrall's IP."

Besides citing to the pleading's allegation that Counterclaim Defendants forfeited any right in and to Dr. Sumrall's Works as the result of fraud, The Trust argues in opposition that Frank's two brothers, Steven and Peter, "disclaimed their inheritance" and that as a result Frank received 100% of their father's estate. [DE 29 at 4.] But this theory of disclaimer and relinquishment is not set out in the Trust's Second Amended Complaint, and cannot defeat a motion for judgment on the pleadings. *See, e.g., Wagner v. Teva Pharm. USA, Inc.*, 840 F.3d 355, 359 (7th Cir. 2016).

On its face and in light of its own definitions of key terms, the Second Amended Counterclaim does not allege that the Trust possesses at least a 50% interest in patriarch Dr. Sumrall's rights of publicity, as required by the Indiana statute. Having determined that the Right of Publicity claim fails based on this analysis, I do not consider the Counterclaim Defendants' alternative arguments that various statutory exceptions defeat portions of the Trust's Right of Publicity claim. Judgment on the pleadings will be granted to the Counterclaim Defendants on Count III of the Second Amended Counterclaim. Because the counterclaim has already been pleaded three times and any

4

deadline limiting the amendment of pleadings has long since passed, the dismissal of Count III will be with prejudice.

### Conversion and Theft Claims – Counts VI and VII

The Counterclaim Defendants next challenge the Trust's standing to bring claims under the Indiana Crime Victims Relief Act, I.C. §34-24-3-1, which their motion suggests is the statutory support for the theft claim in Count VII of the Second Amended Counterclaim, and the conversion claim in Count VI.[1] [DE 227 at 9.] As relevant here, the CVRA authorizes a civil action for recovery of specified remedies for pecuniary losses from various crimes against property, including conversion and theft. The Trust's authority to assert claims based on Frank's rights in Dr. Sumrall's estate is based on an assignment:

> On or about February 20, 2018, Frank assigned to The Lester Sumrall Family Trust (the "Trust") all of Frank's right, title, and interest in and to Dr. Sumrall's Likeness and Dr. Sumrall's Works, by way of an Assignment of Rights. Frank further assigned to the Trust all of Frank's rights in and to any claims and defenses in connection with Dr. Sumrall's likeness and Dr. Sumrall's Works.

[DE 170 at ¶74.] Citing decisions of the Indiana Court of Appeals and of this court, the Counterclaim Defendants contend that claims under the CVRA are not assignable. [DE 227 at 9.]

---

[1] The motion challenges the claims "for theft and conversion," and later refers to "Counts V and VI." But in the Second Amended Counterclaim, the theft claim is in Count VII and the conversion claim in Count VI.

Before delving further into this assignability question, I must address the scope of the debate. Rather than claims "under" the CVRA, Counts VI and VII of the Second Amended Counterclaim are pled as straightforward tort claims for conversion and theft, respectively. The relevance of the CVRA arises indirectly, from the references in ¶¶133 and 137 to treble damages, which are potentially available if the CVRA applies. There is no explicit reference in ¶¶128-137 to the CVRA, but in response to the motion, Lester and the Trust do not dispute their interest in CVRA remedies.

The potential application of the CVRA does not displace traditional tort causes of action. "[W]hen a plaintiff pleads several alternative grounds for relief, the trial court has...discretion not to impose CVRA liability at all, even when it awards compensatory damages under a different theory." *Wysocki v. Johnson*, 18 N.E.3d 600, 601 (Ind. 2014). As in *Wysocki*, the pleading of Counts VI and VII is "open-ended," encompassing "multiple alternative theories of liability" by invoking traditional tort theories as well as seeking remedies allowed under the CVRA. *Id*. at 605. This gives "the trial court a choice between an intentional tort and the quasi-criminal CVRA" and "discretion to choose tort liability and reject quasi-criminal liability." *Id*. So I construe the arguments made in the current motion to be a challenge not to the conversion and theft claims in Counts VI and VII in their entirety, but merely to the potential for treble damages that are available under the CVRA.

Now back to the question of assignability. In 2012, I held in *Lyons v. Durham*, No. 1:09-CV-348, 2012 WL 39150458, at *21 (N.D.Ind. Sept. 7, 2012), that a claim under the

6

CVRA "is not assignable under Indiana Law," citing *Hart Conversions, Inc. v. Pyramid Seating Co.*, 658 N.E.2d 129, 131 (Ind. Ct.App. 1995).  I noted that in *Hart*, the Indiana Court of Appeals "held that a prior version of the Crime Victims Relief Act was a 'punitive statute intended to deter the wrongdoer and others from engaging in similar future conduct' and that claims under the statute were not assignable." [*Lyons*, 2012 WL 39150458, at *21, quoting *Hart*, 658 N.E.2d at 131.]

On close examination, *Hart* holds that what cannot be assigned is "the right to collect a penalty," meaning the treble damages authorized by the CVRA over and above actual damages.  *Hart*, 658 N.E.2d at 131.  That reading appears to be supported by the Indiana Court of Appeals more recently in *JPMCC 2006-CIBC14 Eads Parkway, LLC v. DBL Axel, LLC*, 977 N.E.2d 354 (Ind.Ct.App. 2012).  There the court notes that the Indiana Supreme Court has held that a tort claim is assignable "if it arises out of injuries to personal property" (citing *Midtown Chiropractic v. Ill. Farmers Ins. Co.*, 847 N.E.2d 942, 945 (Ind. 2006)), and also (citing *Hart*, 658 N.E.2d at 131) that "[t]he general rule is that the right to collect a penalty is a personal right that is not assignable."  *JPMCC*, 977 N.E.2d at 366.  On the basis of these cases, I conclude that any prayer for treble damages based on the CVRA could not be successfully assigned to the Trust, and that such relief is not available under Counts VI and VII of the counterclaim.

The Trust's arguments in opposition are not persuasive.  The amendment of the CVRA since the *Hart* and *Lyons* decisions does not impact the assignability analysis, which was never based on an express limitation in the statutory language.  And I.C.

7

§35-50-5-3, the unrelated Indiana Code provision on restitution to the victim of crime cited by the Trust, is not shown to alter the civil remedies provided for in the CVRA. Applying *Hart* as I previously did in *Lyons*, I conclude that the penalty remedies under the CVRA for theft and conversion claims could not be assigned by Frank to the Trust. The motion will be granted as to CVRA penalties for the conversion and theft claims in Counts VI and VII.

ACCORDINGLY:

The LeSEA plaintiffs' Motion for Partial Judgment on the Pleadings [DE 226] is GRANTED as follows.

Count III of the Second Amended Counterclaim is DISMISSED WITH PREJUDICE.

On Counts VI and VII of the Second Amended Counterclaim, prayers for relief in the form of penalties available under the Indiana Crime Victims Rights Act are DISMISSED WITH PREJUDICE.

SO ORDERED this 21st day of October, 2021.

/s/ Philip P. Simon
United States District Judge