UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

LESEA, INC., FAMILY BROADCASTING
CORPORATION and LESEA GLOBAL
FEED THE HUNGRY Inc.,

Plaintiffs,

v.                                                                                  No. 3:18CV914-PPS/MGG

LESEA BROADCASTING CORPORATION,
LESTER SUMRALL, DR. JOHN W. SWAILS III,
and EDWARD WASSMER,

Defendants.

_____

LESTER SUMRALL and
THE LESTER SUMRALL FAMILY TRUST,

Counterclaim Plaintiff and Third-Party Plaintiffs,

v.

LESEA, INC., FAMILY BROADCASTING
CORPORATION, LESEA GLOBAL FEED
THE HUNGRY, INC., LESEA BROADCASTING
OF SOUTH BEND, INC.,  LESEA BROADCASTING
OF INDIANAPOLIS, INC.,  LESEA
BROADCASTING OF TULSA, INC.,  LESEA
BROADCASTING OF HAWAII, INC.,  LESEA
BROADCASTING OF ST. CROIX, INC.,  WORLD
HARVEST BIBLE COLLEGE INDIANA CHRISTIAN
UNIVERSITY, INC., STEPHEN P. SUMRALL, DAVID
M. SUMRALL, ANGELA N. GRABOWSKI, ANDREW J.
SUMRALL, and ADAM SUMRALL,

Counterclaim Defendants and Third-Party Defendants.

_____

## OPINION AND ORDER

After a separate opinion disposing of all but one remaining claim, this family dispute involves who owns the rights to a photograph that was taken back in 1994. The Plaintiff, Lester Sumrall, accompanied his grandfather on a mission trip to China that year. During the trip, Lester alleges that he took a photograph of his grandfather which was later used by his grandfather's charitable Christian organization in fundraising. Lester was employed by the organization at the time and frequently accompanied his grandfather on mission trips. But he claims this particular trip was a one-off personal adventure with his grandfather. And because he obtained a copyright on the photo some 23 years later, Lester claims that the organization is liable to him for infringing that copyright. This opinion addresses cross-motions for summary judgment on Lester's claim for copyright infringement in Count X of the Second Amended Counterclaim. [DE 170.] Because it is clear that the photo was taken as a work for hire, and no reasonable jury could find otherwise, summary judgment must be granted against Lester.

## Material Facts

Dr. Lester Sumrall was a global missionary who founded several non-profit entities — LeSEA, Inc., LeSEA Broadcasting, n/k/a Family Broadcasting Corporation, and LeSEA Global Feed the Hungry (collectively the LeSEA organizations or just "LeSEA"). [DE 354 at ¶1; DE 360 at ¶¶1, 3-5.] "LeSEA" stands for the Lester Sumrall

2

Evangelistic Association. [DE 360 at ¶2.] To avoid confusion, I will refer to him as "Dr. Sumrall" and to his grandson (the Plaintiff of the same name) as "Lester."

Dr. Sumrall traveled internationally on mission trips, and on behalf of LeSEA's Feed the Hungry division – an international charitable food program. [DE 354 at ¶2.] Feed the Hungry distributed food through local churches throughout the world. [*Id.* at ¶4.] The Feed the Hungry initiative was eventually incorporated as an independent not-for-profit entity known as LeSEA Global Feed the Hungry. [*Id.* at ¶3.]

During his travels for LeSEA's Feed the Hungry Program, Dr. Sumrall would be accompanied by LeSEA employees who often took pictures of Dr. Sumrall. [*Id.* at ¶5.] The ministry had photographic equipment that would be taken on Dr. Sumrall's trips for the purpose, with the film or digital SD card turned into the organization upon return. [*Id.* at ¶6.] Although there was no written policy, responsibilities of LeSEA employees who traveled with Dr. Sumrall included documenting the trip by taking photographs. [*Id.* at ¶7.] Providing this and other types of assistance to Dr. Sumrall during his mission trips was a work responsibility of LeSEA employees. [*Id.* at ¶8.]

Dr. Sumrall's grandson Lester is a former LeSEA employee who describes himself on his personal LinkedIn page as an assistant to the chairman of LeSEA (meaning Dr. Sumrall) from January of 1993 through May of 1996. [*Id.* at ¶¶9, 11.] Lester was paid by LeSEA from 1993 through Dr. Sumrall's death in 1996, including in the form of a housing salary. [*Id.* at ¶10.] Lester's LinkedIn page states that as part of his responsibilities as Dr. Sumrall's assistant, Lester "[t]raveled nationally as well as

3

internationally to promote the various aspects of LeSea, Inc. and their ministry efforts" and "[a]ssisted in the creation of promotional videos as a way to market [LeSEA's] relief work in order to gain additional contributions." [*Id*. at ¶12.]

Lester claims that, starting at age 8, he began accompanying Dr. Sumrall on his evangelistic trips, both domestic and overseas, and traveled on dozens of such trips with his grandfather. [DE 371 at ¶¶31, 32; DE 355-1 at ¶¶5, 6; DE 360 at ¶¶13, 14.] Lester has asserted under oath that he was not required to perform any official duties on any of these trips, but only acted as a travel companion, but the two pieces of additional evidence he cites for the claim do not support it. [DE 355-1 at ¶5; DE 371 at ¶33 Response.] LeSEA argues that the claim is at odds with Lester's LinkedIn page description of his role and responsibilities. [DE 371 at ¶33 Response.]

In 1994, Lester accompanied Dr. Sumrall on a trip to China. Although Lester was employed by LeSEA at the time, he nonetheless claims that he took the 1994 trip with Dr. Sumrall solely in his personal capacity as Dr. Sumrall's grandson. [DE 354 at ¶23.] Lester attests that he "was not asked to perform any official church duties on this trip." [DE 355-1 at ¶41.] A photo taken during the China trip in 1994 features Dr. Sumrall with an elderly unidentified man (the "Traveler Photo"). [DE 354 at ¶13.] Lester has testified in his deposition and attested in a declaration that he took the Traveler Photo, using his personal Olympus Stylus camera. [DE 360-1 at 35 (96:20-23), 38 (102:21-23); DE 355-1 at ¶¶34, 36.]

The roll of film containing the Traveler Photo included photographs of Lester taken by other people including local residents. [DE 354 at ¶14.] LeSEA has some negatives of photos taken on the 1994 trip to China, and argues that this is evidence that the photos were taken on behalf of LeSEA and that Lester turned them in to LeSEA after his return. [DE 374 at ¶47 Response and ¶49 Response.] Lester also possesses some of the negatives of photos taken on the 1994 China trip. [DE 374 at ¶57.] Neither side has been able to produce the negative of the Traveler Photo itself. [DE 374 at ¶100.]

Sometime in 1996 or 1997, LeSEA sent a copy of the Traveler Photo to a small group of key church leaders and partners to shore up relationships after Dr. Sumrall's death. [DE 354 at ¶15.] Prints of the Traveler Photo were signed by Stephen Sumrall (Dr. Sumrall's son), then president of LeSEA, Inc., with the inscription "Galatians 6:9," placed in a frame, and accompanied by a letter from Stephen featuring the same biblical passage. [*Id.* at ¶16.]

LeSEA later used the Traveler Photo as cover art for a DVD collection entitled *A Life of Faith and Destiny*. [*Id.* at ¶17.] LeSEA's business records indicate that the earliest sale of *A Life of Faith and Destiny* product occurred in 2007. [*Id.* at ¶18.] Family Broadcast Company used the Traveler Photo in connection with a 2018 donation campaign in which FBC sent copies of *A Life of Faith and Destiny* to donors who met a certain donation threshold. [*Id.* at ¶19.]

Lester's cousin Andrew Sumrall is President and CEO of FBC and LeSEA, Inc. and board member of LeSEA Global Feed the Hungry. Andrew attests that LeSEA

5

Global "has never used the Traveler Photo." [DE 340-2 at ¶6.] Stefan Radelich, President of LeSEA Global Feed the Hungry, also declares that "LeSEA Global has never used the Traveler Photo." [DE 340-1 at ¶6.]

Lester relies on declarations by Sharon Rogers and Mark Cowart that their churches "regularly donated well over $5,000" to LeSEA Global Feed the Hungry "and in exchange the Church received" a copy of the Traveler Photo autographed and inscribed by Steve Sumrall sometime between February 2003 and December 2004. [DE 371 at ¶89; DE 355-28 at ¶¶4, 5; DE 355-30 at ¶¶4, 5.] LeSEA responds with a second declaration by Stefan Radelich as President of LeSEA Global, disputing the accuracy of the donation claims of Rogers and Cowart and reiterating that LeSEA Global "has never used the Traveler Photo in connection with a fundraising campaign or otherwise." [DE 370-1 at ¶¶9, 12, 13.]

Twenty-three years after taking the Traveler Photo, Lester registered it with the U.S. Copyright Office in December 2017, listing himself as the author and claimant. [DE 354 at ¶21.] Although Lester stated that he registered the work after realizing that he "probably needed to protect my work with copyright protections," the Traveler photo is the only photograph from the 1994 trip that Lester sought to register. [*Id*. at ¶22; DE 341-6 at 24-25 (115:21-116:8).]

## Discussion

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P.

56(a). A party opposing summary judgment may not rely on allegations or denials in his or her own pleading, but rather must "marshal and present the court with the evidence she contends will prove her case." *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010). Summary judgment "is the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events." *Springer v. Durflinger*, 518 F.3d 479, 484 (7th Cir. 2008).

**Work for Hire**

LeSEA argues that the undisputed evidence shows that if Lester created the Traveler photo (which LeSEA does not concede), then he did so in the ordinary course of his employment with LeSEA, making the Traveler photo a work for hire with its copyright owned by LeSEA. Although the creator of a work is generally its author and the party in whom copyright ownership vests, there is an exception in the Copyright Act for "works made for hire." Under 17 U.S.C. §201(b), "[i]n the case of a work made for hire, the employer or other person for whom the work was prepared is considered the author for purposes of this title, and, unless the parties have expressly agreed otherwise in a written instrument signed by them, owns all of the rights comprised in the copyright." For present purposes, the Traveler Photo was a work for hire if it was "prepared by an employee within the scope of his or her employment." 17 U.S.C. §101.

In *Community for Creative Non-Violence v. Reid*, 490 U.S. 730 (1989), the United States Supreme Court considered the proper standards for determining an employment

7

relationship within the meaning of a work for hire under the Copyright Act, and concluded that "the term 'employee' should be understood in light of the general common law of agency." *Id*. at 741.  A nonexhaustive list of relevant factors, none of which is determinative, includes:

> the hiring party's right to control the manner and means by which the product is accomplished[; ...] the skill required; the source of the instrumentalities and tools; the location of the work; the duration of the relationship between the parties; whether the hiring party has the right to assign additional projects to the hired party; the extent of the hired party's discretion over when and how long to work; the method of payment; the hired party's role in hiring and paying assistants; whether the work is part of the regular business of the hiring party; whether the hiring party is in business; the provision of employee benefits; and the tax treatment of the hired party.

*Id*. at 751-52.  The Seventh Circuit has observed that the Copyright Act's "work for hire concept isn't limited to formal employment," and by forgoing a strict definition of "employee" and "employment" Congress has "empower[ed] the courts to define these terms from case to case on a practical rather than formal basis, using the principles of agency law to prevent evasion of the statutory purpose."  *Gaiman v. McFarlane*, 360 F.3d 644, 650 (7th Cir. 2004).

      Lester's counsel appears to quote text from the Supreme Court's opinion in *Reid,* suggesting an inquiry whether particular conduct was "'substantially within the authorized time and space limits of his employment.'"  [DE 353 at 13, citing *Reid*, 490 U.S. at 738-39.] *See also* DE 353 at 15.  The problem is that no such language appears in *Reid.*  Nor does a Westlaw search find that language in any other federal court decision pertaining to the copyright issue of work for hire.  This kind of sloppy (or perhaps it is

8

better described as slippery) use of citations to caselaw and/or the record has regrettably become the norm for Lester's counsel. *See* pp. 13-14 of the separate Opinion and Order entered herein this day.

In all events, there is no question that Lester was a LeSEA employee at the time he took the trip to China with his grandfather. And during his employment he traveled with his grandfather on many occasions as his personal assistant. Assuming without deciding that Lester took the Traveler Photo, whether it was a work for hire depends on the application of the *Reid* factors to the facts of this case. Citing Lester's LinkedIn page, LeSEA applies Lester's own characterization of his employment with LeSEA, as an assistant to Dr. Sumrall, the Chairman of LeSEA, from January of 1993 through May of 1996. [DE 360-1 at 53.] Among the duties Lester listed for the position was international travel to promote LeSEA and its ministry efforts, as well as assisting "in the creation of promotional videos as a way to market our relief work in order to gain additional contributions." [*Id.*]

The application of *Reid* to a loosely organized, albeit large scale, family-based religious mission is not a perfect fit, but several of the *Reid* factors strongly favor a determination that the photos taken on the China trip were works for hire. The testimony of all the witnesses in this case clearly establishes that Dr. Sumrall was the ultimate decisionmaker in all aspects of LeSEA's operations, and the evidence points only to him controlling the planning and implementation of the trip and directing Lester's presence and purpose during their travels. Uncontradicted evidence

9

establishes that international mission travel was a regular function of Dr. Sumrall in his ministry for LeSEA, and that an employee taking photographs for LeSEA's later use was also a regular feature of those trips.  Lester's function in that way in that context is consistent with having taken the photos within the scope of his work as Dr. Sumrall's assistant for LeSEA.

Lester claims that the 1994 travel to China was a personal trip with his grandfather and that he did not function as a LeSEA employee during the trip. [DE 355-1 at ¶¶26-28, 40, 41.]  But no evidence supports this claim other than Lester's own statements, which are subject to question because his more recent statements contradict earlier ones.  Lester was deposed on October 5, 2021.  [DE 360-1.]  Lester attempted to describe his role as an associate pastor of the Christian Center Church associated with LeSEA.  [*Id*. at 27 (22:5-22), 30-31 (25:10-26:6).]  Lester's testimony failed to acknowledge the position as Dr. Sumrall's assistant that he previously claimed on LinkedIn.  Lester's testimony was fuzzy on the relationship between the church and the Lester Sumrall Evangelistic Association (LeSEA), but clear that as an employee he "was accountable to [his] grandfather," with no other supervisor.  [*Id*. at 28 (23:2-22), 31 (26:7-24), 44 (110:7-9).]  By all accounts, a line between Dr. Sumrall's personal and professional lives did not exist.  *See* p. 8 of the separate Opinion and Order entered herein this day.

In his deposition, Lester claimed that he shot the roll of film with the Traveler Photo on it in March 1994, and was still in possession of the negatives and photos after his grandfather's death on April 28, 1996, when asked by LeSEA graphic designer

Chuck Strantz to use some of his photos for a memorial article in World Harvest Magazine. [DE 360-1 at 39 (103:1-22).] Lester testified that he handed Chuck "the few pictures" that were to accompany Lester's article for the magazine. [DE 360-1 at 39-40 (103:23-104:2).] Lester further testified: "unbeknownst to me, I don't know how, I don't have the full details but he – the only thing I can surmise is that he basically copied my photos without my knowledge and somehow gained access to the rest of my photos." [DE 360-1 at 40 (104:2-6).] Lester testified that at the time of the deposition he believed he still possessed the negatives for the whole roll of film that contained the Traveler Photo. [DE 360-1 at 41 (105:16-19).] That turned out not to be the case, because LeSEA has possession of some of the negatives from the China trip, although neither party can produce the negative of the Traveler Photo.

In his declaration dated February 17, 2023, the story has changed. There Lester claims to have brought all of his photos and negatives from the China trip to Chuck Strantz, and that they reviewed them together. [DE 355-1 at ¶46.] The declaration further asserts that Chuck "looked through" all the photos and after discussion, Lester authorized the use of three particular photos for the memorial magazine. [*Id.* at ¶¶46, 47.] Lester's declaration alleges that "Chuck asked me to leave all the China Photos and the negatives with him for a couple hours." [*Id.* at ¶48.]

This portion of the declaration is at odds with Lester's deposition testimony on the subject, in which he disclaimed any idea how Strantz might've gotten access to the negatives, and testified that Strantz "somehow gained access" to all the China photos

11

"unbeknownst to" Lester. [DE 360-1 at 40 (104:2-6).] At the time of his deposition in 2021, Lester could not recall what photos he'd given Strantz. [DE 360-1 at 40 (104:20 - 105:10).] But by his declaration in February 2023, more than a year later, Lester attests specifically that he brought all the China photos to his meeting with Strantz, who reviewed them in Lester's presence, and then Lester left Strantz with the entire set of photos and negatives after the meeting. [DE 355-1 at ¶¶46, 48.] The new version of Lester's account fits much more neatly with his assertion that, via Strantz, LeSEA swiped the Traveler Photo from its rightful owner.

"[R]elying on recollection does not mean the plaintiff may survive summary judgment where his recollection is flatly refuted by other evidence in the record or his story is so internally inconsistent or implausible on its face that no reasonable person would believe it." *Melton v. Tippecanoe County,* 838 F.3d 914, 819 (7th Cir. 2016) (internal quotation marks and citations omitted). I can (and do) disregard the portions of Lester's new declaration pertaining to his interaction with Strantz concerning the China photos, because they contradict his prior sworn deposition testimony relevant to material facts as to the critical issue of work for hire. *Castro v DeVry University, Inc.*, 786 F.3d 559, 571-72 (7th Cir. 2015); *Shanehsaz v. Johnson*, 259 F.Supp.3d 894, 897 n. 3 (S.D.Ind. 2017). Neither can Lester's deposition speculation about Strantz's behavior be considered.

In his deposition testimony, Lester described the purpose of the China trip as for Dr. Sumrall "to show me the accomplishments that he had done" as "a pastor in Hong Kong back in the 1950's." [DE 360-1 at 43 (109:5-8)]. Lester's later declaration gives

quite a different account: "In mid-February of 1994, my grandfather invited me to accompany him on a trip to China. But, as he explained to me, this was going to be a very different type of trip than our previous trips. This was a secret trip to meet the underground, persecuted Church in mainland China." [DE 355-1 at ¶26.] Somewhat at odds with that purpose, Lester also claims that "Dr. Sumrall told me that he wanted me to experience China, just as he had in 1936." [*Id*. at ¶27.] The declaration describes Dr. Sumrall spending two days "teaching from the Bible inside this walled village," where the Traveler Photo was taken. [*Id*. at ¶32.] Other photographs support this description, depicting dozens of Chinese seated in an improvised lecture hall with Dr. Sumrall and a translator addressing them. [DE 355-5 at 8, 17, 18, 19, 20, 26, 30.] Such conduct appears entirely consonant with the international ministry efforts Lester describes in his LinkedIn page describing his position with LeSEA.

Summary judgment is appropriate only when no reasonable jury could find for the nonmovant. *Blasius v. Angel Auto., Inc.*, 839 F.3d 639, 644 (7th Cir. 2016). But it is also true that "[a]t the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007), citing Fed. Rule Civ. Proc. 56(c). *See also Horton v. Pobjecky*, 883 F.3d 941, 944 (7th Cir. 2018). In *Scott*, the Supreme Court reviewed its holdings that summary judgment is not defeated by insubstantial attempts to create disputes of material fact.

> As we have emphasized, '[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there

13

>is some metaphysical doubt as to the material facts .... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.' " *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–587...(1986) (footnote omitted)....When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.

*Scott v. Harris*, 550 U.S. 372, 380 (2007).

In considering a motion for summary judgment the court is not " 'obligated ... to assume the truth of a nonmovant's conclusory allegations on faith[.]" *Castelino v. Rose-Hulman Inst. of Tech.*, 999 F.3d 1031, 1040 (7th Cir. 2021) (internal citations omitted). Reviewing the entire record that is presented to me after five years of this litigation, I conclude that Lester's scant and inconsistent claims about his role in taking the Traveler Photo are insufficient to defeat summary judgment supported by LeSEA's undisputed evidence that the photo, assuming it was taken by Lester, was a work for hire. "The mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Because I conclude that no reasonable jury could find that Lester took the Traveler Photo in his personal capacity rather than within the scope of his employment with LeSEA, the copyright, as a matter of law, belongs to LeSEA, and summary judgment will be granted to LeSEA on Count X of Lester's counterclaims.

**Establishing Copyright**

The fact that Lester registered a copyright in the Traveler Photo does not prevent summary judgment in LeSEA's favor.  Registration of copyright is a prerequisite to enforcement:  "an application to register must be filed, and either granted or refused, before suit can be brought."  *Gaiman*, 360 F.3d at 654-55, citing 17 U.S.C. §411(a).  The elements of a copyright infringement claim are "(1) ownership of a valid copyright, and (2) copying of the constituent elements of the work that are original."  *Design Basics, LLC v. Signature Construction, Inc.*, 994 F.3d 879, 886 (7th Cir. 2021) (citation omitted).  LeSEA argues that Lester's belated copyright registration of the Traveler Photo, occurring 20 years after the image was first published by LeSEA, is not entitled to any presumption of validity, and that, without such a presumption, Lester has not met his burden to establish that he has any rights in the Traveler photo.

The Copyright Act provides that "[i]n any judicial proceedings the certificate of a registration made before or within five years after first publication of the work shall constitute prima facie evidence of the validity of the copyright."  17 U.S.C. §410(c).  Lester's registration of the Traveler Photo exceeds this by more than a dozen years, and so falls within the next sentence of the statute:  "The evidentiary weight to be accorded the certificate of a registration made thereafter shall be within the discretion of the court."  *Id.*  In any event, the certificate of registration merely gives rise to a rebuttable presumption of copyright ownership, "and the burden of proof regarding ownership remains with the plaintiff."  *Health King Enterprise, Inc. v. Dalian Health King Products*

15

*Co., Ltd.*, Case No. 19 C 1878, 2020 WL 1201533, at *5 (N.D.Ill. Mar. 12, 2020), citing *Mid Am. Title Co. v. Kirk*, 59 F.3d 719, 721 (7th Cir. 1995). I will not accord Lester's copyright registration a presumption of ownership in his favor.

First, Lester's long-delayed registration of copyright in the Traveler Photo, despite LeSEA's open use of the image for many years with no assertion of copyright by Lester, makes a presumption of the validity of Lester's 2017 registration inappropriate. "[W]hen there is a long lapse of time between publication and registration, it is less likely that the facts stated in the certificate are reliable." *Design Ideas, Ltd. v. Meijer, Inc.*, No. 15-cv-03093, 2016 WL 4487830, at *6 (C.D.Ill. Aug. 25, 2016), citing 3 Nimmer on Copyright §12.22[A][1]. Second, and in any event, I have found that no reasonable jury could conclude that the Traveler Photo wasn't a work for hire. Therefore, the copyright registration does not establish Lester's ownership of the Traveler Photo.

**LeSEA Global Feed the Hungry**

Finally, as to LeSEA Global in particular, movants argue that Lester has not presented any evidence that LeSEA Global ever used the Traveler Photo, so that LeSEA Global is entitled to summary judgment. Because Lester is unable to dispute that the Traveler Photo was a work for hire, LeSEA Global is entitled to summary judgment on Lester's infringement claim along with all the other LeSEA entities, and I do not address the adequacy of Lester's proof the LeSEA Global used the Traveler Photo.

16

**Other Issues**

Having explained my reasoning based on the evidence, disputed and undisputed, that I find to be material, I offer brief comments on a few issues raised by the parties that I find do not impact the analysis and do not merit much discussion.

Lester frequently asserts that the various LeSEA organizations were "controlled" by Stephen Sumrall, Peter Sumrall, or Peter's children. [*See, e.g.,* DE 345 at 8; DE 360 at ¶¶8, 9, 10; DE 374 at ¶¶8, 9, 10.] The assertion may or may not be objectionable as argument, but where it is made as a statement of fact, counsel should know better than to use such an argumentative characterization of a person's role as a member of a board of directors.

LeSEA objects to Lester's reliance on declarations from Paul Anderson [DE 346-23], Terrence Reasor, Jr. [DE 346-24], Douglas Garlinger [DE 346-31] and Gregory Cronkright [DE 346-38] on the ground that they are previously undisclosed witnesses. [DE 359 at 12.] Because I conclude that the substance of these witnesses' declarations is irrelevant to my analysis, I do not address LeSEA's evidentiary objections.

As one basis for questioning the reliability of Lester's copyright registration, LeSEA has raised an issue about whether Lester has appropriately disclosed the "Deposit Copy" of the Traveler Photo submitted to the Copyright Office with his application for copyright. [DE 359 at 8; DE 370 at 5; DE 381 at 11.] The argument has spawned bickering between the parties that is typical both for its vehemence and its pointlessness. I have not relied on the deposit copy argument but have instead

17

explained other reasons for declining to afford the registration a presumption of validity. As LeSEA itself ultimately says, I "need not unsnarl this jumble." [DE 382 at 5.] Lester's related Motion for Status Hearing or Alternatively Leave to Refile a Photograph Exhibit [DE 383] will be denied.

Any additional arguments or issues I have not expressly addressed in this opinion are omitted because I find them to be unpersuasive or immaterial.

## Conclusion

LeSEA will be granted summary judgment on Lester Sumrall's Count X, his counterclaim for copyright infringement as to the Traveler Photo because I conclude as a matter of law that no reasonable jury could find that Lester owns the copyright.

"Sibling squabbles are commonplace and can be mild. But when disagreements arise over property after parents' deaths, rifts may become serious, with lengthy litigation separating family members." *Gittings*, 109 N.E.3d at 966. From all accounts of the man and his life's work, no one can doubt that Dr. Lester Frank Sumrall would be gravely disappointed, if not heartsick, at the ugly family disharmony in the wake of his death. Today's decisions lay to rest the final remaining disputes before this court.

**ACCORDINGLY:**

Counterclaim defendants' Motion for Summary Judgment on Third-Party Plaintiff Lester Sumrall's Claim for Copyright Infringement, Count X of the Second Amended Counterclaim [DE 340] is GRANTED.

Counterclaim plaintiff Lester Sumrall's Motion for Summary Judgment [DE 344] is DENIED.

Lester Sumrall's Motion for Status Hearing or Alternatively Leave to Refile a Photograph Exhibit [DE 383] is DENIED.

Based on my summary judgment rulings in two separate opinions this date, this case shall be CLOSED. The Clerk shall enter final judgment in favor of the remaining counterclaim defendants and third-party defendants (LeSEA, Inc., Family Broadcasting Corporation, LeSEA Global Feed the Hungry, Inc., Adam Sumrall, Stephen P. Sumrall, David M. Sumrall, Angela N. Grabowski, and Andrew J. Sumrall) and against Lester Sumrall and the Lester Sumrall Family Trust as counterclaim-plaintiffs and third-party plaintiffs.

**SO ORDERED**.

ENTERED: August 22, 2023.

                                                    /s/ Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT