IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| LESEA, INC., et al. | ) |
|       Plaintiffs, | ) Civil Action No. 3:18-cv-914-PPS-MGG |
| v. | ) |
| LESEA BROADCASTING CORPORATION, et al. | ) |
|       Defendants. | ) |
| LESTER SUMRALL, et al; | ) |
|       Counterclaim Plaintiffs and Third-Party Plaintiff, | ) |
| v. | ) |
| LESEA, INC., et al. | ) |
|       Counterclaim Defendants and Third-Party Defendants. | ) |

**MEMORANDUM IN SUPPORT OF MOTION
FOR SANCTIONS AND ATTORNEYS' FEES UNDER 28 U.S.C. § 1927**

Counterclaim Defendants (i) Family Broadcasting Corporation ("FBC") LeSEA, Inc. ("LeSEA, Inc."), and LeSEA Global Feed The Hungry, Inc. ("LeSEA Global", and together with FBC and LeSEA, Inc. "LeSEA") and (ii) Third-Party Defendants Stephen P. Sumrall, David M. Sumrall, Angela N. Grabowski, Andrew J. Sumrall, and Adam Sumrall (collectively, the "Defendants") respectfully submit this Memorandum in Support of Motion for Sanctions and Attorneys' Fees Under 28 U.S.C. § 1927.

1

## I. INTRODUCTION

On August 22, 2023, this Court entered two separate orders granting summary judgment in favor of Defendants on all claims brought by Lester in these proceedings. DE 386 and DE 387. But long before that, this Court has often noted the contentious nature of these proceedings. Defendants respectfully submit that the challenging and lengthy nature of these proceedings has been unreasonably exacerbated by the conduct of Ms. Channing Hesse ("Ms. Hesse") of Grogan, Hesse, & Uditsky P.C.—counsel for Lester. This conduct culminated during the parties' summary judgment briefings in which Ms. Hesse relied on non-existent quotes, undisclosed witnesses, unfounded statements of material fact, and repeated attempts to mislead this Court. Far from isolated incidents, Ms. Hesse's briefings in this matter have been peppered with misrepresentations and have consistently reflected a blatant disregard for candor, professionalism, the Federal Rules of Civil Procedure, the Northern District of Indiana's Local Rules, the law, and the facts. Sanctions are merited via the Court's inherent power and 28 U.S.C. § 1927 over Ms. Hesse's bad faith conduct and pursuit of non-viable claims.

## II. BACKGROUND

This Court is already well versed in Ms. Hesse's conduct and the resulting unnecessary multiplication of these proceedings. Nevertheless, Defendants provide a synopsis below:

- As this Court noted at DE 287 at 2, Ms. Hesse "failed to comply with the procedural requirements set forth in Fed. R. Civ. P. 34(b)(1)(A)-(B), 34(b)(2)(A), and 37(a) as well as N.D. L.R. 7-1(b)(2), 37-1" in connection with Lester's *Motion to Compel Preservation and Inspection of Evidence* (DE 159).

- Ms. Hesse failed to adequately confer with LeSEA in connection with Lester's *Motion to Compel Documents and Interrogatory Responses* (DE 195), resulting in placing an erroneous claim before this Court that Lester had not been provided with certain royalty reports (DE 196 at 5-6 and fn. 3). LeSEA had provided these reports months earlier, and

the dispute could have been entirely avoided had a meet and confer on the topic occurred. DE 199 at 19-21; DE 210 at 6-7.

- Ms. Hesse again ignored Fed. R. Civ. P. 37(a) and N.D. L.R. 37-1 when she failed to submit the required certification in connection with Lester's *Motion for Clarification, To Modify Scheduling Order, and to Compel*. DE 239; DE 240 at fn. 5.

- Ms. Hesse continued to ignore Fed. R. Civ. P. 37(a) and N.D. L.R. 37-1 when she failed to submit the required certification in connection with Lester's *Second Motion to Compel Documents and Interrogatory Responses*. DE 301; DE 302; DE 304 at 17. She also violated N.D. L.R. 26-2(b) because she failed to file (or even bother to identify) those parts of the interrogatories or interrogatory responses that the motion pertained to. DE 304 at fn.1

- On March 22, 2021, Ms. Hesse filed a second amended complaint in which she attempted to amend Counts V and VI to add new claims for conversion and unjust enrichment with respect to Lester's so-called "Traveller" photograph without (i) seeking leave of the Court or notifying counsel for Defendants or (ii) indicating to anyone that amendments to those counts had been made. DE 170. See also DE 184 at 13-14. The amendments were only discovered when counsel for Defendants conducted a line-by-line analysis of the pleading to determine what amendments Ms. Hesse had actually made. The Court struck these amendments, noting that they were filed in a manner that did not allow the Court or any party to "consider whether the amendments were objectionable." DE 215 at 10-12.

- Ms. Hesse has twice allowed deadlines for responses to discovery requests to lapse without providing a response or requesting an extension. DE 304-11 at ¶¶ 6-7; DE 304-15; DE 204-16.

- Ms. Hesse interrupted the deposition of Frank Sumrall during questioning regarding a 2005 power of attorney between him and Lester (a key document in this case) to warn him of a "trick question". DE 304-11 at ¶ 5; DE 304-14 at 58:7-23.

- Ms. Hesse requested that this Court extend discovery to allow her to take an additional fourteen (14) depositions, arguing that such an extension was necessary because at least eight (8) of her proffered deponents were advanced in age and in bad health. DE 239 at ¶ 27. The Court granted Ms. Hesse's request and entered an order reopening discovery "for the limited purpose of" (i) taking the noted depositions; (ii) the inspection and inventory of assets in LeSEA, Inc.'s basement; (iii) LeSEA's production of limited documents related to works LeSEA, Inc. published and works that are registered to Dr. Sumrall at the Copyright Office; and (iv) the issuance of limited subpoenas to explore Dr. Lester Sumrall's personal bank accounts. DE 287 at p. 8. Ms. Hesse failed to take the depositions of any of the eight (8) elderly deponents and largely ignored the limited purpose of the Court's order. Instead, she:

    o subpoenaed **Stephen** Sumrall's personal financial records (DE 304-11 at ¶ 8 ; DE 304-17 at p.7 (requests 7 and 8));

3

- o subpoenaed four of LeSEA Global's vendors to seek donation information related to Dr. Sumrall's works despite this Court already ruling that "Works-related discovery requests to LeSEA Global are duplicative and disproportionate to the needs of this case" (DE 287at p. 5; DE 304-11 at ¶ 8; DE 304-18);

- o subpoenaed a Louisiana car dealership known as Premier Automotive, L.L.C. for "[a]ll documents related to any purchases, tradeouts, or leases of any vehicles to Peter Sumrall [who died in 2016], Andrew Sumrall, LeSEA, Inc., Family Broadcasting Corporation, FETV [a nonparty], or LeSEA Global Feed The Hungry from 2017 to present" (DE 304-11 at ¶ 8; DE 304-19);

- o Issued thirty (30) requests for admission to Stephen Sumrall largely unrelated to the purposes of this Court's discovery order (DE 304-11 at ¶ 8; DE 304-20); and

- o issued additional requests for production to the LeSEA Entities seeking expansive and irrelevant categories of information, a small sampling of which include: (a) "all documents, including balance sheets, that reference any intangible assets" *(*DE 304-11 at ¶ 10; DE 304-24 at p. 7) ; (b) "all documents that refer or relate to donations received through any website owned or controlled by [any of the LeSEA Entities]" (DE 304-11 at ¶ 10, DE 304-23 at p. 6, DE 304-24 at p. 6, Ex. N at p. 6); (c) "all 1099s issued to Sue Sumrall (Peter Sumrall's ex-wife and the mother to Peter's heirs)" (DE 304-11 at ¶ 10, DE 304-25 at p. 7); (d) "all life time donations of any Donor who received a [work created by Dr. Sumrall] at any time" (DE 304-11 at ¶ 10, DE 304-25 at p. 8); and (e) "all scripts provided to any call center used in any fundraising campaign" (DE 304-11 at ¶ 10, DE 304-25 at p. 8).

- During the 30(b)(6) deposition of LeSEA, Inc. (which occurred simultaneously with the inspection and inventory of the personal assets supposedly owned by Dr. Sumrall at his death and housed in LeSEA, Inc.'s basement), Ms. Hesse instructed Compass Asset Management and Consulting—the third-party firm engaged to inventory these assets--to review and photograph files located in file cabinets in LeSEA, Inc's basement for use in the deposition without consulting LeSEA, Inc. The file cabinets had not been identified as being assets of Dr. Sumrall's, and the files themselves contained, among other things, attorney-client privileged information. DE 304-21.

- On November 11, 2021, Ms. Hesse accused counsel for Defendants of improper coaching during a break at Family Broadcasting Corporation's 30(b)(6) deposition and sought sanctions. DE 279 at p. 6. But the deposition transcript indicates that there was no break immediately following the cited line of questioning as to who worked for Partner Services under <u>former</u> employee Harold Hazen. DE 279-5 at 31:1-54:19. A break was taken approximately twenty (20) pages later in the transcript, and by then Andrew Sumrall (FBC's corporate deponent) had already identified four such individuals. *Id.* And after the break, in response to a <u>new</u> question about who <u>currently</u> works in Partner Services, Mr. Sumrall identified several more individuals. *Id.*

- Ms. Hesse sought an injunction "almost breathtaking in scope" that, if granted, would have amounted to a quasi-receivership over LeSEA and would have disrupted charitable operations that provide daily meal rations to approximately 400,000 orphaned and vulnerable children across 23 of the world's least developed nations, ship 300 tons of food internationally each month, and provide over one million pounds of food each month to community organizations in the United States.  DE 310 at 16; DE 298 at 28.  But even after full briefing and a full day hearing, Ms. Hesse could not present any evidence supporting the extraordinary relief she sought other than "ugly hyperbole".  DE 310 at 15.

- On March 3, 2022, Ms. Hesse filed Lester's *Motion to Open the Proofs and Supplement the Record with Respect to Counterclaim Defendant's Judgment On The Pleadings*, falsely representing to this Court that she had discovered new evidence in relation to Lester's dismissed right of publicity claim and requesting that the Court supplement the record "for purposes of any appeal".  But the evidence had been in her possession all along.  DE 317 at 3 and fn. 1.  The Court noted that it "perceive[d] no basis, legal or even simply logical, to expand the record after the fact for purposes of possible appeal."  DE 316 at 4.

- As this Court noted, Ms. Hesse submitted statements of fact in connection with summary judgment briefing riddled with problems.  "In a frankly astonishing number of instances, the Trust's assertion of fact is not supported by the evidence cited.".  DE 386 at 13.  *See, e.g.,* DE 369 at ¶¶75, 79, 81, 82, 83, 84, 104, 110, 111, 112, 115, 116, 130.  The Court also noted Ms. Hesse's "likely sanctionable habit of offering language in quotation marks that does not appear in the cited evidence." DE 386 at 13.  *See, e.g.*, DE 369 at ¶¶ 89, 90, 91, 123.  "Over and over the Trust's citation to evidence of record lacks the required pincite, making it unworkable if not impossible to identify the portion of a multi-page document that ostensibly provides evidentiary support for a particular proposition."  DE 386 at 14.

- Ms. Hesse cited to nonexistent language in *Community for Creative Non-Violence v. Reid*, 490 U.S. 730 (1989), and the Court noted that "this kind of sloppy (or perhaps it is better described as slippery) use of citations to caselaw and/or the records has regrettably become the norm for Lester's counsel."  DE 387 at 8-9.

- Ms. Hesse submitted various improper affidavits from disclosed and undisclosed witnesses and experts in connection with her summary judgment briefing in this matter.  DE 359 at 9-15; 368 at 17-19.

- Ms. Hesse falsely indicated to this Court that LeSEA never requested production of a deposit copy of Lester's Traveler Photograph (DE 373 at 11) and further falsely indicated to the Court that LeSEA did nothing to pursue discovery regarding any photographic negatives Lester might possess subsequent to Lester's deposition on October 5, 2021.  DE 373 at 2.  These misrepresentations prompted Defendants to issue a letter requesting that Ms. Hesse correct these and other misrepresentations in the summary judgment

briefing.  See Declaration of Louis T. Perry In Support of Motions For (I) Sanctions And Attorneys' Fees Under 28 U.S.C. § 1927 and (II) Attorneys' Fees Under 17 U.S.C. § 505 And Ind. Code § 32-36-1-12 ("Perry Decl."), Ex. F.

- For the duration of this case, Ms. Hesse ignored both Defendants' and this Court's flagging of the Defendants' robust laches defense.  As this Court stated: "since my earliest interactions with counsel in this case, I have flagged the potential application of a laches defense to the facts of this [case]". DE 386 at 20-21.  See, e.g., DE 166 at 6 laches was a "sensible conclusion" by the Indiana Court of Appeals, "since 20 years went by between Dr. Sumrall's passing and Lester's quixotic efforts to right a perceived wrong"); DE 310 at 9 (noting the Court had raised the doctrine of laches at the preliminary injunction hearing and the parties had not yet analyzed the possibility). Counsel for Defendants also flagged that the Trust's claims had a significant timing (and other) issues in various letters demanding dismissal of the claims. See Perry Decl., Exs. A-D.

### III.  LEGAL STANDARD

Courts have the inherent power to sanction a party that "has willfully abused the judicial process or otherwise conducted litigation in bad faith." *Salmeron v. Enter. Recovery Sys., Inc.*, 579 F.3d 787, 793 (7th Cir. 2009). 28 U.S.C. § 1927 further provides that an attorney who "multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." *Riddle & Associates, P.C. v. Kelly*, 414 F.3d 832, 835 (7th Cir. 2005). "Vexatious" conduct under § 1927 is construed in the Seventh Circuit to mean "either subjective or objective bad faith." *Kotsilieris v. Chalmers*, 966 F.2d 1181, 1184 (7th Cir. 1992). An attorney "engages in bad faith by acting recklessly or with indifference to the law[.]" *In re TCI Ltd.*, 769 F.2d 441, 445 (7th Cir. 1985). § 1927 serves "to deter frivolous litigation and abusive practices by attorneys and to ensure that those who create unnecessary costs also bear them." *Riddle*, 414 F.3d at 835. It also "imposes a continuing duty on counsel to dismiss claims that are no longer viable." *Burda v. M. Ecker Co.*, 2 F.3d 769, 778 (7th Cir. 1993)

### IV.  ARGUMENT

Sanctions are appropriate here as Ms. Hesse pursued this case in an unreasonable and frivolous manner from the onset of her involvement. As described above, Ms. Hesse repeatedly ignored the Federal Rules of Civil Procedure, the Local Rules of this Court, the law, and the facts of the case and, as a result, unreasonably multiplied these proceedings. Further, she persisted in pursuing Lester's claims despite repeated and clear indications from this Court (and counsel for Defendants) of the fatal defects in this case. All of this came at the great expense of both the Defendants—who were forced to contend with briefs rife with misleading and incorrect claims, personal attacks, and even allegations that the LeSEA Entities were "falsifying evidence" (DE 373 at 15)—and this Court—which was forced to sift through reams of irrelevant and misleading filings. Ms. Hesse's repeated insistence upon taking the lower road merit the Court's sanction, as discussed below.

### A. Ms. Hesse's Failure To Dismiss Non-Viable Claims Unnecessarily Multiplied These Proceedings, and Sanctions are Merited.

First, sanctions are appropriate due to what was at best Ms. Hesse's indifference to the Lester's laches-barred claims. As this Court has repeatedly noted, the laches defense has long loomed over the Trust's claims. DE 386 at 20-21. Even given the benefit of the doubt, Ms. Hesse pursued relief despite "a knowing acquiescence in existing conditions from at least 2005 to at least 2016." DE 386 at 17-18. This fact did not escape Defendants, whose counsel sent several letters to Ms. Hesse in 2021 demanding that the Trust drop its faulty, time-barred claims. *See, e.g.*, [Perry Decl., Ex. C at 1] (noting Lester waited at least 14 years to bring the Trust's suit and that "[b]y any measure, the Trust is simply too late"),

Objectively reasonable counsel would have confronted the laches defense when directly confronted with it at summary judgment. Ms. Hesse, however, elected to ignore it and offered no explanation as to why Lester's claims were not time barred. Indeed, she offered no explanation

7

at all—despite a willingness to file a superfluous number of briefs throughout these proceedings, Ms. Hesse simply ignored any argument at summary judgment as to why laches did not apply here.  DE 386 at 21.

This Court ultimately granted summary judgment in favor of Defendants on Lester's trust-related claims, finding that all these claims were barred by laches, the statute of limitations, or both. DE 386 at 28. This result was repeatedly forecasted by the Court and by Defendants' counsel. Ms. Hesse had an obligation under § 1927 to drop non-viable claims. *Burda*, 2 F.3d at 778. Her failure to do so forced Defendants to unnecessarily expend time and resources defending against meritless claims.  Sanctions are therefore merited on this front.

    **B.** **<u>Ms. Hesse's Objectively Unreasonable Conduct Relating to Summary Judgment Briefing in This Matter Merits Sanctions</u>**

In the summary judgment phase of this matter, Ms. Hesse (i) miscited to caselaw and the record in her statements of material facts; (ii) made false statements to this Court about the parties' discovery efforts; and (iii) relied on multiple undisclosed witnesses in violation of Fed. R. Civ. P. 26(a).  Time and time again, Ms. Hesse chose "a path that a reasonably careful attorney would have known, after appropriate inquiry, to be unsound" and therefore "objectively unreasonable and vexatious" under § 1927. *Riddle*, 414 F.3d at 835.

    *i.*    *Incorrect Citations to the Record and Applicable Case Law*

Ms. Hesse presented to this Court a host of allegedly "undisputed" statements of material facts that were clearly in dispute, previously undisclosed, or miscited the record—often all three. These knowingly misleading statements compounded the time and cost spent by Defendants in responding to entirely new allegations found nowhere in the record. As this Court discussed, "[i]n a frankly astonishing number of instances, the Trust's assertion of a fact is not supported by the evidence cited." DE 386 at 13. The Court further stated that Ms. Hesse "also has a likely

8

sanctionable habit of offering language in quotation marks that does not appear in the cited evidence." DE 386 at 13. See also DE 387 at 8-9 (noting "sloppy (or perhaps it is better described as slippery) use of citations to caselaw and/or the record has regrettably become the norm for Lester's counsel")

In particular, Ms. Hesse's briefing relating to the Traveler Photo was fraught with purported statements of fact that were little more than Lester's unsupported allegations and misquotes presented to the Court as being "undisputed" by the parties. For instance, putting aside Lester's own deposition as if it had never happened, Ms. Hesse's briefing lobbed inflammatory new accusations of theft at a deceased witness and rewrote the nature of Lester's trip to China in an attempt to negate his role as a church employee. *See* DE 359 at 6-8; DE 370 at 2-3. Ms. Hesse flatly misstated testimony by Stephen Sumrall to claim damages of $500,000. DE 359 at 13. And in an attempt to explain the suspect timing of Lester's allegedly coincidental registration of a 23-year-old photo, Ms. Hesse changed Lester's story to claim his hand had been forced by LeSEA, contrary to the record. DE 370 at 3.

Statements of material facts at the summary judgment phase are bound to be challenged and examined by opposing counsel. Yet the material facts presented by Ms. Hesse were less citations to the record than they were entirely new and unfounded pleadings, compounding the costs and time it took Defendants to meaningfully respond.

        *ii.*    *False Statements Regarding Discovery Efforts*

Ms. Hesse egregiously and intentionally misled the Court about (1) LeSEA's discovery requests and (2) the discovery of negatives by both Lester and LeSEA following their initial summary judgment briefing.

9

First, Ms. Hesse falsely claimed that LeSEA did not make discovery requests that it very much had. In Lester's summary judgment reply brief, Ms. Hesse alleged that LeSEA "never requested the [Traveler Photo] deposit copy in discovery" and "failed to pursue any discovery" related to Lester's camera or negatives of the Traveler photo, DE 373 at 11-12.  This was, of course, not true—LeSEA had requested both. See DE 378-1 at 1-2. These misleading and prejudicial statements necessitated a letter to Ms. Hesse by LeSEA counsel and consequently resulted in additional, extensive briefing that easily could have been avoided had Ms. Hesse's initial briefing been based on the written record. *See, generally*, DE 377-DE 385-1.

Worse yet, Ms. Hesse turned LeSEA's prompt candor regarding its discovery of certain photographic negatives against it in a cynical attempt to again mislead the Court. After the parties had submitted their initial summary judgment briefs, LeSEA located negatives from the roll of film that had contained the Traveler Photo and promptly supplemented their discovery responses on March 10, 2023. See DE 360-2 at ¶ 3; DE 378-1 at 6. Ms. Hesse replied via email that "we have also found the original negatives from the China trip" and agreed to a mutual exchange of discovery. DE 378-1 at 7. Yet in their April 12 summary judgment reply, Ms. Hesse claimed outrage over the fact that "LeSEA seeks sanctions for the late disclosure of [photography expert Mr. St. Pierre] when LeSEA, itself (sic) failed to produce critical pieces of evidence in this case until well after the close of discovery." DE 373 at 14.  But Mr. St. Pierre's declaration—as well as Ms. Hesse's track record on declarations in general—indicated that until LeSEA reached out, Ms. Hesse had no plans on ever disclosing Lester's negatives prior to filing. See DE 378-1 at 3 (noting the St. Pierre declaration stated Lester had shown him undisclosed negatives on March 2, over a week before LeSEA reached out). Despite this, Ms. Hesse argued that "it would be inequitable for LeSEA to now object to a late-disclosed witnesses (sic) offering

testimony regarding the negatives in question." DE 373 at 12. In other words, Ms. Hesse argued that the failure to disclose Mr. St. Pierre should be excused—on the basis of equity—because of LeSEA's late disclosure, when in fact Mr. St. Pierre's declaration made clear Ms. Hesse had already approached him for a declaration well before LeSEA reached out. This type of conduct is not zealous advocacy, nor is it an unintentional oversight. It is simply misleading and is of a nature that a reasonably careful attorney would avoid.

      iii.    *Undisclosed Witnesses*

Ms. Hesse's repeated and pervasive reliance on multiple undisclosed witnesses in summary judgment briefing was in disregard for the Federal Rules of Civil Procedure and unnecessarily multiplied and complicate the dispositive motion phase of this litigation. However fruitless these witness statements may have proven, Defendants were nevertheless forced to expend additional time and costs in challenging them.

As if applying spackle to a record failed to be properly conducted during the discovery process, Ms. Hesse attempted to patch up Lester's copyright claim by offering statements from witnesses she never disclosed as having relevant information: There was the declaration of Gregory Cronkright that he could "not recall Lester giving LeSEA permission to copy all of his China photos." DE 359 at 9. There was the declaration of Paul Anderson to allege that he never saw Dr. Sumrall direct Lester to perform any official LeSEA duties. DE 359 at 10. There was the declaration of Terrence Reasor Jr. to shore up Lester's purported photography skills. DE 359 at 10. There was the declaration of Doug Garlinger to specify that he personally was never expected to take photos or videos for LeSEA on trips with Dr. Sumrall (he was not a LeSEA employee). DE 359 at 10-11. There was Jack St. Pierre, who offered a "professional opinion" that the Traveler Photo was taken on Lester's camera. DE 370 at 9. Finally, there was the

11

declaration of Sharon Rogers, who claimed LeSEA Global had used the Traveler Photo for fundraising purposes. DE 370 at 10.

There was no justifiable excuse for these untimely disclosures and Ms. Hesse did not offer any, instead providing further misrepresentations or simply waving away Defendants' objections. For instance, with regard to Paul Anderson and Gregory Cronkright, Ms. Hesse cited no caselaw or rule in support of her argument that LeSEA "would have advance knowledge of its own employees and their respective roles" and that therefore she did not need to disclose witnesses who claimed to have last worked for LeSEA in 1996 and 2004, respectively.[1] DE 373 at 12. Ms. Hesse also made no serious effort to justify Mr. St. Pierre or Mr. Reasor's admissibility at all, arguing that they were "simply" offered for certain relevant details, as if the proper disclosure of witnesses prior to summary judgment briefing was a nicety. DE 373 at 12, 13 n. 15. This pattern of disregard for procedure suggests that Ms. Hesse intended to conduct summary judgment-by-ambush by forcing Defendants to respond to meritless and irrelevant allegations from a half-dozen witnesses they never had an opportunity to depose.

### C. Ms. Hesse Has Demonstrated a Sanctionable Pattern of Unreasonable and Vexatious Conduct in this Matter, and Sanctions are Warranted.

In addition to instances described in Sections IV.A-B above, Ms. Hesse has repeatedly flouted the rules governing this procedure, ignored this Court's orders, and made material misrepresentations of fact and the record to this Court—all as described in Section II above. At every turn, Defendants have been forced to waste pages, time, and resources on setting the record straight. These proceedings have not been merely multiplied as a result of these actions—they have been increased by orders of magnitude. Ms. Hesse's conduct and the various baseless accusations she has lobbed at Defendants cross the line from zealous representation into bad faith

---

[1] DE 355-16 at ¶ 1; DE 355-23 at ¶ 1.

that justifies sanctions under § 1927. It is on this basis that Defendants seek sanctions[2] in an amount commensurate with their attorneys' fees expended in connection with not only the summary judgment briefing, but each instance described in Section II above.

### D. Defendants' Fee Estimate and Request for Separate Briefing Schedule.

Defendants estimate that the attorneys' fees they have incurred in connection with the instances described here are approximately $300,000. Defendants ask that this Court first rule on whether any or all of the conduct described here meets the standards of § 1927 and, if so, to set a separate briefing schedule that allows for Defendants to submit an itemized and exemplified bill setting forth the fees it has occurred and for the Court to determine the allowable sanctions amount.

### V. CONCLUSION

For the aforementioned reasons, Defendants respectfully request that this Court issue appropriate sanctions against Ms. Hesse to deter such conduct in future cases and compensate Defendants for their costs and expenses in defending these actions.

Dated: September 6, 2023

/s/ Louis T. Perry
Louis T. Perry (#25736-49)
FAEGRE DRINKER BIDDLE & REATH LLP
300 North Meridian Street, Suite 2500
Indianapolis, IN 46204
Telephone: (317) 237-0300
Fax: (317) 237-1000
louis.perry@faegredrinker.com

***Attorney for Plaintiffs, Counterclaim Defendants and Third-Party Defendants***

---

[2] Sanctions under § 1927 are not limited to those requested in a parties' motion. A court may in its sound discretion impose sanctions sua sponte as long as it provides the attorney with notice regarding the sanctionable conduct and an opportunity to be heard. *See The Jolly Grp., Ltd. v. Medline Indus., Inc.*, 435 F.3d 717, 720 (7th Cir. 2006) (citing *Johnson v. Cherry*, 422 F.3d 540 , 551-52 (7th Cir. 2005)). If, for example, this Court found that other instances of counsel's conduct qualified as being done in bad faith, additional fees may be appropriate.

/s/ *David L. Mirkin* (with permission)
David L. Mirkin (#10258-22)
MIRKIN LAW OFFICES, P.C.
205 West Jefferson Blvd., Ste. 205
South Bend, IN 46601
dmirkin@mirkinlaw.com
Telephone: (574) 232-1000
Fax: (574) 232-7730

**Attorney for Stephen Sumrall**

/s/ *James M. Hinshaw* (with permission)
James M. Hinshaw (#16744-49)
DENTONS BINGHAM GREENEBAUM LLP
2700 Market Tower
10 West Market Street
Indianapolis, IN 46204
james.hinshaw@dentons.com
Telephone: (317) 635-8900
Fax: (317) 236-9907

**Attorney for David M. Sumrall**