IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| LESEA, INC., et al. | ) |
|       Plaintiffs, | ) Civil Action No. 3:18-cv-914-PPS-MGG |
| v. | ) |
| LESEA BROADCASTING CORPORATION, et al. | ) |
|       Defendants. | ) |
| LESTER SUMRALL, et al; | ) |
|       Counterclaim Plaintiffs and Third-Party Plaintiff, | ) |
| v. | ) |
| LESEA, INC., et al. | ) |
|       Counterclaim Defendants and Third-Party Defendants. | ) |

**REPLY BRIEF IN SUPPORT OF MOTION FOR SANCTIONS
AND ATTORNEYS' FEES UNDER 28 U.S.C. § 1927**

Counterclaim Defendants (i) Family Broadcasting Corporation ("FBC") LeSEA, Inc. ("LeSEA, Inc."), and LeSEA Global Feed The Hungry, Inc. ("LeSEA Global", and together with FBC and LeSEA, Inc. "LeSEA") and (ii) Third-Party Defendants Stephen P. Sumrall, David M. Sumrall, Angela N. Grabowski, Andrew J. Sumrall, and Adam Sumrall (collectively, the "Defendants") respectfully submit this reply brief in support of their Motion for Sanctions and Attorneys' Fees Under 28 U.S.C. § 1927 (the "Motion").

1

## I.   INTRODUCTION

Defendants stand on the record of bad faith and unnecessary multiplication of proceedings established in Defendants' opening brief for sanctions. DE 394. Counsel Channing Blair Hesse's ("Counsel") response brief [DE 397] does not change or justify the noted reckless, frivolous, and bad faith misrepresentations to the Court over the course of the last several years and, most recently, at the summary judgment stage of this proceeding. In fact, the response itself is replete with further misleading statements and demonstrably incorrect factual contentions that only place an exclamation point on Defendants' arguments for sanctions. Even more, the response brief is largely an untimely and inappropriate attempt to reopen summary judgment argumentation. Counsel ultimately presents no cogent reason why she stands beyond the reach of sanctions under Section 1927[1], and Defendants respectfully request that the Motion be granted.

## II.   ARGUMENT

### A. Counsel's Response Brief Provides Additional Evidence of Bad Faith and Vexatious Behavior that Merits Sanctions.

In the response brief, Counsel once again fails to present the record with any degree of accuracy or candor and her further misrepresentations to this Court only serve as additional evidence of bad faith and vexatious behavior.  This manner of argument—whether sloppy, slippery, or something else entirely—has pervaded this matter from the beginning, repeatedly forcing Defendants (and this Court) to unnecessarily expend resources to untangle meritless,

---

[1] Nor does she advance any argument whatsoever as to why Lester Sumrall should not be responsible for attorneys' fees.  In fact, Counsel failed to file any response in connection with Defendants' *Motion for Attorneys' Fees Under 17 U.S.C. § 505 and Ind. Code § 32-36-1-12* [DE 392] or their *Bill of Costs* [DE 390].  Nor has anyone requested that the Court stay its consideration of these matters in light of the Notice of Appeal [DE 398] filed contemporaneously with the response brief.  The Seventh Circuit has noted that district courts "should proceed with attorneys' fees motions, even after an appeal is filed, as expeditiously as possible." *Terket v. Lund*, 623 F.2d 29, 34 (7th Cir. 1980). *See also Wine & Canvas Dev., LLC v. Muylle*, 868 F.3d 534, 542 (7th Cir. 2017) ("[w]e have unequivocally held that" a district court may consider an attorneys' fee motion while a notice of appeal is pending.). As no responses were filed, Defendants request that their request for fees in DE 392 be granted.

confusing, illogical, and sometimes outright misleading contentions. Examples of this abound, but pointing out <u>all</u> of the inconsistencies, misstatements, and misleading argumentation is a tedious and costly exercise that neither Defendants nor this Court should be forced to undertake—especially as summary judgment has already been awarded to Defendants and much of Counsel's argument is a pointless attempt to relitigate decided issues. Defendants have chosen instead to address only some of the more egregious examples below.

### 1. Counsel Alters the Operative Language Originally Misattributed to *Community for Creative Non-Violence v. Reid*, 490 U.S. 730 (1989) in a Futile Attempt to Prove This Court Incorrect.

At summary judgment, Counsel argued that the work made for hire doctrine required an inquiry as to whether Lester Sumrall's particular conduct was "'substantially within the authorized time and space limits of his employment.'" DE 353 at 13. She attributed this quote to *Community for Creative Non-Violence v. Reid*, 490 U.S. 730 (1989). *Id.* But as this Court correctly noted, *Reid* contains no such quote, and a Westlaw search does not "find that language in any other federal court decision *pertaining to the copyright issue of work for hire*." DE 387 at 8 (emphasis added).

Though Counsel concedes that the quote does not appear in *Reid*, she now incorrectly argues that the Court was wrong and that the quote **does** appear in other federal court decisions.[2] DE 397 at 5. In support, Counsel submits a printout of a Westlaw search for the phrase "substantially within authorized time and space". DE 397-2. However, the searched phrase omits

---

[2] Counsel also spends several pages of the response (DE 397 at 3-5) attempting to reargue summary judgment based upon her incorrect contention that the Court "assume[d] that the language 'substantially within the authorized time and space' was not an appropriate standard to analyze the work for hire issue". DE 397 at 2. But the Court made no such assumption—it merely noted that the language did not appear in *Reid* as Counsel indicated. DE 387 at 8. In fact, the Court makes reference to both the time of Lester's employment with LeSEA (January of 1993 through May of 1996) and the "space" of his employment including international travel and creation of promotional materials. DE 387 at 9.

3

the "limits of his employment"[3] component of the original quote **and** the search itself is not confined to decisions pertaining to the work made for hire doctrine. *Id.*

### 2. Counsel Continues to Advance Assertions of Fact that Remain Unsupported by *Post Hoc* Evidence.

Counsel suggests that this Court may have "relied too heavily" on LeSEA's responses to Lester's assertions of fact when it determined that such assertions were unsupported by evidence. DE 397 at 6. To support this bold statement, Counsel offers an exhibit that purports to set the record straight with *post hoc* citations to evidence and corrections to previous citations. DE 397-5. The problem is that none of the referenced statements of fact are supported by the cited evidence (old or new).[4]

The exhibit contains no less than seven (7) instances of Counsel pointing to additional evidence not originally cited in support of the particular stated facts (DE 397-5 at 2, 9-10, 11, 14, 17, 20, and 23) and six (6) instances of Counsel revising previously incorrect or noncompliant citations and other mistakes in particular stated facts (DE 397-5 at 12, 17, 19, 20, 21, 24). Boiled down, Counsel's argument largely seems to be that Defendants (and the Court) should have hunted down the supporting evidence on their own. But even (i) assuming that Counsel can now unring the bell by pointing to additional evidence and making *post hoc* corrections and (ii) completely disregarding the Local Rules, the stated facts remain unsupported by the modified record. A small sampling follows:

- A statement by Stephen Sumrall in his deposition that he "might" have signed an agreement does not support Lester's unequivocal contention that Stephen Sumrall signed a copyright transfer agreement. DE 397-5 at 2.

---

[3] Confusingly, Counsel claims that she searched the phrase "substantially within the authorized time and space **limits**" on Westlaw. DE 397-1 at ¶ 11. But the referenced exhibit shows that the actual search Counsel conducted omitted the term "limits". DE 397-2 (header of each page).
[4] The only exception being found at DE 397-5 at 22—Defendants did not dispute this contention in the first instance.

- Likewise, Stephen Sumrall's testimony that he had a hand in inventorying the property in Dr. Sumrall's home subsequent to his death does not support the statement that Defendants "concealed Dr. Sumrall's physical assets by hiding them in the church basement." DE 397-5 at 9.

- Lester's contention that Stephen Sumrall and Peter Sumrall showed Dr. Sumrall's will to Reverend Kenneth Rogers in order to induce him to sign an affidavit regarding Frank Sumrall's incompetence is not supported by Rev. Rogers deposition testimony which make clear that he does not know what document he was shown. DE 397-5 at 11.

- Andrew Sumrall's testimony that he did not participate in any board meetings that his brother David Sumrall participated in does not support the assertion of fact that he had no personal knowledge of the policies or procedures of LeSEA prior to Dr. Sumrall's death in 1996. DE 397-5 at 14.

- Lester's testimony regarding Dr. Sumrall's supernatural encounter with God in 1987 does support the statement that Dr. Sumrall had a singular devotion to LeSEA Global (defined as FTH by Counsel)—which did not exist until well after Dr. Sumrall's death. DE 397-5 at 17.

### 3. Counsel's Attempts to Cast Blame on Defendants for Multiplying These Proceedings is Unavailing.

Counsel points to *Kessler v. Superior Care, Inc.*, 127 F.R.D. 513 (N.D. Ill. 1989) for the proposition that sanctions under Section 1927 are not appropriate "where the non-movant's counsel was guilty of similar conduct", but then does not allege any remotely "similar conduct". DE 397 at 5. Instead, Counsel accuses Defendants of multiplying the proceedings by briefing the question of Lester's employment with LeSEA, Inc. in the first instance—an issue Counsel claims was not in dispute.[5] DE 397 at 6.

The record, however, tells a different story. For example, Lester refused to directly answer the question of his employment with LeSEA, Inc. at his deposition despite Defendants' counsel asking him the question no less than three times. DE 350-19 at 6-8 (Dep. Transcript 21:8-32:1). And Counsel continued to muddy the water on this question by referring to Lester as an associate

---

[5] The parties did not negotiate a joint statement of undisputed material facts in this matter, so it is unclear how Counsel can now claim a fact was not in dispute

5

pastor of "Christian Center Church" in an apparent attempt to draw a nonexistent distinction between the church and LeSEA, Inc. DE 345 at 4 (identifying Lester only as an associate pastor at Christian Center Church); DE 345 at 5 (stating "neither Christian Center Church nor LeSEA, Inc. had an office in China,"); DE 353 at 3 (stating Lester "never signed an employment agreement or a 'work made for hire' agreement with the Christian Center Church or any of the LeSEA Organizations"). Ultimately, Counsel abandons this line of argument without explaining how Defendants briefing an element of their defense is similar in nature to the conduct at issue in the Motion.

Several pages later, Counsel complains of four additional actions that she seems to contend nullify her general conduct through this matter and her specific conduct at the summary judgment phase of this proceeding.

- LeSEA's Dismissal of its Trademark Infringement Claims. Counsel suggests LeSEA dropped its trademark infringement claims when it could find no evidence of damages. This contention is wholly unsupported by the record, which shows that LeSEA dropped its claims as soon as Lester agreed to a permanent injunction. DE 330. Further, it is premised on a response to an unclear request for production referencing damages in connection with "Lester Sumrall's registration of 'LeSEA Broadcasting Corporation.'" DE 397-4 at 11.

- Defendants' Dispositive Motions. Counsel argues that Defendants multiplied the proceedings by filing five dispositive motions in this matter. But she does not acknowledge that the majority of these motions were ultimately at least partially successful and narrowed the issues.[6]

- Discovery Disputes. Counsel points to two discovery disputes that, as already detailed in DE 394 at 2-3, could have been significantly narrowed or altogether avoided had Counsel complied with applicable Local Rules or attempted to appropriately tailor her discovery requests in the first instance.

- Settlement Discussions. Counsel attempts to shift the blame for her ill-fated and overbroad *Emergency Motion to Restrain LeSEA from Demolishing the Church and to Restrain Assets* (DE 294) to Defendants despite having refused to negotiate or accept "a settlement offer that would have transferred the real estate [and the church] to the

---

[6] DE 166 at 31 (dismissing Count IV without prejudice); DE 215 (dismissing aspects of Count VIII with prejudice); DE 271 (dismissing Count II with prejudice and aspects of Counts VI and VII with prejudice); and DE

Trust, along with all rights in and to [Dr. Sumrall's works]" (DE 310 at 14) and instead electing to seek emergency injunctive relief so broad as to be "almost breathtaking in scope". DE 310 at 16.  Counsel provides no support for the assertion that the settlement offer was a disingenuous manipulation tactic. DE 397 at 10. To the contrary, the offer was in writing on LeSEA, Inc. letterhead, signed by Drew Sumrall, and accompanied by a multi-page term sheet.  DE 296-1.

***

Counsel—even now—continues to choose "a path that a reasonably careful attorney would have known, after appropriate inquiry, to be unsound" and therefore "objectively unreasonable and vexatious" under § 1927.  *Riddle & Associates, P.C. v. Kelly*, 414 F.3d 832, 835 (7th Cir. 2005). Those who create unnecessary costs should also bear them, and the response brief itself makes clear the sanctions under § 1927 are appropriate here.  *Id.*

**B. Counsel's Pretext for Continuing to Litigate This Case Evidences Bad Faith Vexatious Litigation Tactics.**

There were several junctures at which objectively reasonable counsel would have reassessed this matter and chosen a different path to resolution:  (1) when text messages between Frank Sumrall and Stephen Sumrall came to light in June of 2021; (2) when Frank Sumrall testified that he knew about Dr. Sumrall's will; and (3) when this Court provided a frank evaluation of the Trust claims in this matter.  DE 310 (generally).  At any of these junctures, it should have become apparent that something was off about the Trust claims—in particular, the contentions in the counterclaim that neither Lester nor Frank "learned of" the Will until on or about April 25, 2017 were demonstrably false.  DE 395-2 at 2-3. But instead of thoughtfully engaging on this point, at every turn, Counsel peppered this Court with more filings and bombarded Defendants with discovery requests entirely untethered to the strictures of Federal Rules of Civil Procedure or the guardrails put in place by this Court. Counsel makes no real attempt to defend or explain these actions.  Instead, she tries to justify continued litigation based on arguments she did not make and

7

in the face of repeated statements by this Court[7] and by Defendants' counsel[8] that Lester's claims are likely time-barred.

First, Counsel suggests that this Court got it wrong when it dismissed the copyright infringement claim because "it is well-established that laches cannot be used against a claim under the Copyright Act." DE 397 at 14. As best as Defendants can tell, Counsel simultaneously argues that this concept justified continued litigation and somehow excuses her general failure to address Defendants' laches defense. The problem is that the Court made no such holding—it dismissed the copyright infringement claim on statute of limitations grounds (not laches) because the gravamen of the claim was an ownership dispute. DE 386 at 23-24. Further, Counsel did not make these arguments in the summary judgment phase of this proceeding, and it is unclear how they are relevant to the specific issue of sanctions or the general question of whether continued litigation was justified.

Counsel next argues that she *did* have meritorious arguments in response to Defendants' laches defense via her briefing related to the relevant statutes of limitations, the continuing wrong doctrine, and Defendants' unclean hands. DE 397 at 14-15. But the actual memorandum submitted to this Court tells a very different story. Counsel never addressed the applicable statutes of limitation in the context of using them as a "guide to determining whether laches applies." DE 397 at 14. And she only addressed the continuing wrong doctrine in the context of a single claim (tortious interference) and in connection with the relevant statute of limitations (not laches).

---

[7] See DE 386 at 20-21 ("[S]ince my earliest interactions with counsel in this case, I have flagged the potential application of a laches defense to the facts of this [case]"; DE 166 at 6 (laches was a "sensible conclusion" by the Indiana Court of Appeals, "since 20 years went by between Dr. Sumrall's passing and Lester's quixotic efforts to right a perceived wrong."); DE 310 at 7 (flagging the three year statute of limitations for copyright infringement claims where the core dispute is about ownership); DE 310 at 9 (noting that Court had raised the doctrine of laches at the preliminary injunction hearing).

[8] See DE 395-2 (a June 10, 2021 letter concerning undisputed facts strongly suggesting the matter was time-barred) and DE 395-3 (a June 28, 2021 letter raising the same defense in light of then-recent testimony of Frank Sumrall).

8

Finally, Counsel claims to have raised an unclean hands defense, but this is not so. Instead, her pinpoint cite references III.C of her briefing and relates to allegedly tortious acts underlying the tortious interference claim. Again, Counsel seems to be expecting this Court and Defendants to do her work for her. This laissez-faire attitude towards briefing has only served to inject further confusion into this matter and increase costs.

The simple fact of the matter is that Counsel chose to maintain the claims when the facts simply did not merit continuing litigation. This was pointed out to Counsel repeatedly by both this Court and Defendants. Reasonable counsel would have at least re-evaluated the claims or attempted to narrow them into something more viable. Counsel, however, repeatedly chose otherwise and continues to double-down on the choice now.

## III.   CONCLUSION

For the foregoing reasons, Defendants respectfully ask this Court to impose sanctions on Counsel pursuant to the Court's inherent powers and Section 1927.

Dated: September 27, 2023

By: /s/ *Louis T. Perry*
Louis T. Perry (IN 257363-49)
FAEGRE DRINKER BIDDLE & REATH LLP
300 N. Meridian Street, Suite 2500
Indianapolis, Indiana 46204
Telephone: 317-237-1089
Facsimile: 317-237-1000
Louis.perry@faegredrinker.com

***Attorney for Plaintiffs, Counterclaim Defendants and Third-Party Defendants***

By: /s/ *David L. Mirkin* (with permission)
David L. Mirkin (IN 10258-22)
MIRKIN LAW OFFICES, P.C.
205 W. Jefferson Blvd., Ste. 205
South Bend, Indiana 46601
Telephone:574-232-1000
Facsimile: 574-232-7730
dmirkin@mirkinlaw.com

***Attorney for Stephen Sumrall***

By: /s/ *James M. Hinshaw* (with permission)
James M. Hinshaw (IN 16744-49)
DENTONS BINGHAM GREENEBAUM LLP
2700 Market Tower
10 West Market Street
Indianapolis, Indiana 46204
Telephone: 317-635-8900
Facsimile: 317-236-9907
james.hinshaw@dentons.com

***Attorney for Plaintiffs, Counterclaim Defendants and Third-Party Defendants***