# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
## SOUTH BEND DIVISION

LESEA, INC., FAMILY BROADCASTING
CORPORATION and LESEA GLOBAL
FEED THE HUNGRY Inc.,

Plaintiffs,

     v.                                                          No. 3:18CV914-PPS

LESEA BROADCASTING CORPORATION,
LESTER SUMRALL, DR. JOHN W. SWAILS III,
and EDWARD WASSMER,

Defendants.

―――――――――――――――――――――――

LESTER SUMRALL and
THE LESTER SUMRALL FAMILY TRUST,

Counterclaim Plaintiff and Third-Party Plaintiffs,

     v.

LESEA, INC., FAMILY BROADCASTING
CORPORATION, LESEA GLOBAL FEED
THE HUNGRY, INC., LESEA BROADCASTING
OF SOUTH BEND, INC.,  LESEA BROADCASTING
OF INDIANAPOLIS, INC.,  LESEA
BROADCASTING OF TULSA, INC.,  LESEA
BROADCASTING OF HAWAII, INC.,  LESEA
BROADCASTING OF ST. CROIX, INC.,  WORLD
HARVEST BIBLE COLLEGE INDIANA CHRISTIAN
UNIVERSITY, INC., STEPHEN P. SUMRALL, DAVID
M. SUMRALL, ANGELA N. GRABOWSKI, ANDREW J.
SUMRALL, and ADAM SUMRALL,

Counterclaim Defendants and Third-Party Defendants.

## OPINION AND ORDER

As I recapped in my extensive order dated March 6, 2024 [DE 406], this case has been a bit of a slog. After nearly five years of litigation, in August 2023, I issued two opinions resolving all remaining claims. [DE 386, 387.]  For the purpose of this order which relates to the topic of attorneys' fees, I assume familiarity with these opinions which resolved all of the counterclaims and third-party claims of the Lester Sumrall Family Trust[1] and Lester Sumrall ("Plaintiffs" for purposes of this opinion). Those counterclaims and third party claims were brought against LeSEA, Inc., Family Broadcasting Corporation, LeSEA Global Feed the Hungry, Inc., Adam Sumrall, Stephen Sumrall, David Sumrall, Angela Grabowski, and Andrew Sumrall—all of whom I will refer to in this order as the Defendants.  [DE 386, 387.]

Following the entry of judgment, Plaintiffs filed a notice of appeal.  On July 8, 2024, the Seventh Circuit affirmed this court's rulings, finding "[t]he appellants brought us a plethora of issues – none of which rescues the long-delayed counterclaims.  Put another way: this appeal is too much, too late." [DE 423-1 at 10.]

Before me now are two motions by the Defendants relating to attorneys' fees. Here's what the Defendants seek: (1) attorneys' fees under 28 U.S.C. § 1927 as a sanction against Lester's counsel, Ms. Channing Hesse of Grogan, Hesse, & Uditsky [DE 407] ; and (2) attorneys' fees under 17 U.S.C. § 505 and Indiana Code § 32-26-1-12 for being the

---

[1] The Trust asserts the claims of Frank Sumrall, based on his rights of inheritance from his father, Dr. Lester Sumrall.  Plaintiff Lester is the son of Frank and grandson of Dr. Sumrall.

2

prevailing parties under the Copyright Act and Indiana Rights of Publicity statute. [DE 408.]

I have already made the legal determination and explained in a lengthy order that the Defendants are the prevailing parties and are entitled to an award of attorneys' fees under the Copyright Act and the Indiana Rights of Publicity statute. [DE 406.] I likewise concluded that some sanction under section 1927 is appropriate because counsel unreasonably and vexatiously multiplied the proceedings by prolonging a case that was destined for failure due to it being time barred. *Id*. The only task that remains is determining the amount of the fees. I asked the parties to brief the fee petitions, and both sides submitted a number of memoranda and affidavits in support of their positions about the appropriate amount of attorneys fees. [DE 407, 408, 409, 410, 412, 413, 414, 416, 417, 418, 419, 421, 422.] In short, the "slog" I referred to above has continued unabated. Suffice it to say the parties to this satellite litigation have failed to heed the Supreme Court's admonition "that the determination of fees should not result in a second major litigation," *Fox v. Vice*, 563 U.S. 826, 838 (2011) (quotation omitted).

## I.    Attorneys' Fees Under 28 U.S.C. § 1927

Section 1927 provides "[a]ny attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 18 U.S.C. § 1927. Section 1927 is intended "to deter frivolous

litigation and abusive practices by attorneys and ensure that those who create unnecessary costs also bear them." *Riddle & Assocs., P.C. v. Kelly*, 414 F.3d 832, 835 (7th Cir. 2005) (quotation omitted). "If a lawyer pursues a path that a reasonably careful attorney would have known, after appropriate inquiry, to be unsound, the conduct is objectively unreasonable and vexatious." *Kapco Mfg. Co., Inc. v. C&O Enters., Inc.*, 886 F.2d 1485, 1491 (7th Cir. 1989).

But I retain discretion in deciding whether sanctions are appropriate, and in what amount. As the Seventh Circuit has explained, "[s]ection 1927 is permissive, not mandatory. The court is not obliged to grant sanctions once it has found unreasonable and vexatious conduct. It may do so in its discretion." *Corley v. Rosewood Care Ctr., Inc. of Peoria*, 388 F.3d 990, 1014 (7th Cir. 2004); *see also Walter v. Fiorenzo*, 840 F.2d 427, 433 (7th Cir. 1988) (stating "[a]n award of fees under § 1927 is given solely to the discretion of the district court . . . ."). In exercising its discretion, a court must award sanctions that are "a carefully measured response to the sanctioned conduct" and must specify the method used to compute the sanctions. *Kapco*, 886 F.2d at 1496.

Under the language of section 1927, fees should be awarded only if they were incurred after and because the offending attorney multiplied the proceedings and only to the extent that the costs are reasonable. *See, e.g., Kotsilleris v. Chalmers*, 966 F.2d 1181, 1187 (7th Cir. 1992). Equitable concerns can warrant a reduction in a fee petition award. *See Brown v. Federation of State Med. Bds. Of the U.S.*, 830 F.2d 1429, 1439 (7th Cir. 1987) (finding "once a court determines that sanctions are appropriate, equitable factors may

be an ingredient in the discretionary aspect" of the sanction).  Indeed, the Seventh

Circuit requires that I impose the least severe sanction that is adequate to serve the

purpose of the rule.  *Anderson v. County of Montgomery*, 111 F.3d 494, 502 (7th Cir. 1997).

In addition, the goal of fee-shifting "is to do rough justice, not to achieve auditing

perfection . . . [and] courts may take into account their overall sense of a suit, and may

use estimates in calculating and allocating an attorney's time."  *Fox*, 563 U.S. at  838.

In a nutshell, I have discretion to impose sanctions under section 1927 when a

party pursues claims "without a plausible legal or factual basis and lacking in

justification."  *Jolly Grp., Ltd. v. Medline Indus., Inc.*, 435 F.3d 717, 720 (7th Cir. 2006).

Importantly, the Seventh Circuit interprets section 1927 "to impose a continuing duty

upon attorneys to dismiss claims that are no longer viable."  *Id*.

In their main petition, Defendants propose three dates after which they should

recover attorneys' fees, arguing Ms. Hesse surely should have been aware by these

points in time that her claims were clearly not viable. [DE 407 at 3-6.]  First, Defendants

argue they should recover fees in the amount of $390,967 after **October 14, 2021** because

it was the second time the Court clearly expressed its concern with the counterclaims

and after two letters from Defendants' counsel requesting withdrawal of the time-

barred claims. [*Id.* at 3.]  Second, Defendants alternatively argue that fees in the amount

of $248,516.50 should be recoverable after the **March 3, 2022** court ruling where the

court flagged a potential time bar for no less than the fourth time and denied Lester's

request for a preliminary injunction because the claims underlying Lester's motion were

not likely to succeed on the merits. [*Id.* at 6.] Third and last, Defendants alternatively argue fees in the amount of $100,984.50 should be recoverable from **February 22, 2023, through September 27, 2023**, because Defendants should not have incurred these fees in connection with the summary judgment briefing. *Id.*

In response, Ms. Hesse argues the fees should be limited to the time and energy spent litigating only the laches argument in the summary judgment motions, totaling only $3,300.00 in recoverable fees. [DE 412 at 1-5.] But this is not a fair assessment of my rulings in this case—I found that *all* of the counterclaims were time-barred for one reason or another. As I stated in the previous order finding attorneys' fees should be awarded: "[t]he ultimately dispositive rulings found that all of the Trust's remaining counterclaims were time-barred, whether on the basis of laches, an applicable statute of limitations, or both . . . The lengthy passage of time was pertinent to the disposition of Lester's claims as well." [DE 406 at 10.]

I think Defendants' third alternative—the latest proposed date (which encompasses the fees connected specifically with the summary judgment motion briefing from February 22, 2023 through September 27, 2023)—is the best option from which to calculate attorneys' fees, as it is the least severe sanction that can still uphold the goals of the rule. Admittedly, Plaintiffs' counsel was repeatedly warned by both me and opposing counsel prior to this that her counterclaims could be meritless, but it is also true that the original counterclaims of Lester and the Trust were filed by another attorney before Ms. Hesse's entry of appearance. [DE 43, 87.] In addition, I am mindful

of Ms. Hesse's understandable wariness of trusting the evaluation of her claims to the opposing party. I'm less understanding of Ms. Hesse's choice to ignore my concerns although in fairness many of those concerns were expressed off the cuff and without the benefit of briefing.  When the matter was briefed for the first time, it was in response to a request for a *preliminary* injunction.  It would not be sensible to hold the threat of § 1927 sanctions over the head of any party solely on the basis of losing a request for a preliminary injunction.  Nevertheless, for all the reasons I previously noted, I remain convinced that some award under § 1927 is needed in this instance.

What's more, counsel's egregious conduct during the summary judgment briefing adds to the reasons why sanctions are warranted—not only did counsel unreasonably stick to her guns regarding the evaluation of the counterclaims which were so obviously time-barred during the summary judgment briefing, but she also either purposely or haphazardly cited to supposed "facts" during those proceedings that were not supported by the record.  As I noted in my ruling granting summary judgment against the Trust: "[i]n a frankly astonishing number of instances, the Trust's assertion of a fact is not supported by the evidence cited." [DE 386 at 13, citing 13 instances.] All of this is well beyond mere negligence.  Rather, it is another example of her "serious disregard for the orderly process of justice and an objective bad faith that unreasonably multiplied the burden of both opposing counsel and the court in analyzing the summary judgment record and arguments." [DE 406 at 15.]  As bad as this behavior was, I will say at least there seems to be an absence of any history of

misconduct with Ms. Hesse and this court is unaware of any past sanctions being levied against her.

With all that being said, after much consideration, I believe the total sanction of $100,984.50 suggested by the Defendants papers—consisting of (a) $80,882.00 in fees as detailed in the Perry Decl., DE 409,  ¶¶ 18-19, Exs. V and W; and (b) $20,102.50 in attorneys' fees as detailed in the Hinshaw Decl., DE 410, at ¶ 9— is simply greater than necessary to deter and punish Plaintiffs' counsel.[2]  Therefore, the total sanction is reduced to $30,000.00, which I find is a reasonable and equitable sanction sufficient to deter Ms. Hesse from litigating and pursuing frivolous time-barred claims in the future and to compensate Defendants in this case.  *See Noga v. Kimco Corp*, No. 96 C 6108, 1998 WL 9127, at *21 (N.D. Ill. Jan. 6, 1998) (reducing a fee award by more than half to adjust for various equitable factors).  Specifically, the Court will award sanctions against Ms. Hesse under section 1927:  in Defendants' favor for $24,000.00 and in David Sumrall's favor for $6,000.00.

One last note before I move on to the other motion. Any suggestion by Lester Sumrall that Indiana's Law of Trusts precludes attorneys' fees from being allocated to counsel under 28 U.S.C. § 1927 [DE 421 at 3], is utterly unsupported.  An award of fees under 28 U.S.C. § 1927 "is personal to the lawyer; the client may not be ordered to pay

---

[2] Faegre Drinker Biddle & Reath LLP was the Defendants' primary counsel throughout this matter and Attorney Louis Perry submitted an affidavit on behalf of this firm.  Additionally, David Sumrall retained James Hinshaw of Dentons Bingham Greenebaum to protect his individual interests due to the LeSEA reservation of rights on its indemnity and defense undertakings on his behalf, and the potential for conflicts of interest between LeSEA and its own interests during the future course of the litigation, and Attorney Hinshaw submitted a declaration on behalf of Dentons. [DE 408 at 3.]

for counsel's misconduct" *Cooke v. Jackson Nat'l Life Ins. Co.*, 919 F.3d 1024, 1029 (7th Cir. 2019), and its purpose is to deter undesirable attorney conduct and to sanction attorneys who willfully abuse the judicial process by conduct tantamount to bad faith. *Riddle & Assocs. v. Kelly*, 414 F.3d 832, 835 (7th Cir. 2005).

While Lester Sumrall argues that he bears the ultimate responsibility for any fee award made against Ms. Hesse under section 1927, Sumrall provides no case law to support this argument (and I haven't found any). From my perspective, section 1927 serves as a deterrent *to counsel* against taking unreasonable actions in litigation (and an incentive to act appropriately), and being able to shift that responsibility from an attorney to client just doesn't make sense.

## II.    Attorneys' Fees Under 17 U.S.C. § 505 and Ind. Code § 32-36-1-12

In addition to the fees under § 1927, I also found appropriate attorneys' fees under the fee-shifting provisions of the applicable statutes in this case (the Copyright Act and Indiana Right of Publicity Law). [DE 406 at 2-7.] To calculate reasonable attorneys' fees, courts generally use the "lodestar" method by multiplying a reasonable rate by the hours reasonably expended. *Johnson v. GDF, Inc.*, 668 F.3d 927, 929 (7th Cir. 2012). In determining a reasonable hourly rate, the prevailing party is presumptively entitled to the rate charged by and paid to its counsel. *Gusman v. Unisys Corp.*, 986 F.2d 1146, 1150 (7th Cir. 1993); *see also People Who Care v. Rockford Bd. of Educ., Sch. Dist. No. 205*, 90 F.3d 1307, 1310 (7th Cir. 1996) ("The attorney's actual billing rate for comparable work is presumptively appropriate to use as the market rate."). The parties seeking fees

9

"should submit evidence supporting the hours worked and rates claimed." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).

The parties dispute the amount of fees recoverable as well as whether the attorneys' fees under the statutes should be allocated against Lester Sumrall personally, or the Lester Sumrall Family Trust. Let's try to first clear the hurdle of what fees are recoverable, and then I'll turn to specifically who the fees will be allocated against.

Several firms had their hands in this litigation. As I mentioned before, Faegre was Defendants' primary counsel during the litigation. As part of this petition, Faegre completed a line-by-line review of its invoices from April 19, 2019 through September 27, 2023, and attached a spreadsheet to the declaration of Attorney Louis T. Perry which reflects details of the work performed related to Lester's counterclaims. [Perry Decl., DE 409 at ¶¶ 12-13, Ex. P.] Initially, Faegre contended its fees over the course of this time period totaled $763,745.25 (the "Faegre Fees"). Mirkin Law Offices, P.C. served as counsel for Stephen Sumrall during a large part of the litigation. Pursuant to an agreement between LeSEA, Inc. and Stephen Sumrall, LeSEA, Inc. directly paid Mr. Mirkin's fees, which he claims totaled $30,820 (the "Mirkin Fees"). [Mirkin Aff., DE 409-17.] Also, David Sumrall retained James Hinshaw of Dentons to protect his individual interests. The Hinshaw Declaration establishes that a $14,000 portion of the fees incurred by David were reimbursed by LeSEA. [Hinshaw Decl., DE 410.] Through September 27, 2023, David individually incurred fees totaling $157,634 (excluding the reimbursed fee). [*Id.* 3.]

10

In sum, the Defendants initially requested attorneys fees in the amount of $808,565.25 (less any sanctions award made against Ms. Hesse in Defendants' favor) and David Sumrall requested attorneys fees in the amount of $157,634.00 (less any sanctions award made against Ms. Hesse in David Sumrall's favor). [DE 408 at 5.]  In response, counsel for the Lester Sumrall Family Trust and Lester Sumrall challenged multiple categories of requested fees as unreasonable, including what she considers excessive or redundant fees, excessive/redundant fees billed by Mirkin and Hinshaw, overly vague time entries, secretarial tasks billed by lawyers or paralegals, fees associated with unsuccessful motions or settlement attempts, "unrelated" time, and travel time. [DE 416 at 4-13.]

First, regarding the excessive or redundant fees (which Lester claims consists of 191.8 hours and $51,419.00) [DE 416 at 4], Lester argues these entries are for instances in which more than one lawyer is billing on the same set of motions or pleadings.  The problem is that Lester does not explain which specific time entries he is referring to. [*Id.* at 4-7.]  That lack of specificity amounts to a waiver of the argument.

The same goes for Lester's next category of entries which also falls under subheading II.A regarding excessive fees, but confusingly goes beyond the 191.8 disputed hours referenced in the subheading and consists of an additional 853.8 disputed hours amounting to $220,383.00 Lester contends are excessive.  [DE 416 at 5-7.]  Of the fees that Lester specifically mentions in his response, just listing hours and the resulting time associated with it is not enough.  For example, enumerating "2.9 hours or

11

$797.50 drafting a response to a letter on discovery (Lou Perry on 1/11/22)" goes absolutely nowhere to show the Court *why* this time is supposedly superfluous and should not be reimbursed. [*Id.* at 7.]

Lester also takes issue with 102.9 hours of time spent consisting of counsel's communications with clients over the course of this four-year litigation. [DE 416 at 5.] But again, he does not explain why these communications are excessive. Lester made a jaw-dropping damages request in this case (north of $300,000,000). [DE 374-2 at 13]. That request and the case generally had the potential for a devastating impact on Defendants' reputations. What's more, his attempt to seize control over the various LeSEA organizations via a motion for preliminary injunction [DE 294 and 295], and the sheer length of this litigation, was all cause for great concern to the Defendants. With this backdrop, I do not consider the amount of time and frequency of communications with the clients excessive. In fact, it strikes me as altogether necessary. The same goes for the other categories of work that Lester just labels as "excessive" (like the amount of hours Defendants spent on summary judgment)—there is no explanation for *why* this work was allegedly not necessary.

Lester also argues that all of the fees incurred by David M. Sumrall and Stephen Sumrall for the work performed on their behalf by Dentons and Mirkin Law Offices are excessive and should be disallowed. [DE 416 at 8.] But the bare bones argument that there are too many lawyers staffed on the case does not cut it. As Defendants point out, because LeSEA had only agreed to defend and indemnify David Sumrall under a

reservation of rights, David (understandably) chose to hire Dentons as separate counsel in order to protect his individual interests and deal with any potential conflicts of interest.  Contrary to Lester's assertion that Dentons was only looking over the shoulder of the Faegre Drinker attorneys, the time entries show that Dentons did not just take a back seat to other lawyers, but rather was an active participant in the litigation—including, for example, preparing responses to interrogatories and document requests, preparing for and defending their client's deposition, actively and substantively editing and contributing to the briefing on the numerous Rule 12 motions and Rule 56 motions, attending hearings and conferences, and participating in the numerous settlement/mediation discussions.  To be plain about it, no one forced Lester to sue his cousins, Stephen and David Sumrall, for copyright violations.

In sum, David's fees relating to these active portions of the case deserve to be reimbursed.  *See, e.g., C.W. v. Bd. of Educ. of City of Chicago, Dist 299*, No. 11-CV-2349, 2012 WL 355360, at *9 (N.D. Ill. Feb. 1, 2012) (although defendant claims some attorneys were merely shadowing others and should not have time compensated, the court found that billing entries showed active participation in the case and fees were permitted); *Berberena v. Coler*, 753 F.2d 629, 633 (7th Cir. 1985) (awarding compensation for all four attorneys working on case, including time each spent strategizing and discussing the case with co-counsel).  The attorneys in this case clearly identified their activities and even though multiple attorneys were involved, it still seems like the amount of time was reasonably expended.

13

Lester next takes issue with time entries in the amount of 34.7 hours for $9,358 in fees that he claims are overly vague. [DE 416 at 9-10.] As best I can tell (and this wasn't easy since Lester submitted a color coded chart and these entries are coded in red; however, he also confusingly used the colors pink and orange), each of these entries does contain a written explanation of the work done and Lester does not explain why he finds the entries vague.

Next, Lester argues the secretarial tasks billed by lawyers or paralegals are not compensable. [DE 416 at 10.] Defendants have conceded to a reduction of these requested fees in the amount of $803.50. [DE 418 at 11.]

Lester next contends that Defendants are not entitled to fees in connection with: (1) unsuccessful motions, (2) partially successful motions, (3) certain successful motions, and (4) unsuccessful settlement attempts, which total 581.40 hours and $155,663.50. [DE 146 at 10-11.] In support, he cites to *Blackwell v. Kalinowski*, No. 08 C 7257, 2012 WL 469962, at *7 (N.D. Ill. Feb. 13, 2012). However, in that case, the court denied reimbursement for a telephone conference with a non-prevailing party because "time spent on post-trial matters unrelated to plaintiff's success is not compensable." *Id.* But *Blackwell* definitely does not stand for the proposition that fees related to ultimately unsuccessful attempts to settle a case or actual unsuccessful motions during the ongoing litigation are not reimbursable. Rather, courts "may award fees for time reasonably spent on an unsuccessful argument in support of a successful claim." *Jaffee v. Redmond*, 142 F.3d 409, 414 (7th Cir. 1998). "[T]he touchstone in such a case is not whether a

14

particular argument was successful, but rather whether it was reasonable." *Id.* at 414; *see also Bretford Mfg., Inc. v. Smith Sys. Mfg. Co.*, 389 F.Supp.2d 983, 987 n.2 (N.D. Ill. 2005) (awarding plaintiff prevailing on trade dress claim for "all time reasonably spent on the trade dress infringement issue . . . even though some of that time may have overlapped the issues on which fees are not being awarded"); *Greenfield Mills, Inc. v. Carter*, 569 F.Supp.2d 737, 755 (N.D. Ind. 2008) (acknowledging investigation and settlement discussions pre-complaint were entitled to compensation); *R.H. Lewistown Cmty. Unit Sch. Dist. #97*, 2009 WL 981908, at *6 (C.D. Ill. Apr. 9, 2009) (awarding fees for time spent in settlement conferences).

I strongly believe Defendants are entitled to attorneys' fees based upon good faith settlement negotiations—even though no settlement was reached. Additionally, the two motions to dismiss were at least partially successful and narrowed the scope of this case. [DE 166 at 31 (dismissing count IV without prejudice), DE 215 at 12 (dismissing Count VIII as to corporate defendants with prejudice and striking portions of Counts V and VI).] Therefore, I will award the fees for the aforementioned motions and settlement discussions because they were reasonable (and often successful or at least partially successful) actions in the pursuit of the ultimate success in this action.

Regarding Lester's objection to 26.40 hours and $5,425.50 in unrelated items [DE 413 at 12], Defendants do not contest that some fees were included in error, and therefore do not contest a reduction of the requested fees by $5,370.50. [DE 418 at 13.]

Similarly, Lester's objection to 74 hours of travel feels in the amount of $12,292.50

is not contested. [DE 418 at 14.]  Therefore, the requested fees will be reduced by another $12,292.50.

In sum, I am granting requested fees under 17 U.S.C. § 505 and Ind. Code § 32-36-1-12 in the amount of $947,732.75.  This amount will be reduced by the sanctions award against Ms. Hesse.

Finally, turning to the issue of whether the fees under 17 U.S.C. § 505 and Indiana Code § 32-36-1-12 should be allocated against Lester Sumrall personally, the Lester Sumrall Family Trust, or some combination of the two, I have reviewed the parties' supplemental briefing on this issue and find that the fees should be allocated against Lester Sumrall personally.  The creation of the Trust, as well as the law on this subject, necessitates this result.  Lester Sumrall formed the Trust on November 19, 2018 via a Declaration of Trust and named himself both settlor and trustee. [DE 349-7 at 1.] The Trust was created "for the purposes of pursuing an action on Frank Sumrall's behalf to recover his stolen inheritance." [DE 349 at ¶ 8; *see also* DE 405 at 11:25-12:5 in which Ms. Hesse represents the Trust "is really just a vehicle in which to bring the claims . . . ."]  Lester Sumrall claims the corpus of the Trust is comprised of Frank Sumrall's supposed inheritance rights and claims. [DE 170 at ¶ 74.]  In support, Lester Sumrall filed with this Court a document dated February 20, 2018 (this predates the Trust Declaration by about 9 months) in which Lester Sumrall, acting as Frank Sumrall's attorney-in-fact, transferred the Trust Claims to "Lester Leonard Sumrall, Trustee of the Lester Sumrall Family Trust." [DE 170-3.]  However, Lester Sumrall has never produced

16

a document in which he then transferred the Trust Claims to the Trust.

Pursuant to the Trust Declaration, Lester Sumrall had full control over the Trust. These powers included without limitation the right to: (1) revoke the Trust in whole or in part [DE 349-7 at 2]; (2) alter, amend, or modify the Trust in any way desirable to him [*Id.*]; (3) remove successor trustees [*Id.* at 5]; and (4) to exercise all powers in regard to "intellectual, licensing, and all other property interests" [*Id.* at 11]. In April 2019, Lester Sumrall filed the trust claim on behalf of the Trust and against Defendants and represented he "is the trustee of [the Trust] and is authorized to bring this claim on behalf of the Trust." [DE 43 at ¶ 3.] The trust claims were amended twice, but this representation remained throughout the iterations. [DE 115 at ¶ 3, DE 170 at ¶ 3.]

On November 11, 2020, Lester Sumrall, on behalf of himself and the Trust, entered into a settlement agreement with Frank Sumrall whereby the parties agreed that the Trust would be dissolved upon the full and final resolution of this matter and the distribution of any proceeds. [DE 421-3 at ¶ 9.] The parties also agreed that Lester Sumrall was to remain the trustee and maintain control of this litigation. [*Id.* at ¶ 5.]

As mentioned earlier in this order, after winning at summary judgment, Defendants sought and were awarded attorneys' fees under 17 U.S.C. § 505 and Ind. Code § 32-36-1-12 in connection with the Trust Claims. Lester Sumrall didn't respond to the Defendants' initial request for fees. But in later briefing, he told me that the Trust was controlled by Frank Sumrall and argued that any fees awarded should be awarded against the Trust itself. [DE 416 at 3.]

17

Under Indiana Code § 30-4-3-10(b)(1), third parties like Defendants "are entitled to compensation for injury suffered in the course of the administration of the trust" from a trustee like Lester Sumrall when the "injury is the result of the trustee's personal act or omission as trustee . . . ."  And this type of claim is to be satisfied "from the trustee's individual property first and then, to the extent the claim is yet unsatisfied, from the trust estate . . . ."  *Id.*  No Indiana case law exists addressing the specific issue here which is whether the fees under 17 U.S.C. § 505 and Ind. Code § 32-26-1-12 should be assessed against Lester Sumrall or the Trust (or I suppose some combination of the two).  Nor is the case law clear about whether a third party's attorneys' fee award can be assessed against a trustee personally.  Nevertheless, the plain language of the statute and public policy interests dictate the fee award should be entered against Lester Sumrall personally.

As preliminary matters, Defendants are not parties to the Trust Declaration—they therefore qualify as third-parties for purposes of Indiana Code § 30-4-3-10(b)(1).  In addition, I have already ruled that Defendants are entitled to recovery of their attorneys' fees in connection with the Trust Claims, which were patently deficient from the start of this litigation.  Next, there is no dispute that Lester Sumrall pursued the Trust Claims during the course of the administration of the Trust.  As I just established, he maintained complete control of the Trust which existed solely for the purpose of bringing the Trust Claims and would be immediately dissolved upon the conclusion of this litigation.  Further, in the Settlement Agreement, Lester Sumrall

acknowledged that the management of this litigation was part of his "fiduciary duties" under the Trust. [DE 421-3 at ¶ 5.]  Also, the actions at issue were Lester Sumrall's personal acts.  The statute distinguishes between a trustee's "personal act or omission" in subsection (b)(1) with the act or commission of an agent in subsection (b)(2), and acts or omissions of the settlor and *not* the trustee (in subsection (b)(3)).  Because Lester Sumrall (and not an agent) prosecuted the Trust Claims, and the settlor in this instance is also the trustee, it seems that only section (b)(1) applies under the statute's plain language.  The Trust was formed solely for the purpose of this litigation and Lester Sumrall's unreasonable actions and tactics during the litigation demonstrate a level of bad faith that merits application of the statute.

Lester Sumrall argues that he should have no personal liability under section 30-4-3-10 because he was not acting in his personal capacity in bringing the lawsuit on behalf of the Trust and he did not act in bad faith. [DE 421 at 2-3.]  In support, he cites *Sisters of Mercy Health Corp. v. First Bank of Whiting*, 624 N.E.2d 520, 522 (Ind. Ct. App. 1993).  That case involved a spendthrift trust—that's a trust where a settlor gives property in trust for another, and provides the beneficiary cannot transfer his or her interest, and that it shall not be subject to the claims of the beneficiary's creditors.  *In re Goldberg*, 98 B.R. 353, 356 (N.D. Ill. 1989).  The *Sisters of Mercy* court found when analyzing liability when a spendthrift provision was present, "[c]learly, an ordinary creditor of a beneficiary suffers no legal injury as the result of a trustee complying with the spendthrift provisions of the trust.  What is required before a court will intervene is

that a trustee has been guilty of bad faith or has in some manner abused or unreasonably exercised its discretion." 624 N.E.2d at 522. In other words, a court applying Indiana law generally will not intervene in the administration of a spendthrift trust absent a showing of bad faith. However, the trust in this case is not a spendthrift trust, and *Sisters of Mercy* is factually quite different from this case.

But let's suppose it's necessary for me to find that Lester Sumrall was guilty of bad faith, Defendants delineated the actions and tactics Lester Sumrall used in their brief in support of attorneys' fees under 17 U.S.C. § 505 and Indiana Code § 32-36-2-12. [DE 392 at 7-9.] As I already determined in my initial order finding attorneys' fees appropriate, Lester Sumrall and his counsel were repeatedly warned by opposing counsel and me that their claims must be time-barred, but they stubbornly refused to dismiss them, and in the end the ultimately dispositive rulings found all of the Trust's remaining counterclaims were time-barred on laches and the applicable statute of limitations. [DE 406 at 9-14.] This is more than enough for me to find that Lester Sumrall, as trustee, is guilty of bad faith or somehow abused or unreasonably exercised his discretion.

Finally, it would simply be an affront to justice to let Lester Sumrall escape individual liability by using a legal fiction of a trust to advance meritless claims. There is no evidence the trust holds any assets (other than the losing claims in this case), and it will be dismantled after this litigation is over. Lester has imposed enormous costs on his family and its business by pursuing this pointless and flawed litigation. It is only fair

that Lester personally absorb the costs under the fee shifting statutes at issue here as opposed to trying to thrust them on some empty and judgment proof trust.

In sum, I find that Lester Sumrall, the trustee and settlor of the Lester Sumrall Family Trust, created a trust only to pursue this litigation, and to dissolve at the end of it. He had total control over the trust. Indiana's law of trusts and public policy require that any award of attorneys' fees entered in connection with the Trust Claims be assessed against Lester Sumrall personally.

## <u>CONCLUSION</u>

For the abovementioned reasons, Counterclaim Defendants (1) Family Broadcasting Corporation, LeSEA, Inc., and LeSEA Global Feed The Hungry, Inc. and (2) Third-Party Defendants David M. Sumrall, Angela N. Grabowski, Andrew J. Sumrall, and Adam Sumrall (collectively the "Defendants") Petition for Attorneys' Fees Under § 1927 [DE 407] is GRANTED as follows: sanctions against Attorney Channing Hesse under 28 U.S.C. § 1927 awarded in favor of Defendants (1) Family Broadcasting Corporation, LeSEA, Inc., and LeSEA Global Feed The Hungry, Inc. and (2) Third-Party Defendants Angela N. Grabowski, Andrew J. Sumrall, and Adam Sumrall's favor for $24,00.00; and in Third-Party Defendant David Sumrall's favor for $6,000.00 (for a total sanction award against Ms. Hesse under § 1927 of $30,000.00).

Additionally, Counterclaim Defendants (1) Family Broadcasting Corporation, LeSEA, Inc., and LeSEA Global Feed The Hungry, Inc. and (2) Third-Party Defendants David M. Sumrall, Angela N. Grabowski, Andrew J. Sumrall, and Adam Sumrall

(collectively the "Defendants") Petition for Attorney Fees Under 17 U.S.C. § 505 and

Indiana Code § 32-36-1-12 [DE 408] is GRANTED in the total amount of $917,732.75 to

be assessed against Lester Sumrall personally (comprising of the original requested fees

in the amount of $966,199.25 less the amounts that Defendants did not contest

consisting of: (1) $803.50, (2) $5,370.50, and (3) $12,292.50; less the $30,000 sanctions

award made against Ms. Hesse and in Defendants favor) as follows: against Lester

Sumrall in favor of Defendants (1) Family Broadcasting Corporation, LeSEA, Inc., and

LeSEA Global Feed The Hungry, Inc. and (2) Third-Party Defendants Angela N.

Grabowski, Andrew J. Sumrall, and Adam Sumrall's favor for $766,098.75; and against

Lester Sumrall and in Third Party Defendant David Sumrall's favor for $151,634.00.

SO ORDERED.

ENTERED: February 24, 2025.

 /s/ Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT